UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| UNDER THE WEATHER, LLC, <br><br>                               **Plaintiff,** <br>   **v.** <br><br> **UNITED STATES,** <br>                                **Defendant.** | Court No.   21-00211 |

## COMPLAINT

Plaintiff, Under The Weather, LLC ("Plaintiff" or "UTW"), appears through its undersigned attorneys, and alleges the following in its Complaint in this action:

### JURISDICTION

1.　　Plaintiff brings this action against Defendant the United States of America ("Defendant" or "United States") to contest the denial of administrative Protest 270420127807 by U.S. Customs and Border Protection ("CBP") under Section 515 of the Tariff Act of 1930, as amended (19 U.S.C. § 1515). This Court therefore holds subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1581(a).

### STANDING AND TIMELINESS

2.　　UTW is a corporation duly organized and existing under the laws of the State of Ohio and is the importer of record and party in interest as regards the merchandise in this action.

3.　　UTW paid all applicable duties, taxes, and fees, owed on liquidation of its entries, and filed Protest 270420127807 in order to seek duty refunds pursuant to section 514 of the Tariff Act of 1930, 19 U.S.C. § 1514.

4.　　UTW timely filed Protest 270420127807 on May 19, 2020, to contest the tariff classification of UTW's imported pop-up backpacking tents and to recover duties paid for imports

of such tents, with interest accruals.  Pursuant to 28 U.S.C. § 2631(a), UTW has standing to bring this action.

5.     Protest 270420127807 was denied by the government on November 4, 2020. Plaintiff filed a timely summons within 180 days of the denial, and this action is therefore timely in accordance with 28 U.S.C.§§ 2636(a).

## STATEMENT OF FACTS

### Product Description

6.     The subject merchandise consists of pop-up tents that are specially designed for the sport of backpacking.  The tents are designed to be lightweight, weatherproof, and easy to assemble and disassemble even under severe weather conditions.  The tents can be set up vertically during the day to provide a sheltered place to stand or sit, and horizontally at night for sleeping.

7.     The protested tent models have a floor area of less than 45 square feet and weigh less than eight pounds.  When folded for carrying, the tents fit into a disk-shaped carry case with backpack straps for ease of carrying.  The diameter of the carry cases is 21 inches or less, and the thickness is 3 inches.  Two of the protested models have a carry package volume of less than 1,000 cubic inches; the third protested model has a carry package volume of 1,039 cubic inches.

8.     The tents are constructed of durable, waterproof polyester; PVC that is weather-treated to withstand temperatures of -15 degrees Fahrenheit; and heavy gauge steel wire.  The materials, construction and design of the protested tent models were specifically selected for the purpose of making the tents suitable for use while backpacking.

## ADMINISTRATIVE HISTORY

### Protest 2704-19-102919

9.     UTW began importing pop-up backpacking tents in 2010.  The tents were classified

at entry under subheading 6306.22.1000, HTSUS, duty free, as backpacking tents from that point until September 2018.

10.     On September 5, 2018,  CBP issued a CF29 Notice of Action Taken, in which CBP reclassified 12 entries, covering five different models of pop-up tents, under subheading 6306.22.9030, HTSUS, carrying 8.8 % tariff duty.

11.     On April 9, 2019, UTW filed Protest 2704-19-102919, which protested the reclassification by CBP of 12 entries of pop-up backpacking tents under subheading 6306.22.9030, HTSUS.   In that Protest, UTW argued that the subject tents are correctly classifiable under subheading 6306.22.1000, HTSUS, because they satisfy all of the criteria for backpacking tents specified in Treasury Decision 86-163.

12.     On June 13, 2019, counsel for UTW received an email from the Supervisory Import Specialist ("SIS") assigned to review Protest 2704-19-102919, requesting entry packets for the protested entries.  UTW's attorney uploaded the requested entry packets and responded by email on June 14, 2019.

13.     On June 20, 2019, the SIS assigned to Protest 2704-19-102919 requested additional information and documentation in order to identify the specific tent models at issue in the Protest. The SIS further requested any literature supporting UTW's claim that the tents "are in fact backpacking tents."  UTW responded by email on July 22, 2019, with a letter and attachments providing the requested information for all entries.

14.     On October 10, 2019, CBP approved Protest 2704-19-102919, finding that the subject merchandise was properly classifiable under subheading 6306.22.1000, HTSUS.  In the Comments section of the ACE Decision field, CBP Noted that "Protest has been approved based upon received documents." A true and correct copy of the October 10, 2019 decision is attached

3

hereto as Exhibit 1.

15.     UTW had requested Application for Further Review ("AFR") for Protest 2704-19-102919.  However, AFR was not utilized because the Protest was approved by the CBP Center for Expertise and Excellence for Apparel, Footwear & Textiles.

16.     Following the October 10, 2019 protest decision that the subject merchandise was properly classifiable under subheading 6306.22.1000, HTSUS, UTW resumed classification of its pop-up backpacking tents under subheading 6306.22.1000, HTSUS, and filed post summary corrections for entries filed while Protest 2704-19-102919 was pending.

