UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: HON. TIMOTHY M. REIF, JUDGE

———————————————————————— :
                                                                    :
UNDER THE WEATHER, LLC,                        :
                                                                    :
                              Plaintiff,               :
                                                                    :
                    v.                                       :        Court No. 21-00211
                                                                    :
UNITED STATES,                                        :
                                                                    :
                              Defendant.             :
———————————————————————— :

## <u>**ORDER**</u>

Upon considering defendant's partial motion to dismiss plaintiff's complaint, and upon consideration of other papers and proceedings had herein, it is hereby

**ORDERED** that defendant's motion is granted; and it is further

**ORDERED** that Count II of plaintiff's complaint is dismissed.


_____
                                                            Judge

Dated: _____
            New York, New York

UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: HON. TIMOTHY M. REIF, JUDGE

| | | |
|---|---|---|
| UNDER THE WEATHER, LLC, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Court No. 21-00211 |
| | : | |
| UNITED STATES, | : | |
| | : | |
| Defendant. | : | |

## **DEFENDANT'S PARTIAL MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. McCARTHY
Director

JUSTIN R. MILLER
Attorney-In-Charge
International Trade Field Office

*Of Counsel*:                                            LUKE MATHERS
Yelena Slepak                                          Trial Attorney
Emma Tiner                                             Department of Justice, Civil Division
Office of the Assistant Chief Counsel      Commercial Litigation Branch
International Trade Litigation                   26 Federal Plaza – Suite 346
U.S. Customs and Border Protection       New York, New York 10278
                                                             (212) 264-9236
Dated: September 21, 2023                      *Attorneys for Defendant*

**<u>TABLE OF CONTENTS</u>**

BACKGROUND ................................................................................................................2

ARGUMENT ...................................................................................................................6

    I.    Standard Of Review ....................................................................................6

    II.   The Complaint Fails To State The Claim That The '919 Protest's Approval
          Was A Prior Interpretive Ruling Or Decision That Had To Be Revoked
          Under 19 U.S.C. § 1625(c)(1) Before HQ H311492 Could Be Issued...................6

          A.    Entry-Specific Determinations That Do Not Apply The Law To
                   Facts Are Not "Interpretive Rulings Or Decisions" Subject To
                   § 1625's Procedures ........................................................................7

          B.    Customs' Approval Of The '919 Protest Was Not Functionally
                   Equivalent To An Interpretive Ruling Or Decision Because It
                   Lacked Prospective Effect, Interpreted Nothing, And Was Not
                   Plausibly The Result Of R&R's Considered Deliberations ......................11

CONCLUSION.................................................................................................................15

# TABLE OF AUTHORITIES

**Cases**

*Am. Fiber & Finishing, Inc. v. United States*,
121 F. Supp. 3d 1273 (Ct. Int'l Trade 2015) ............................................................ 9, 12, 13

*Arbor Foods, Inc. v. United States*,
30 C.I.T. 670 (2006) ..................................................................................................... 14

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009).................................................................................................... 6, 13

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007).................................................................................................... 6, 13

*Browning v. Clinton*,
292 F.3d 235 (D.C. Cir. 2002)......................................................................................... 6

*Int'l Custom Prods., Inc. v. United States*,
549 F. Supp. 2d 1384 (Ct. Int'l Trade 2008) ............................................................ 11, 13

*Int'l Custom Prods., Inc. v. United States*,
748 F.3d 1182 (Fed. Cir. 2014) ..................................................... 9, 10, 11, 12, 13, 14

*Kahrs Int'l, Inc. v. United States*,
645 F. Supp. 2d 1251 (Ct. Int'l Trade 2009) ........................................... 9, 10, 12, 13

*Kellogg Brown & Root Servs., Inc. v. United States*,
728 F.3d 1348 (Fed. Cir. 2013) ....................................................................................... 6

*S. Shrimp Alliance v. United States*,
617 F. Supp. 2d 1334 (Ct. Int'l Trade 2009) ................................................................ 12

*Sea-Land Serv., Inc. v. United States*,
239 F.3d 1366 (Fed. Cir. 2001) ....................................................................................... 9

*United Pac. Ins. Co. v. United States*,
464 F.3d 1325 (Fed. Cir. 2006) ....................................................................................... 6

*United States v. Horizon Prods. Int'l Inc.*,
82 F. Supp. 3d 1350 (Ct. Int'l Trade 2015) ................................................................... 3

**Statutes**

19 U.S.C. § 1514(c)(1)...................................................................................................... 3