**CBP Actions Following Approval of Protest 2704-19-102919**

17.     On November 19, 2019, CBP issued a CF28 Request for Information with regard to entry WUG-0188371-8.   In that CF28, CBP requested information and documentation supporting the classification of the pop-up tents contained in that entry under subheading 6306.22.1000.  Entry WUG-0188371-8, which consisted of pop-up backpacking tents of the same models that were reviewed in approved Protest 2704-19-102919, was filed on October 28, 2019, after the Protest approval, and the tents were classified under subheading 6306.22.1000 in reliance on CBP's decision in Protest 2704-19-102919.

18.     Counsel for UTW responded to the CF28 by email on December 12, 2019, directing the import specialist who issued the CF28 to CBP's decision in Protest 2704-19-102919.

19.     On January 24, 2020, CBP issued a CF29 Notice of Proposed Action with respect to entry WUG-0188371-8 and 21 additional entries of pop-up backpacking tents, including 15 entries for which UTW had filed Post Summary Corrections.  In the CF29 Notice of Proposed Action, CBP stated its position that the subject tents were properly classifiable under subheading 6306.22.9030, HTSUS; the CF29 Proposed did not address the fact that CBP had previously

determined in Protest 2704-19-102919 that the tent models in question were properly classifiable under subheading 6306.22.1000, HTSUS.

20.     On March 20, 2020, counsel for UTW participated in a conference call with Supervisory Import Specialists Jose Ramos and David Cortez.  In that conversation, UTW was advised that the CEE had received classification guidance from a National Import Specialist that the subject tents were classifiable under subheading 6306.22.9030, HTSUS, and intended to classify UTW's pop-up backpacking tents in accordance with that guidance without regard to the decision issued in Protest 2704-19-102919.

**Protest 2704-19-107436**

21.     Following approval of Protest 2704-19-102919 and in reliance on the classification decision therein, on December 17, 2019 counsel for UTW filed Protest 2704-19-107436, in which UTW protested the classification of 8 entries of pop-up backpacking tents of models identical to those that were the subject of approved Protest 2704-19-102919.

22.     UTW did not apply for further review of Protest 2704-19-107436, on the understanding that the Protest was merely an administrative vehicle to bring entries into conformity with CBP's decision in Protest 2704-19-102919.

23.     During the March 20, 2020 conference call between CBP personnel and counsel for UTW, it was discussed that the Center for Excellence and Expertise would deny Protest 2704-19-107436 as a result of its position regarding classification of the subject merchandise.  In the conference, counsel for UTW inquired into the possibilities for amending Protest 2704-19-107436 to request AFR for those entries.  It was discovered during the discussion that one of the entries subject to Protest 2704-19-107436 was more than 180 days past liquidation and therefore no longer eligible for AFR.

24.     Following the conference call, SIS Ramos looked into the issue and consulted with Supervisory Liquidation Specialist Joseph DiSalvo of the Base Metals CEE, who has expertise in the ACE Protest module, and arranged for a conference call with Mr. DiSalvo and counsel for UTW.  In that subsequent conference call, Mr. DiSalvo recommended that UTW file a new Protest with AFR for the seven entries still eligible for amendment, and subsequently remove those entries from Protest 2704-19-107436.

### Protest 2704-20-127807 and HQ H311492

25.     Pursuant to CBP guidance, on May 19, 2020, counsel for UTW filed Protest 2704-20-127807, which protested seven of the eight entries included in Protest 2704-19-102919, and withdrew Protest 2704-19-102919.  UTW applied for further review of Protest 2704-20-127807.

26.     The protested merchandise in Protest 2704-20-127807 is identical to the merchandise protested in approved Protest 2704-19-102919.

27.     In Protest 2704-20-127807, UTW argued that the subject merchandise is properly classifiable under subheading 6306.22.1000, HTSUS, because it meets the criteria for backpacking tents established in Treasury Decision 86-163.

28.     UTW further argued that even if CBP determines that the subject tents are correctly classified under subheading 6306.22.9030, HTSUS, to do so with regard to the protested merchandise would violate 19 U.S.C. § 1625(c), which states that a decision that has been in effect for at least 60 days cannot be modified or revoked until 60 days after completion of notice and comment procedures specified in that provision.  Because the decision in Protest 2704-19-102919 was in effect for more than 60 days, observance of the notice and comment procedures in § 1625(c) is required before CBP may classify identical merchandise differently.

29.     On October 30, 2020, CBP issued HQ H311492 in response to the Application for

Further Review of Protest 2704-20-127807.   In that decision, CBP ruled that the subject merchandise is properly classified under subheading 6306.22.9030, HTSUS, and further ruled that 19 U.S.C. § 1625(c) did not apply because CBP's approval of Protest 2704-19-102919 was not a "decision" for purposes of that provision.  Pursuant to HQ H311492, CBP denied Protest 2704-20-127807 in full.  A true and correct copy of the ruling HQ H311492 is attached hereto as Exhibit 2.

## COUNT I

30.   Plaintiff realleges and incorporates herein the allegations of paragraphs 1 through 29.

31.   Plaintiff asserts that CBP's classification of its pop-up backpacking tents under subheading 6306.22.9030, HTSUS, at the 8.8 % rate of duty, is incorrect.

32.   Plaintiff asserts that the subject merchandise is properly classified at the duty-free rate within subheading 6306.22.1000, HTSUS, which provides for: "Tarpaulins, awnings and sunblinds; tents (including temporary canopies and similar articles); sails for boats, sailboards or landcraft; camping goods: Tents (including temporary canopies and similar articles): Of synthetic fibers: Backpacking tents."