19 U.S.C. § 1515(a) ......................................................................................................... 4

19 U.S.C. § 1625(a) ................................................................................ 6, 9, 15

19 U.S.C. § 1625(c) ................................................................ 1, 5, 6, 8, 9, 12, 15

19 U.S.C. § 1625(c)(1) .................................................................. 1, 5, 7, 12, 14

19 U.S.C. § 4317 ............................................................................................. 3

Customs Modernization Act,
  Pub. L. 103-182, § 623, 107 Stat. 2057, 2186–87 (1993) ........................... 8

Customs Procedural Reform and Simplification Act,
  Pub. L. 95-410, § 112, 92. Stat. 888, 898 (1978) .................................... 7, 8

Miscellaneous Trade and Technical Corrections Act,
  Pub. L. 104-295, § 21(e)(14), 110 Stat. 3514, 3531 (1996) ........................ 8

**Regulations**

19 C.F.R. § 101.1 ........................................................................................... 3

19 C.F.R. § 152.2 ........................................................................................... 3

19 C.F.R. § 174.13(a) ..................................................................................... 3

19 C.F.R. § 174.13(b) ..................................................................................... 3

19 C.F.R. § 174.23 ..................................................................................... 4, 14

19 C.F.R. § 174.24 ......................................................................................... 4

19 C.F.R. § 174.24(a) ..................................................................................... 4

19 C.F.R. § 174.24(b) ..................................................................................... 4

19 C.F.R. § 174.25 ......................................................................................... 4

19 C.F.R. § 174.25(b)(3) ................................................................................. 4

19 C.F.R. § 174.26 ......................................................................................... 4

19 C.F.R. § 174.26(a) ..................................................................................... 5

19 C.F.R. § 174.26(b)(1) ................................................................................. 4

19 C.F.R. § 174.29 ......................................................................................... 4

19 C.F.R. § 174.30(a) ..................................................................................... 4

19 C.F.R. § 174.32 ................................................................................................................ 4

19 C.F.R. § 177.1(d)(1) ..................................................................................................... 13

19 C.F.R. § 177.1(d)(6) ....................................................................................................... 4

19 C.F.R. § 177.2(b)(2)(ii)(B) ........................................................................................... 4

19 C.F.R. § 177.10 ............................................................................................................... 9

**Rules**

USCIT Rule 12(b)(6) ..................................................................................................... 6, 13

**Other Authorities**

*Announcement of Test Providing Centralized Decision-Making Authority for Four CBP Centers of Excellence and Expertise*,
    77 Fed. Reg. 52,048 (Aug. 28, 2012) ...................................................................... 3

*Assistant Commissioner of Customs,*
    *Office of Regulations and Rulings, et al.: Performance of Functions*,
    34 Fed. Reg. 8,208 (May 27, 1969) ......................................................................... 4

H.R. Rep. 103-361(I) (1993) .......................................................................................... 8, 11

HQ 966092 (Mar. 25, 2003) ............................................................................................. 14

HQ H311492 (Oct. 30, 2020) ................................................................................... 5, 6, 15

*Revision of Guidelines Concerning Tariff Classification of Imported Backpacking Tents*,
    51 Fed. Reg. 30,346 (Aug. 26, 1986) ...................................................................... 2

S. Rep. 103-189 (1993) .................................................................................................. 8, 11

S. Rep. 95-778 (1978) .......................................................................................................... 8

UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: HON. TIMOTHY M. REIF, JUDGE

| | | |
|---|---|---|
| _____ | : | |
| UNDER THE WEATHER, LLC, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Court No. 21-00211 |
| | : | |
| UNITED STATES, | : | |
| | : | |
| Defendant. | : | |
| _____ | : | |

## **DEFENDANT'S PARTIAL MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

Count II of Plaintiff Under the Weather, LLC's complaint raises a legal question: whether an import specialist's entry-specific, non-interpretive, non-deliberative protest determination constitutes an "interpretive ruling or decision" that United States Customs and Border Protection (Customs) must follow unless modified or revoked in accordance with 19 U.S.C. § 1625(c)'s notice-and-comment procedures.  The answer to that question is no.  Only interpretive determinations with prospective effect, reached through deliberations at Customs Headquarters, qualify for § 1625(c)(1)'s procedural safeguards.  Accordingly, the prior protest approval to which Under the Weather points—a one-sentence determination that applied solely to the protested entries and did not mention the law or merchandise at issue—was not an "interpretive ruling or decision" that required Customs to approve, rather than deny, the subsequent protest that is the subject of this case.  Count II of the complaint thus fails as a matter of law and should be dismissed.