33.   The guidelines for determining whether a tent is a "backpacking tent" for purposes of classification under subheading 6306.22.1000, HTSUS, are provided in Treasury Decision 86-163 (1986).  T.D. 86-163 provides that a tent shall be considered a backpacking tent where it is (1) "specially designed for the sport of backpacking," (2) composed of nylon, polyester, or any other fabric of man-made fibers, and (3) meets certain enumerated criteria for floor area, overall weight, and carry size.

34.   CBP is flexible in applying the T.D. 86-163 guidelines, finding tents to be

classifiable as backpacking tents where the physical specifications vary slightly from the guidelines "when the difference is slight when considered with the tent's over-all specifications." *See* NY N113736 (July 9, 2010); *see also* HQ H250306 (December 3, 2014) (classifying a tent over the specified weight allowance as a backpacking tent); HQ 086091 (January 11, 1990) (classifying a tent exceeding the specified length as a backpacking tent).

35.    The subject tents are specially designed for use while backpacking, are composed predominantly of polyester, and meet all or substantially all guidelines for size and weight. Accordingly, the subject tents satisfy the guidelines in T.D. 86-163 and are properly classifiable as backpacking tents under subheading 6306.22.1000, HTSUS.  The applicable rate of duty is free.

### COUNT II

36.    Plaintiff realleges and incorporates herein the allegations of paragraphs 1 through 29.

37.    In the alternative, classification of the subject merchandise under subheading 6306.22.9030, HTSUS, is prohibited by 19 U.S.C. § 1625(c).

38.    19 U.S.C. § 1625(c)(1) provides that a proposed interpretive ruling or decision which would modify or revoke a prior "interpretive ruling or decision which has been in effect for at least 60 days" must be published in the Customs Bulletin and comments accepted for 30 days after publication, followed by publication of a final ruling or decision; that final ruling or decision does not become effective until 60 days after the date of its publication.

39.    This Court has ruled that the term "interpretive ruling or decision" covers "interpretive rulings, ruling letters, internal advice memoranda, protest review decisions, or decisions that are the functional equivalent of interpretive rulings or decisions." *Kahrs Int'l, Inc. v. United States*, 645 F. Supp. 2d 1251, 1285 (Ct. Int'l Tr. 2009).   This Court has further ruled

that a "decision" for purposes of § 1625(c) "is not limited to" a protest review decision: "If a determination is the result of considered deliberations, if it 'interprets and applies the provisions of the Customs and related laws to a specific set of facts,' if it has the effect of 'unilaterally chang[ing] the rules' upon which importers have come to rely, if it is otherwise 'the functional equivalent of interpretive rulings or decisions,' then it may be an interpretive ruling or decision and thereby may trigger 19 U.S.C. § 1625 notice and comment requirements." *American Fiber & Finishing, Inc. v. United States,* 121 F. Supp. 3d 1273, 1279-80 (Ct. Int'l Tr. 2015) (internal citations omitted).

40.     Approved Protest 2704-19-102919, in which CBP ruled that the same backpacking tent models at issue here are classified under subheading 6306.22.1000, HTSUS, is a "prior decision" for purposes of § 1625(c) because it was the result of considered deliberations, interpreted and applied the provisions of the HTSUS to the subject merchandise, and had the effect of establishing rules regarding classification of the subject merchandise on which Plaintiff reasonably relied for ongoing imports of identical merchandise.  As such, the decision in Protest 2704-19-102919 is the "functional equivalent" of the exemplar interpretive rulings and decisions enumerated in the statute, and therefore must remain in effect until the notice and comment requirements in § 1625(c) are completed.

41.     Because protest review decision HQ H311492 made a different classification decision from Protest 2704-19-102919 with regard to identical merchandise, it effectively revoked the prior decision of Protest 2704-19-102919 contrary to law without following the notice and comment requirements of 19 U.S.C. § 1625(c).

### PRAYER FOR RELIEF

WHEREFORE, UTW prays for the entry of a judgment:

(1) Declaring that the subject tents are properly classified under subheading 6306.22.1000, HTSUS, as backpacking tents;

(2) in the alternative, declaring that the approval of Protest 2704-19-102919 is a "decision" for purposes of 19 U.S.C. § 1625(c) and that HQ H311492 is unlawful;

(3) ordering CBP to reliquidate all subject entries under subheading 6306.22.1000, HTSUS, and to refund all excess duties paid, together with interest accruing thereon, as provided by law;

(4) awarding Plaintiff its costs and reasonable attorney fees; and

(5) awarding Plaintiff such additional relief as the Court may deem necessary and proper.