## BACKGROUND

According to the complaint and its exhibits, Under the Weather imports see-through tent "pods" that, when set up, will fit a chair and allow a spectator to sit inside and enjoy an outdoor event protected from the elements.  ECF No. 17 (Compl.) Ex. 2.  Metal pegs staked into the ground through loops attached to the bottom corners hold the pods in place.  *Id.*  The pods, which are less than five feet in height, length, and width, can be folded up into a disc, put into a case, and strapped to the back for carrying.  *Id.*  Below are images of three models—the MyPod, OriginalPod, and XLPod—at issue in this action:



In 1986, the Customs Service issued Treasury Decision 86-163, which set forth guidelines for classifying tents, including backpacking tents, under the Tariff Schedule of the United States, the Harmonized Tariff Schedule of the United States' (HTSUS's) predecessor. *Revision of Guidelines Concerning Tariff Classification of Imported Backpacking Tents*, 51 Fed. Reg. 30,346 (Aug. 26, 1986).  Customs still applies these guidelines today, and, believing its pods met these guidelines, Under the Weather had been entering its merchandise as "backpacking tents" under subheading 6306.22.10, HTSUS, which is a duty-free provision.  In 2018, an import specialist disagreed with the entered classification and "rate-advanced" twelve

2

entries of pods as "other" tents of subheading 6306.22.90, HTSUS, dutiable at 8.8 percent *ad valorem*.[1]  Compl. ¶¶ 9–10; *see* 19 C.F.R. § 152.2.

Under the Weather protested the twelve entries' liquidation at the higher rate in Protest No. 2704-19-102919 (the '919 Protest).  Compl. ¶ 11.  Customs regulations specify what information an importer must include in a protest.  The requisite information includes, among other items, the "number and date of the entry" at issue, the "date of liquidation of the entry," a "specific description of the merchandise" involved, and a "justification" for the protest.  19 C.F.R. § 174.13(a).  Multiple entries may be addressed in a single protest (as the '919 Protest did) so long as "the same category of merchandise and a decision … common to all entries are the subject of the protest."  *Id.* § 174.13(b).  "In such circumstances, the entry numbers, dates of entry, and dates of liquidation of all such entries should be set forth as an attachment to the protest."  *Id.*; *see* 19 U.S.C. § 1514(c)(1).

The '919 Protest was processed by the Center of Excellence and Expertise[2] for Apparel, Footwear & Textiles (the Center).  The supervisory import specialist assigned to the '919 Protest from the Center requested "additional information and documentation in order to identify the specific tent models at issue" and "any literature" showing that Under the Weather's pods were

---

[1] To "rate-advance" an entry is to liquidate it at a duty rate higher than the rate claimed to be applicable on the importer's entry paperwork.  *United States v. Horizon Prods. Int'l Inc.*, 82 F. Supp. 3d 1350, 1354 (Ct. Int'l Trade 2015).

[2] A "Center" or "Center of Excellence and Expertise" is one of ten offices at Customs that reviews the import transactions of importers nationwide, organized by industry sector.  19 C.F.R. § 101.1.  Customs established the Centers to, among other things, centralize subject-matter expertise and promote the uniform application of trade law and policy across the many ports of entry.  19 U.S.C. § 4317.  Before, Customs employees working under local port directors reviewed protests—but now, import specialists at the Centers with relevant industry knowledge do.  *See Announcement of Test Providing Centralized Decision-Making Authority for Four CBP Centers of Excellence and Expertise*, 77 Fed. Reg. 52,048 (Aug. 28, 2012).

"in fact backpacking tents."  Compl. ¶ 13.  Under the Weather responded with a letter and attachments "providing the requested information for all entries."  *Id.*  A few months later, the '919 Protest was approved.  *Id.* ¶ 14.  The entire decision, Compl. Ex. 1, reads:

|   |   |
|---|---|
| **Decision** | **Approved** |
| **Comments** | **Protest has been approved based upon received documents.** |

The approval did not identify the merchandise, discuss the law, or provide analysis. When a protest is decided, the appropriate Customs officer (here, an import specialist) need only provide "reasons" for a protest denial, not an approval.  *See* 19 C.F.R. §§ 174.29 and 174.30(a); *see also* 19 U.S.C. § 1515(a).  If a protest is approved, Customs need only "refund any duties … found to have been collected in excess[.]"  19 C.F.R. § 174.29.