Respectfully submitted,

/s/ Heather Jacobson
Heather Jacobson
Alena Eckhardt

NAKACHI ECKHARDT & JACOBSON, P.C.
2815 Elliott Avenue, Suite 100
Seattle, WA 98121-2991
Tel: (206) 774-0927
Email: hjacobson@tradelawcounsel.com
            eckhardt@tradelawcounsel.com

*Counsel for Plaintiff Under the Weather, LLC.*


Dated: June 23, 2023

# EXHIBIT 1



# Protest # 270419102919

**AFR**   **Input by Trade**

Action ▾

| | | | | | | |
|---|---|---|---|---|---|---|
| **Protest Status** | Approved | | | | | |
| **Protest Type** | 514 Protest | **Date Received** | 04/09/2019 | **Entry Number** | 9BM00706609 | |
| **Importer Number** | 45-464851600 | **Port Code** | 2704 | **Team Number** | 034 | |
| **Decision Date** | 10/16/2019 | **Center ID** | CEE004 - Apparel, Footwear and Textiles | | | |

| | | | | | |
|---|---|---|---|---|---|
| **Protest Filer Number** | 91-193343100 | **Protest Filer Type** | Attorney | **Refund C/O Number** | |
| **Protestant Number** | 45-464851600 | **Protestant Type** | Importer/Consignee | | |
| **Substitute Party Number** | | **Substitute Party Type** | | | |

| | | | | | |
|---|---|---|---|---|---|
| **Issue** | Classification | **Secondary Issue** | | **Claimed Tariff** | 6306221000 |
| **Internal Advice Number** | | **Denied Claim Number** | | **Lead Protest Number** | |
| **AFR Requested** | YES | **Accelerated Disposition** | NO | | |
| **Sample Provided** | NO | | | | |

## Reason for Protest ···

Please see the attached Memorandum for a full description of the reason for protest.

| Decision | Entries | Parties | Summons | History | Documents | AFR | Post Decision | Additional Arguments |
|---|---|---|---|---|---|---|---|---|

Decision          Approved

Comments        Protest has been approved based upon received documents.

Date/Time:       10/10/2019 01:41 PM

# EXHIBIT 2



## Protest # 270420127807

AFR   Input by Trade

Action ▾

| Protest Status | Denied | | | | |
|---|---|---|---|---|---|
| Protest Type | 514 Protest | Date Received | 05/19/2020 | Entry Number | INL00041514 |
| Importer Number | 45-464851600 | Port Code | 2704 | Team Number | 074 |
| Decision Date | 11/04/2020 | Center ID | CEE004 - Apparel, Footwear and Textiles | | |

| Protest Filer Number | 46-515564600 | Protest Filer Type | Attorney | Refund C/O Number | |
|---|---|---|---|---|---|
| Protestant Number | 45-464851600 | Protestant Type | Importer/Consignee | | |
| Substitute Party Number | | Substitute Party Type | | | |

| Issue | Classification | Secondary Issue | | Claimed Tariff | 6306221000 |
|---|---|---|---|---|---|
| Internal Advice Number | | Denied Claim Number | | Lead Protest Number | |
| AFR Requested | YES | Accelerated Disposition | NO | | |
| Sample Provided | NO | CBMA Acknowledged | | | |

**Reason for Protest** ⋯

Please see attached memorandum and exhibits.

| Decision | Entries | Parties | Summons | History | Documents | AFR | Post Decision |
|---|---|---|---|---|---|---|---|

**Additional Arguments**

| Decision | Denied |
|---|---|
| Comments | Protest denied based on Ruling decision |
| Date/Time: | 11/04/2020 07:56 AM |



**U.S. Department of Homeland Security**
Washington, DC 20229

**U.S. Customs and
Border Protection**

HQ H311492

October 30, 2020

OT:RR:CTF:FTM  H311492  TJS

CATEGORY:  Classification

TARIFF NO.:  6306.22.9030

Center Director
Apparel, Footwear & Textiles CEE
200 East Bay Street
Charleston, South Carolina 29401

Attn:  Nikki Bobbie, Import Specialist

RE:  Application for Further Review of Protest No. 2704-20-127807; Tariff Classification of
Pop-up Tents from China

Dear Center Director:

This is in reference to the Application for Further Review ("AFR") of Protest No. 2704-20-127807, timely filed on May 19, 2020, by the law firm of Junker & Nakachi, on behalf of their client, Under The Weather Inc. ("UTW" or "Protestant"), concerning U.S. Customs and Border Protection's ("CBP") tariff classification of certain pop-up tents under subheading 6306.22.9030 of the Harmonized Tariff Schedule of the United States Annotated ("HTSUSA"). UTW claims that the pop-up tents are properly classified under subheading 6306.22.1000, HTSUSA.  Our decision is set forth below.

**FACTS:**

This AFR concerns the classification of three models of pop-up tents identified as MyPod™, OriginalPod™, and XLPod™.  The tents are composed of waterproof polyester, clear weather-treated polyvinylchloride (PVC), and flexible steel wire rod.  The polyester fabric constitutes the roof, floor, and back wall, and the PVC material constitutes three walls of the pop-up tent.  The MyPod™ has zippered doors on three walls and a zippered partial opening on

the back wall for ventilation.  The OriginalPod™ and XLPod™ have tapered walls, a zippered door on the front, and zippered partial openings (windows) on the remaining walls.  The tents come with metal pegs that secure the four bottom corners to the ground.  When not in use, the tent is folded into a disc shape and placed in a specially shaped carry case that includes carrying straps for carrying the tent on the back.  UTW claims that the tents are designed to be used in two positions: vertical for sitting and horizontal for sleeping.  The country of origin of these pop-up tents is China.