An application for further review is the mechanism by which importers can request that Customs Headquarters—specifically, Regulations & Rulings (R&R)—review a Center's denial of a protest.  *See* 19 C.F.R. §§ 174.23, 174.24, 174.25, 174.26, 177.1(d)(6), and 177.2(b)(2)(ii)(B); *see also* 19 U.S.C. § 1515(a).  Importers may request further review when a protest's denial would "be inconsistent with a ruling of the Commissioner of [Customs] or his designee"[3] or when a protest "involve[s] questions of law or fact which have not been ruled upon," among other limited circumstances.  19 C.F.R. §§ 174.24(a)–(b) and 174.25(b)(3).  In such cases, the protest will be "reviewed by the Commissioner … or his designee," *id.* § 174.26(b)(1), and the resulting "protest review decision" will be published, *id.* § 174.32.  Before the '919 Protest was approved, Under the Weather had applied for further review.  Compl. ¶ 15.

---

[3] Under "Customs Delegation Order No. 1 (Revision 1), T.D. 69-126 (34 FR 8208), as amended from time to time," the Commissioner has delegated to R&R the authority to rule on the classification of imported merchandise.  19 C.F.R. § 174.26(b)(1); *see Assistant Commissioner of Customs, Office of Regulations and Rulings, et al.: Performance of Functions*, 34 Fed. Reg. 8,208 (May 27, 1969).

But because the Center approved the protest, no further review occurred.  *See id.*; 19 C.F.R.

§ 174.26(a).

After the '919 Protest's approval, Under the Weather resumed entering its pods as duty-free backpacking tents.  Compl. ¶¶ 16–17.  Shortly thereafter, an import specialist requested more information from Under the Weather to support its entered classification.  *Id.* ¶¶ 17–18.  In response, Under the Weather pointed to the '919 Protest's approval; however, about a month later, the import specialist rate-advanced twenty-two new entries, explaining that the pods were not, in fact, backpacking tents.  *Id.* ¶¶ 18–19.  A national import specialist had advised the Center that the pods were not classifiable as Under the Weather claimed.  *Id.* ¶ 20.

Under the Weather protested the liquidation of seven of these new entries of pods at the higher rate in Protest No. 2704-20-127807 (the '807 Protest) and applied for further review.  Compl. ¶ 25.  In response to the application for further review, R&R issued a nine-page decision instructing the import specialist to deny the protest in full.  *See* HQ H311492 (Oct. 30, 2020); Compl. Ex. 2.  The decision provided a description and pictures of the pods, interpreted the HTSUS subheading at issue, and applied the law to the facts to hold that the pods were not backpacking tents classifiable under subheading 6306.22.10, HTSUS.  *Id.*  The import specialist accordingly denied the '807 Protest "based on [this] Ruling decision."  *Id.*

This case challenges Customs' denial of the '807 Protest.  ECF No. 14 (Amended Summons).  Under the Weather alleges in Count II of its complaint that the procedure Customs used to deny the '807 Protest violated 19 U.S.C. § 1625(c).  Specifically, Under the Weather claims that the '919 Protest's approval constituted a "prior interpretive ruling or decision" under § 1625(c)(1) that bound Customs until the approval was modified or revoked through notice-and-comment procedures.  Compl. ¶¶ 36–41.  As such, Under the Weather requests that the Court

declare that the '919 Protest's approval was an interpretive decision "for purposes of 19 U.S.C. § 1625(c) and that HQ H311492 is unlawful." Compl. at 10.

## ARGUMENT

### I.    Standard Of Review

USCIT Rule 12(b)(6) provides for the dismissal of a complaint, in whole or in part, for "failure to state a claim upon which relief can be granted." A motion to dismiss for failure to state a claim is appropriate when a plaintiff's allegations do not entitle it to a remedy. *See United Pac. Ins. Co. v. United States*, 464 F.3d 1325, 1327 (Fed. Cir. 2006). The motion "tests the legal sufficiency of a complaint," *see Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002), which must be dismissed if it fails to present a legally cognizable right of action. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In other words, dismissal is required when a complaint fails to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "In deciding a motion to dismiss, the court must accept well-pleaded factual allegations as true and must draw all reasonable inferences in favor of the claimant," *Kellogg Brown & Root Servs., Inc. v. United States*, 728 F.3d 1348, 1365 (Fed. Cir. 2013) (citation omitted), but must disregard allegations amounting to legal conclusions. *See Twombly*, 550 U.S. at 555.