Product specifications are as follows:

|  | MyPod™ | OriginalPod™ | XLPod™ |
|---|---|---|---|
| Dimensions when assembled | 35"(W) x 35"(D) x 59"(T) | 42"(W) x 42"(D) x 59"(T) | 45"(W) x 45"(D) x 59"(T) |
| Floor area | 14.34 square feet in horizontal position 8.51 square feet in vertical position | 16.39 square feet in horizontal position 11.11 square feet in vertical position | 18.13 square feet in horizontal position 14.06 square feet in vertical position |
| Carry package diameter | 19.5 inches | 20 inches | 21 inches |
| Carry package width | 3 inches | 3 inches | 3 inches |
| Carry package volume | 895.94 cubic inches | 942.47 cubic inches | 1039 cubic inches |
| Weight (incl. tent bag and all accessories) | 7.02 lbs | 7.1 lbs | 7.22 lbs |
| Materials | Waterproof polyester; weather-treated PVC; 1.5mmx6mm steel wire rod | Waterproof polyester; weather-treated PVC; 1.5mmx6mm steel wire rod | Waterproof polyester; weather-treated PVC; 1.5mmx6mm steel wire rod |
| Occupancy | 1 person | 1 person | 1 person |

Below are photos or the MyPod™, OriginalPod™, and XLPod™:



According to UTW's submission, UTW began importing pop-up tents in 2010 under subheading 6306.22.1000, HTSUSA, which provides for, "Tarpaulins, awnings and sunblinds;

tents; sails for boats, sailboards or landcraft; camping goods: Tents: Of synthetic fibers: Backpacking tents."  In September 2018, CBP issued a Customs Form ("CF") 29 Notice of Action, in which CBP reclassified 12 entries of pop-up tents, identical to the ones at issue, under subheading 6306.22.9030, HTSUSA, which provides for, "Tarpaulins, awnings and sunblinds; tents; sails for boats, sailboards or landcraft; camping goods: Tents: Of synthetic fibers: Other: Other."  In accordance with the September 2018 CF 29, UTW began entering the tents under subheading 6306.22.9030, HTSUSA.  On April 9, 2019, UTW filed Protest No. 2704-19-102919 protesting CBP's tariff classification of the pop-up tents in subheading 6306.22.9030, HTSUSA. On October 10, 2019, CBP granted Protest No. 2704-19-102919, finding that the pop-up tents were classified in subheading 6306.22.1000, HTSUSA.  To reflect the approval of Protest No. 2704-19-102919 and collect refunds, UTW filed Protest No. 2704-19-107436 on December 17, 2019 for liquidated entries and filed Post Summary Corrections for unliquidated entries made while Protest No. 2704-19-102919 was pending.  On January 24, 2020, CBP issued a CF 29 to UTW stating its intention not to refund duties with respect to certain entries of the pop-up tents because the tents were not considered backpacking tents.  On May 19, 2020, UTW filed the subject Protest No. 2704-20-127807 and AFR for seven entries dated between December 2018 and February 2019 that were liquidated between November 2019 and January 2020.  The subject tents were liquidated as entered under subheading 6306.22.9030, HTSUSA.

**ISSUE:**

What is the tariff classification of the MyPod™, OriginalPod™, and XLPod™ pop-up tents under the HTSUSA?

**LAW AND ANALYSIS:**

Initially, we note that the matter is protestable under 19 U.S.C. § 1514(a)(2) as a decision on classification.  The protest was timely filed on May 19, 2020, within 180 days of liquidation of the first entry pursuant to 19 U.S.C. § 1514(c)(3).

Protestant alleges that Further Review of Protest No. 2704-20-127807 should be accorded pursuant to 19 C.F.R. § 174.24(a) because the decision against which the protest was filed is alleged to be inconsistent with a ruling of the Commissioner of CBP or his designee, or with a decision made by CBP with respect to the same or substantially similar merchandise.  We find that Further Review of Protest No. 2704-20-127807 is properly accorded to Protestant pursuant to 19 C.F.R. § 174.24(a).

Classification of goods under the HTSUS is made in accordance with the General Rules of Interpretation ("GRI").  GRI 1 provides that the classification of goods shall be determined according to the terms of the headings of the tariff schedule and any relative section or chapter notes.  In the event that the goods cannot be classified solely on the basis of GRI 1, and if the headings and legal notes do not otherwise require, the remaining GRI may then be applied in order.  Pursuant to GRI 6, classification at the subheading level uses the same rules, *mutatis mutandis*, as classification at the heading level.

The 2019 and 2020 HTSUSA provisions under consideration are the following:

6306:     Tarpaulins, awnings and sunblinds; tents; sails for boats, sailboards or landcraft; camping
          goods:
6306.22:          Tents: Of synthetic fibers:
6306.22.1000:          Backpacking tents…
6306.22.9030:          Other: Other…

\*          \*          \*          \*          \*

Because the classification dispute of the subject merchandise occurs beyond the four-digit heading level, GRI 6 is implicated.  GRI 6 states:

> For legal purposes, the classification of goods in the subheading of a heading shall be determined according to the terms of those subheadings and any related subheading notes, and *mutatis mutandis,* to the above rules, on the understanding that only subheadings at the same level are comparable. For the purposes of this rule, the relative section, chapter and subchapter notes also apply, unless the context otherwise requires.