### II.    The Complaint Fails To State The Claim That The '919 Protest's Approval Was A Prior Interpretive Ruling Or Decision That Had To Be Revoked Under 19 U.S.C. § 1625(c)(1) Before HQ H311492 Could Be Issued

Count II of Under the Weather's complaint fails as a matter of law because the approval of the '919 Protest did not constitute a "prior interpretive ruling or decision" that Customs had to publish under § 1625(a) and revoke in accordance with § 1625(c)'s notice-and-comment procedures before issuing HQ H311492.

6

**A. Entry-Specific Determinations That Do Not Apply The Law To Facts Are Not "Interpretive Rulings Or Decisions" Subject To § 1625's Procedures**

As the text of the statute makes clear, only "interpretive rulings or decisions" trigger 19

U.S.C. § 1625(c)(1)'s procedural protections.  The relevant text of § 1625 provides as follows:

**(a) Publication**

Within 90 days after the date of issuance of any interpretive ruling (including any ruling letter, or internal advice memorandum) or protest review decision under this chapter with respect to any customs transaction, the Secretary shall have such ruling or decision published in the Customs Bulletin or shall otherwise make such ruling or decision available for public inspection.

\* \* \*

**(c) Modification and revocation**

A proposed interpretive ruling or decision which would—

(1) modify (other than to correct a clerical error) or revoke a prior interpretive ruling or decision which has been in effect for at least 60 days; or

(2) have the effect of modifying the treatment previously accorded by the Customs Service to substantially identical transactions;

shall be published in the Customs Bulletin. The Secretary shall give interested parties an opportunity to submit, during not less than the 30-day period after the date of such publication, comments on the correctness of the proposed ruling or decision. After consideration of any comments received, the Secretary shall publish a final ruling or decision in the Customs Bulletin within 30 days after the closing of the comment period. The final ruling or decision shall become effective 60 days after the date of its publication.

Section 1625 has its genesis in the Customs Procedural Reform and Simplification Act,

Pub. L. 95-410, § 112, 92. Stat. 888, 898 (1978).  It originally provided that within "120 days

after issuing any *precedential decision* (including any ruling letter, internal advice memorandum,

or protest review decision),” Customs had to publish it in the Customs Bulletin or otherwise make it publicly available.  *Id.* (emphasis added).  At the time, R&R would issue “notices, letters, rulings, and written advice to Customs officers and importers,” whether or not in response to an officer’s or importer’s request, which would provide Customs’ “interpretation of customs law generally or with respect to a specific transaction.”  S. Rep. 95-778, at 21–22 (1978).  Although Customs distributed these communications to its employees, they were “available to the public only if [they were] voluntarily disclosed by Customs officers or released under a Freedom of Information Act request.”  *Id.* at 22.  Thus, Congress passed the original version of § 1625, which “enact[ed] into law part of [Customs’] existing regulations,” to ensure that importers would know Customs’ “interpretation of the law” up-front.  *Id.*

The Customs Modernization Act (Title VI of the North American Free Trade Agreement Implementation Act), Pub. L. 103-182, § 623, 107 Stat. 2057, 2186–87 (1993), amended § 1625 to its current version[4] by, among other things, shortening the publication deadline to ninety days and requiring Customs to use notice-and-comment procedures to modify or revoke a “prior interpretive ruling or decision.”  The phrase “interpretive ruling or decision” replaced “precedential decision” (with the same examples of ruling letters, internal advice memoranda, and protest review decisions), though Congress gave no reason for the change in terminology.  *See* S. Rep. 103-189, at 76 (1993); H.R. Rep. 103-361(I), at 123–24 (1993).  As enacted, § 1625(c)’s “notice and comment requirements are intended to ensure that the interested public has notice of a proposed change in Customs’ policy and to allow the public to make comments on the appropriateness of the change and to modify any current practices that were based on

---

[4] The Miscellaneous Trade and Technical Corrections Act, Pub. L. 104-295, § 21(e)(14), 110 Stat. 3514, 3531 (1996), did not substantively amend § 1625.

reliance on Customs' earlier policy." *Sea-Land Serv., Inc. v. United States*, 239 F.3d 1366, 1373 (Fed. Cir. 2001); *see Int'l Custom Prods., Inc. v. United States*, 748 F.3d 1182, 1187 (Fed. Cir. 2014) ("[I]mporters have a right to be informed about customs rules and regulations, as well as interpretive rulings, and to expect certainty that [Customs] will not unilaterally change the rules without providing importers proper notice and an opportunity for comment." (quotation omitted)).