\*          \*          \*          \*          \*

In addition, the Explanatory Notes ("EN") to the Harmonized Commodity Description and Coding System represent the official interpretation of the tariff at the international level. While neither legally binding nor dispositive, the ENs provide a commentary on the scope of each heading of the HTSUS and are generally indicative of the proper interpretation of these headings.  *See* T.D. 89-80, 54 Fed. Reg. 35127, 35128 (Aug. 23, 1989).

EN 63.06 provides, in relevant part, as follows:

> (4) Tents are shelters made of lightweight to fairly heavy fabrics of man-made fibres, cotton or blended textile materials, whether or not coated, covered or laminated, or of canvas. They usually have a single or double roof and sides or walls (single or double), which permit the formation of an enclosure.  The heading covers tents of various sizes and shapes, e.g., marquees and tents for military, camping (including backpack tents), circus, beach use.  They are classified in this heading, whether or not they are presented complete with their tent poles, tent pegs, guy ropes or other accessories.

\*          \*          \*          \*          \*

Backpacking tents have not been defined at the international level.  The distinction between backpacking tents and other tents is an issue only at the United States eight-digit subheading level.  In *Newman Importing Co. v. United States*, 415 F. Supp. 375 (Cust. Ct. 1976) the court held that backpacking was a sport and tents used in pursuit of backpacking could be considered sport equipment under the Tariff Schedule of the United States ("TSUS"), the predecessor to the HTSUS.  Accordingly, CBP promulgated guidelines in C.S.D. 79-108, dated August 21, 1978, to distinguish between tents for backpacking, as sport equipment, and all other tents, as articles of textile materials.  At that time, there was no specific provision for backpacking tents in the tariff schedule.  In 1984, a specific classification for "backpacking tents of textile material" was added under item 735.2048 of the TSUS.  Treasury Decision ("T.D.") 86-163, dated August 5, 1986, updated the specific guidelines for determining whether a tent could be considered a backpacking tent for purposes of classification under item 735.20 of the

TSUS.  The guidelines in T.D. 86-163 provided the following criteria for classification as a backpacking tent:

(1)  It must be specially designed for backpacking.

(2)  It must be composed of nylon, polyester, or other fabric of man-made fibers.

(3)  If designed for one or two persons, the tents must meet the following criteria:
   a.  Have a floor area of 45 square feet or less; and
   b.  Weight 8 ½ pounds or less; and
   c.  Have a carry size of 30 inches or less in length and 9 inches or less in diameter.  If other than cylindrical in shape, the tent package must not exceed 1,900 cubic inches.

(4)  If designed for three or four persons, the tent must meet the following criteria:
   a.  Have a floor space of 65 square feet or less; and
   b.  Weigh 12 pounds or less, including tent bag and all accessories necessary to pitch the tent; and
   c.  Have a carry size of 30 inches or less in length and 10 inches or less in diameter. If other than cylindrical in shape, the tent package must not exceed 2,350 cubic inches.

Any tent with a floor of more than 65 square feet and a standing height of more than 60 inches is a tent for general recreational use.

Although T.D. 86-163 provides guidelines on whether tents are classified as "sport equipment" under the TSUS, which is no longer in effect, CBP continues to apply the guidelines to classify backpacking tents under subheading 6306.22.1000, HTSUSA.  *See* Headquarters Ruling Letter ("HQ") H250306 (Dec. 3, 2014); HQ 961995 (Oct. 25, 1999); HQ 951263 (June 15, 1992); HQ 086076 (Feb. 15, 1990); and HQ 086091 (Jan. 11, 1990).

UTW argues that the subject tents meet the guidelines under T.D. 86-163.  Specifically, UTW argues that the tents are specially designed for the sport of backpacking because the tents are lightweight, weather resistant, stable, durable, easily assembled and disassembled, and highly portable because the tents can be folded into a lightweight package that can be worn underneath a backpack.  UTW also contends that the tent was initially designed for backpacking.

According to UTW's measurements, the MyPod™, OriginalPod™, and XLPod™ meet the dimensional and weight criteria for one-person backpacking tents in T.D. 86-163.  With regard to the fabric composition criterion, the subject tents are composed of three PVC walls and a polyester top, bottom, and back.  The presence of plastic material does not preclude classification as a backpacking tent.  *See, e.g.*, New York Ruling Letter ("NY") J87818 (Sept. 2, 2003) (classifying tents with a floor made of polyethylene sheeting material as backpacking tents); HQ 961834 (June 17, 1999) (stating that a tent made substantially of nylon, but with a floor and small part of the walls made of polyethylene, met the fabric composition requirement).  However, CBP has ruled that a tent fails to meet the requirement for a backpacking tent if a significant portion of the tent is composed of plastic.  In NY B84342, dated May 6, 1997, CBP determined that a tent did not meet the T.D. 86-163 guidelines because it was not specially designed for the sport of backpacking and a significant portion of the tent was composed of plastic.  Specifically, the floor and three-quarters of the walls were composed of polyethylene sheeting material, the balance of the walls and roof were made of woven nylon taffeta fabric, and the tent featured a mesh screen fabric door and window.  Here, UTW's tents have three walls

5

composed primarily of clear PVC, which constitutes a substantial portion of the tents and distinguishes UTW's tents from typical backpacking tents, which are composed primarily of fabric of man-made fibers. *See, e.g.,* NY N300778 (Oct.23, 2018) (bivouac sacs made of man-made fabric); NY N239224 (Mar. 12, 2013) (tents made of nylon); *How to Choose a Backpacking Tent*, REI, https://www.rei.com/learn/expert-advice/backpacking-tent.html ("A wide range of specialized nylons and polyesters are used in tents.") (last accessed Sept. 23, 2020).