To summarize, § 1625 sets forth the procedures Customs must follow when it issues an "interpretive ruling or decision"—like a "ruling letter," "internal advice memorandum," or "protest review decision."  Interpretive rulings and decisions must be published within ninety days of their issuance.  19 U.S.C. § 1625(a).  Once in effect for sixty days, an interpretive ruling or decision is binding and can be modified or revoked only through the notice-and-comment procedures that § 1625(c) prescribes.  A "proposed interpretive ruling or decision" that purports to modify or revoke a "prior interpretive ruling or decision" without notice-and-comment is void. *Id.*; *see, e.g., Int'l Custom Prods.*, 748 F.3d at 1189.

In determining whether a particular Customs action constitutes an "interpretive ruling or decision," invoking both § 1625(a)'s publication requirement and § 1625(c)'s procedural safeguards, the question is whether the substance of the decision sets the rules for importers to follow. *Am. Fiber & Finishing, Inc. v. United States*, 121 F. Supp. 3d 1273, 1280 (Ct. Int'l Trade 2015) ("Whether a determination falls within the ambit of 19 U.S.C. § 1625(c) depends on its substance, not its form.").  As this Court summarized, "the text of § 1625 covers interpretive rulings, ruling letters, internal advice memoranda, protest review decisions, or decisions that are [their] *functional equivalent*." *Kahrs Int'l, Inc. v. United States*, 645 F. Supp. 2d 1251, 1285 (Ct. Int'l Trade 2009) (emphasis added); *see* 19 C.F.R. § 177.10.  That standard cannot be met here,

and the caselaw supports that conclusion.  The approval of the '919 Protest, which was entry-specific and lacked R&R's deliberative analysis, was not an "interpretive ruling or decision" in either form or function.

In *Kahrs International*, for example, the Court considered the question whether terse protest determinations similar to the one at issue here constituted rulings or decisions covered by § 1625.  Customs had denied two of the importer's protests, "simply stat[ing] … 'denied in full' because the '[m]erchandise is precluded from the requested [HTSUS] provision[s] … by definition and chapter notes.'"  645 F. Supp. 2d at 1285 (quoting the denials).  The importer argued that these protest denials were interpretive rulings or decisions that § 1625 protected, but the Court disagreed.  The Court held that the denials "plainly d[id] not fall within the ambit of the covered rulings or decisions of § 1625" because they "merely exclude[d] the subject merchandise from certain tariff provisions and d[id] not require that they be classified henceforth under a particular tariff heading."  *Id.* (explaining that the protest denials lacked a classification "directive" for future imports).  Furthermore, the Court held that under the statute's plain language, a ruling or decision must be "interpretive"; thus, the mere "results" of even an "intensive" examination of cargo would not trigger § 1625.  *Id.* at 1285–86.

Contrast that with the decision in *International Custom Products*, 748 F.3d 1182.  The importer there successfully argued that a particular "notice of action" informing the importer of a rate-advance constituted an interpretive ruling or decision.  The Federal Circuit explained that although notices of action might normally serve as pro forma "entry-specific notifications," the notice of action that Customs issued to the importer in that case explicitly "appl[ied] the HTSUS to the specific facts of all pending and future" entries of the merchandise and "resulted from the considered deliberations of [R&R]."  748 F.3d at 1187–88, *aff'g Int'l Custom Prods., Inc. v.*

10

*United States*, 549 F. Supp. 2d 1384, 1391–92 (Ct. Int'l Trade 2008) (recounting R&R's "months-long deliberative process" culminating in a notice of action that "represented the agency's formal position").  For those reasons, that specific notice of action constituted an interpretive ruling or decision that "was subject to § 1625(c)'s procedures."  748 F.3d at 1189. The Federal Circuit emphasized, however, that its holding was limited to just that notice of action, and did not subject "*all* notices of action … to notice and comment procedures."  *Id.*

These cases establish that § 1625, consistent with its plain text and legislative history, applies to "interpretive" determinations—those that apply the law to the facts and set the rules for importers to follow in the future.  By contrast, entry-specific, non-interpretive determinations lacking R&R's imprimatur, such as the '919 Protest's approval, fall short of § 1625's requirements.  Importers cannot reasonably "expect certainty" in the future or glean "policy directives" from them.  *Int'l Custom Prods.*, 748 F.3d at 1187 (quoting S. Rep. 103-189, at 64 (1993); H.R. Rep. No. 103–361(I), at 124 (1993)).