In examining the physical characteristics, design, and marketing, we find that the tents are not specially designed for the sport of backpacking. UTW claims that the tents are designed so that a person can sleep when the tents are placed horizontally. The court in *Newman* notes that "the use of a tent for shelter is part of the sport of backpacking, which encompasses not only the act of walking with a pack on the back but all the activities associated with the maintenance of the individual while away from "civilization."" *Newman Importing Co. v. United States*, 415 F. Supp. at 376. Furthermore, in T.D. 86-163, CBP stated that "backpacking tents are not designed for the storage of gear and equipment, changing, standing, or eating, but rather to serve as a shelter and a temporary sleeping area for backpackers." Thus, a tent that is specially designed as a shelter for backpackers must provide the facility for rest and sleep as part of self-maintenance. Although UTW provided photos depicting a person laying horizontally in the tent, these photos do not convince us that the tents are suitable for sleeping. The tents have a horizontal length of only 59 inches (4 feet 11 inches) and therefore are not suitable as a sleeping shelter for an average-heighted person.[1] UTW's website suggests laying the tent "on its side and climb into a sleeping bag." However, a sleeping bag will not fit in the horizontal tents because sleeping bag lengths typically range to fit people up to 5 feet 4 inches to those 6 feet 6 inches in height. *See How to Fit a Sleeping Bag*, BE OUTDOORS, https://www.outdoors.org/articles/amc-outdoors/how-to-fit-a-sleeping-bag (Apr. 24, 2012); *Choosing the Right Fit For Sleeping Bags*, THERM-A-REST, https://www.thermarest.com/blog/choosing-sleeping-bag-fit/ ("Therm-a-Rest bags come in three sizes: small (5 ft. 6 in.), regular (6 ft.), and long (6 ft. 6 in.).") (Mar. 7, 2019); *Sleeping Bags*, FIELD & STREAM, https://www.fieldandstreamshop.com/f/sleeping-bags (offering adult sleeping bags ranging 5.5 feet to over 6 feet) (last accessed Sept. 23, 2020). According to the Protestant's submission, UTW designed the tents to meet the 60 inch height restriction for backpacking tents in T.D. 86-163. In doing so, however, UTW limited the horizontal floor space, impairing the tent's livability and viability for backpacking. We also note that because the peg loops are located only on the bottom corners, the pegs would not securely anchor the tent to the ground when placed horizontally. We find that the tents are not specially designed for the sport of backpacking because they do not function as sleeping tents.

Furthermore, there is conflicting evidence as to UTW's claim that the tents were originally designed for backpacking. UTW provided statements from their website, a signed declaration of UTW's founder, and email exchanges between UTW's founder and a manufacturer to support this claim. However, UTW's website also states, "After years in the making, in 2010 [founder Rick Pescovitz] sketched out his first WeatherPod™ design on his way

---

[1] According to the National Center for Health Statistics, the average height for American men is 69 inches and for women is 63.6 inches. *Body Measurements*, NATIONAL CENTER FOR HEALTH STATISTICS, *available at* https://www.cdc.gov/nchs/fastats/body-measurements.htm (last accessed Sept. 10, 2020).

back from one of his kid's soccer tournaments after he and other spectators sitting in 29-degree sleet, high winds, and freezing cold conditions were soaked to the bone." Furthermore, Mr. Pescovitz appeared on the television show "Shark Tank," where he explained that UTW "has revolutionized the outdoor spectator experience." Throughout his business pitch, he explains that he invented the UTW sports pod after encountering inclement weather elements while watching his kid's outdoor athletic games. Notably, the Shark Tank pitch does not include any reference to backpacking or sleeping. *Shark Tank*, UNDER THE WEATHER, https://utwpods.com/blogs/news-and-views/shark-tank (last accessed Sept. 17, 2020). Despite this conflicting evidence, we find that although backpacking may have been a consideration in the inception of the tents, the ultimate and current design is not suitable for backpacking.

In addition to the design, the tents' marketing indicates that they are primarily used for general recreation. UTW markets the tents to spectators of outdoor sporting events and, recently, as solutions for "social distancing." In addition to the Shark Tank episode, UTW has promoted the tents on several television news programs as a "tailgate essential" for watching outdoor sporting events. None of the segments mentions that the tents are designed or used for backpacking or sleeping. *News and Views*, UNDER THE WEATHER, https://utwpods.com/blogs/news-and-views (last accessed Sept. 17, 2020). Product reviews on UTW's website and other online retailers further indicate that most consumers use the tents for watching outdoor sports events.