**B. Customs' Approval Of The '919 Protest Was Not Functionally Equivalent To An Interpretive Ruling Or Decision Because It Lacked Prospective Effect, Interpreted Nothing, And Was Not Plausibly The Result Of R&R's Considered Deliberations**

Under the Weather does not allege that the '919 Protest's approval was an interpretive ruling, ruling letter, internal advice memorandum, or protest review decision—nor could it.  The approval of the protest was not the consequence of a ruling from R&R on an application for further review.  Instead, Under the Weather alleges that the '919 Protest's approval was the "'functional equivalent' of the exemplar interpretive rulings and decisions enumerated in the statute."  Compl. ¶ 40.  For at least four independent reasons, it was not.

*First*, and most critically, the protest approval applied solely to the entries covered by the '919 Protest and not future entries made by Under the Weather or any other importer.  The only

11

explanation for the approval is a brief sentence—"Protest approved based upon received documents"—and the approval references only one entry (Entry No. 9BM-0070660-9).  Compl. Ex. 1.  Just as with the protest denials at issue in *Kahrs International*, here, the plain language of the approval did "not require that [the subject merchandise] be classified henceforth under a particular tariff heading."  645 F. Supp. 2d at 1285 (holding that such a protest determination lacking a classification "directive" for future imports is not subject to § 1625(c)).  And the approval is very different from the notice of action discussed in *International Custom Products*, which was described as a "broad proclamation" that explicitly applied to "all pending and future … entries" of the merchandise at issue.  748 F.3d at 1187–88; *see Am. Fiber & Finishing*, 121 F. Supp. 3d at 1280 n.27 (notice of action "direct[ed] under pain of penalty that future imports be classified differently" (quotation omitted)).  For this reason alone, revocation of the protest approval was not required under § 1625(c), and Count II of Under the Weather's complaint fails as a matter of law.

*Second*, the protest approval was not "interpretive," as § 1625(c)(1) requires.  Decisions that "do not interpret a provision of law" are "in no sense 'interpretive.'"  *S. Shrimp Alliance v. United States*, 617 F. Supp. 2d 1334, 1355 (Ct. Int'l Trade 2009) (per curiam).  Prior determinations that qualify for § 1625(c)(1)'s protections will instead "bear indicia" of interpretation "on their face."  *Id.* at 1356.  Those indicia—the interpretation of "a provision of law," for instance, *id.* at 1355—are absent from the face of this approval.  It did not quote the HTSUS, apply the General Rules of Interpretation, cite Treasury Decision 86-163 (which governs the classification of tents), or apply its interpretation to any of the facts at issue.  *Cf. Int'l Custom Prods.*, 748 F.3d at 1188 (notice of action "was an interpretive document applying the HTSUS to the specific facts" of the merchandise at issue)).  Indeed, the approval lacked any

description or identification of the merchandise. *Cf. Am. Fiber & Finishing*, 121 F. Supp. 3d at 1280 n.27 (notice of action that could have been an interpretive ruling or decision at least "identifie[d] the product" at issue (quotation omitted)). Congress, in amending § 1625 to ensure that importers are "informed about customs rules and regulations," *Int'l Custom Prods.*, 748 F.3d at 1187 (quotation omitted), did not intend for Customs to publish every one-sentence decision on a protest lacking a description of the merchandise at issue. Far from being the "functional equivalent" of an interpretive ruling, the '919 Protest's approval was a check-the-box exercise akin to the non-interpretive "results of Customs cargo examinations." *Kahrs Int'l*, 645 F. Supp. 2d at 1285–86.

*Third*, Under the Weather fails to plausibly allege, other than in conclusory fashion, that the '919 Protest's approval was the result of R&R's considered deliberations. *See Twombly*, 550 U.S. at 555 (factual allegations must "raise a right to relief above the speculative level" and cross "the line from conceivable to plausible").[5] Interpretive rulings and decisions are those setting forth R&R's (and thus the agency's) "formal position" as to a particular transaction. *Int'l Custom Prods.*, 549 F. Supp. 2d at 1392; *see Int'l Custom Prods.*, 748 F.3d at 1188 (citing 19 C.F.R. § 177.1(d)(1)). But here, Under the Weather simply alleges in the complaint that the