Protestant argues that the pop-up tents are similar to those classified in HQ 961995. The merchandise in HQ 961995 consisted of four styles of pop-up tents constructed of nylon woven fabric. The tents consisted of a spring metal frame within the fabric that could be coiled into a flat disc shape. The folded tents were held in place by an elasticized strap and contained in a zippered disc-shaped carrying case made of the same material. The user could carry the case by its handles or attach it to a backpack. Although the tents at issue and those in HQ 961995 have a similar pop-up design and disc-shaped carry case, they are distinguishable because the tents at issue have a significantly smaller floor area. Unlike the tents in HQ 961995, where the tents' floor area ranged from 26 to 54 square feet, the MyPod™, OriginalPod™, and XLPod™ have a floor space of 8.51, 11.11, and 14.06 square feet, respectively, in the vertical position, and 14.34, 16.39, and 18.13 square feet, respectively, in the horizontal position. As discussed above, floor space affects a tent's livability and functionality as a shelter during backpacking.

Consistent with prior CBP rulings and pursuant to T.D. 86-163, we find that the pop-up tents do not meet the criteria to qualify as backpacking tents under subheading 6306.22.1000, HTSUSA. Therefore, the subject pop-up tents are classified under subheading 6306.22.9030, HTSUSA, which provides for "Tarpaulins, awnings and sunblinds; tents; sails for boats, sailboards or landcraft; camping goods: Tents: Of synthetic fibers: Other: Other."

Protestant also claims that CBP is precluded from denying the protest without publishing the proposed ruling pursuant to the notice and comment requirements of 19 U.S.C. § 1625(c). Protestant argues that CBP's approval of Protest No. 2704-19-102919 on October 10, 2019, in which CBP classified similar and identical tents as backpacking tents under subheading 6306.22.1000, HTSUSA, was the result of considered deliberations by CBP and application of the Customs laws. As such, Protestant argues that the approval of Protest No. 2704-19-102919

constitutes a "prior interpretive ruling or decision" for purposes of 19 U.S.C. § 1625(c), and CBP cannot now modify or revoke the classification decision made therein without observing the notice and comment procedures provided for in 19 U.S.C. § 1625(c).  In support of its argument, UTW cites *Int'l Customs Prods. v. United States*, wherein the Court of International Trade held that a CF 29 Notice of Action issued by CBP after a tariff rate investigation of the Plaintiff's product and several months of deliberation and debate within the agency was an interpretive ruling or decision under 19 U.S.C. § 1625(c).  *Int'l Customs Prods. v. United States*, 549 F. Supp. 2d 1384, 1390-94 (Ct. Int'l Trade 2008) (*aff'd Int'l Customs Prods. v. United States*, 748 F.3d 1182, 1185-89 (Fed. Cir. 2014)).

19 U.S.C. § 1625(c) provides that:

A proposed interpretive ruling or decision which would –

(1)  modify (other than to correct a clerical error) or revoke a prior interpretive ruling or decision which has been in effect for at least 60 days; or

(2) have the effect of modifying the treatment previously accorded by the Customs Service to substantially identical transactions;

shall be published in the Customs Bulletin. The Secretary shall give interested parties an opportunity to submit, during not less than the 30-day period after the date of such publication, comments on the correctness of the proposed ruling or decision. After consideration of any comments received, the Secretary shall publish a final ruling or decision in the Customs Bulletin within 30 days after the closing of the comment period. The final ruling or decision shall become effective 60 days after the date of its publication.

Section 1625(c)(1) applies only to "prior interpretive rulings and decisions" covering merchandise identical to the merchandise that is the subject of a dispute.  Although UTW attempts to draw an analogy between *Int'l Customs Prods. v. United States* and this case, extensive intra-agency deliberations involving multiple agency officials at issue in *Int'l Customs Prods.* are hardly equivalent to the actions of a single Senior Import Specialist in reviewing and allowing Protest No. 2704-19-102919.  Here, CBP merely allowed Protest No. 2704-19-102919 and there was no protest review decision.  Thus, we find that Protestant has not demonstrated that CBP has issued a pertinent "prior interpretive ruling or decision" within the meaning 19 U.S.C. § 1625(c)(1) and Protestant's claim regarding that provision fails.  *See* HQ H242777 (Oct. 15, 2019).

**HOLDING:**

By application of GRI 1, the subject pop-up tents are classified under subheading 6306.22.9030, HTSUSA, which provides for "Tarpaulins, awnings and sunblinds; tents; sails for

boats, sailboards or landcraft; camping goods: Tents: Of synthetic fibers: Other: Other." The 2019 and 2020 column one, general rate of duty is 8.8% *ad valorem*.

You are instructed to DENY the protest in full.

In accordance with Sections IV and VI of the CBP Protest/Petition Processing Handbook (HB 3500-08A, December 2007, pp. 24 and 26), you are to mail this decision, together with the CBP Form 19, to the Protestant no later than 60 days from the date of this letter. Any re-liquidation of the entry or entries in accordance with the decision must be accomplished prior to mailing the decision.

Sixty days from the date of the decision, the Office of Trade, Regulations and Rulings will make the decision available to CBP personnel, and to the public on the Customs Rulings Online Search System ("CROSS") at https://rulings.cbp.gov/ which can be found on the U.S. Customs and Border Protection website at http://www.cbp.gov and other methods of public distribution.

Sincerely,

YULIYA A GULIS
Digitally signed by
YULIYA A GULIS
Date: 2020.10.30
12:48:55 -04'00'

*For* Craig T. Clark, Director
Commercial and Trade Facilitation Division