---

[5] Under the Weather alleges that the '919 Protest's approval "was the result of considered deliberations, interpreted and applied the provisions of the HTSUS to the subject merchandise, and had the effect of establishing rules regarding classification of the subject merchandise on which Plaintiff reasonably relied" for future entries. Compl. ¶ 40. Apart from the approval itself belying this allegation, *id.* Ex. 1, the allegation tracks the statement of law from *American Fiber & Finishing*, 121 F. Supp. 3d at 1280 (interpretive rulings and decisions result from "considered deliberations," "interpret[] and appl[y] the provisions of the Customs and related laws to a specific set of facts," and "ha[ve] the effect of unilaterally changing the rules upon which importers have come to rely" (footnotes and quotations omitted)). Such conclusory allegations that amount to "a formulaic recitation of the elements of the cause of action" must be ignored on a USCIT Rule 12(b)(6) motion to dismiss. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

Center approved the protest six months after it was filed (which was less than three months after the assigned supervisory import specialist requested supporting documentation from Under the Weather), and that further review of the protest "was not utilized." Compl. ¶¶ 13–15. Further review, however, is *the* mechanism by which R&R reviews protests, deliberates, and issues interpretive decisions, *see* 19 C.F.R. § 174.23, and that process did not take place here. No facts in the complaint, taken as true, reflect that R&R was responsible for the '919 Protest's approval.

*Fourth*, the impracticality of Under the Weather's position is further evidence that its interpretation of § 1625(c)(1) is incorrect. If Under the Weather were right that this routine determination on a protest by a Center was an interpretive ruling or decision (which it is not), Customs would have to publish every protest determination and follow notice-and-comment procedures just to decide a subsequent protest differently. Besides imposing a heavy burden on Customs—to both locate the first-in-time protest determination and publish countless protest determinations and revocation notices—these time-consuming procedures necessarily would increase transaction costs for importers and delay duty refunds for their otherwise meritorious protests. Under the Weather's theory would, in short, lay waste to the protest system. *See Int'l Custom Prods.*, 748 F.3d at 1188–89 (suggesting it would be "administratively infeasible" to subject "*all* notices of action" to § 1625(c) notice-and-comment). Accordingly, this Court has never held that Center-level, entry-specific protest determinations are subject to § 1625(c)(1)'s procedures.[6]

---

[6] The "denial of [a] classification protest" that constituted an "interpretive ruling or decision" in *Arbor Foods, Inc. v. United States*, 30 C.I.T. 670, 680 n.12 (2006), was in fact a published Headquarters ruling, *id.* at 671 (citing Letter from Myles B. Harmon, Dir., Commercial Rulings Div., U.S. Customs Serv., to Port Dir., U.S. Customs Serv. (Mar. 25, 2003)); *see* HQ 966092 (Mar. 25, 2003).

Therefore, because the '919 Protest's entry-specific, non-interpretive, non-deliberative approval was not the functional equivalent of an interpretive ruling or decision, it did not require publication under § 1625(a) and revocation through § 1625(c)'s notice-and-comment procedures before issuance of HQ H311492 and denial of the '807 Protest.

## **CONCLUSION**

For these reasons, the Court should dismiss Count II of Under the Weather's complaint.

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. McCARTHY
Director

/s/ Justin R. Miller
JUSTIN R. MILLER
Attorney-In-Charge
International Trade Field Office

/s/ Luke Mathers
LUKE MATHERS
*Of Counsel*:                           Trial Attorney
Yelena Slepak                           Department of Justice, Civil Division
Emma Tiner                              Commercial Litigation Branch
Office of the Assistant Chief Counsel   26 Federal Plaza – Suite 346
International Trade Litigation          New York, New York 10278
U.S. Customs and Border Protection      (212) 264-9236

Dated: September 21, 2023               *Attorneys for Defendant*

15

UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: HON. TIMOTHY M. REIF, JUDGE

_____
                                                    :
UNDER THE WEATHER, LLC,                             :
                                                    :
                              Plaintiff,            :
                                                    :
                    v.                              :        Court No. 21-00211
                                                    :
UNITED STATES,                                      :
                                                    :
                              Defendant.            :
_____             :

## **CERTIFICATE OF COMPLIANCE**

I, Luke Mathers, an attorney in the Office of the Assistant Attorney General, Civil Division, Commercial Litigation Branch, International Trade Field Office, who is responsible for the Government's partial motion to dismiss, dated September 21, 2023, relying upon the word count feature of the word processing program used to prepare the motion, certify that this motion complies with the word count limitation under the Court's chambers procedures, and contains 4,392 words.

/s/ Luke Mathers
LUKE MATHERS

16