**UNITED STATES COURT OF INTERNATIONAL TRADE**
**BEFORE: HON. TIMOTHY M. REIF, JUDGE**

| | |
|---|---|
| UNDER THE WEATHER, LLC, <br><br><br>                **Plaintiff,** <br>    **v.** <br><br> UNITED STATES, <br>                   **Defendant.** | Court No.   21-00211 |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S PARTIAL MOTION TO DISMISS COMPLAINT**

Heather Jacobson
Alena Eckhardt
NAKACHI ECKHARDT & JACOBSON, P.C.
2815 Elliott Avenue, Suite 100
Seattle, WA 98121-2991
Tel: (206) 774-0927
Email: hjacobson@tradelawcounsel.com
       alena@tradelawcounsel.com

*Counsel for Plaintiff Under the Weather, LLC.*

Dated: October 26, 2023

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................. 1

STANDARD OF REVIEW .................................................................................................. 1

ARGUMENT ........................................................................................................................ 2

I.   Clarification of Applicable Statutory Language ................................................. 2

II.   Count II of the Complaint States A Claim For Relief That Is Plausible On Its Face, and Therefore Dismissal is Not Appropriate. ........................................................ 5

    A.   Section 1625(c) requires that CBP follow notice and comment procedures before it may modify or revoke a "prior interpretive ruling or decision." ........................................... 5

    B.   Defendant does not dispute that HQ H311492 is a "decision" for purposes of § 1625(c), that HQ H311492 classified identical merchandise differently than the Protest '919 approval, and that § 1625(c) notice-and-comment procedures were not followed ................ 5

    C.   An "interpretive ruling or decision" for purposes of 19 U.S.C. § 1625(c) includes decisions that are the result of considered deliberations, interpret and apply relevant law to a specific set of facts, and have the effect of unilaterally changing the rules upon which importers have come to rely. ................................................................................................. 6

    D.   Count II of the Complaint  alleges a valid claim for relief supported by sufficient factual allegations, and thereby satisfies Plaintiff's pleading burden. .................................... 8

III.   Defendant's Arguments For Dismissal Are Without Merit ................................. 9

    A.   The classification decision in Protest '919 is applicable to other entries of identical merchandise even if CBP did not expressly state its prospective applicability in the written approval. ................................................................................................................................. 9

        1.   Defendant's assertion that Protest '919 did not establish a rule for classification of tent models MyPod, OriginalPod, and XLPod is not credible. ......................................... 10

        2.   The exemplar interpretive rulings and decisions identified in the statute typically do not expressly provide for prospective application. ............................................................. 11

        3.   Kahrs is inapposite because the protest decision at issue did not provide an affirmative classification for the protested entries, and because it had already been revoked in accordance with § 1625(c). ............................................................................... 11

        4.   ICP II and American Fiber identify express statements of prospective applicability as relevant evidence that a determination qualifies as a "interpretive ruling or decision," but do not establish a rule that such an express statement is the only way that prospective applicability may be established. ................................................................................... 13

    B.   The approval of Protest '919 is inherently interpretive; Defendant's attempt to establish a requirement that the protest approval bear "indicia of interpretation on its face" is unavailing. .......................................................................................................................... 14

    C.   The Complaint adequately pleads that Protest '919's approval was the result of considered deliberations and therefore qualifies as an interpretive ruling or decision. ......... 17

i

1.   The standard for review for a Rule 12(b)(6) motion to dismiss does not require all facts to be plead with particularity, but merely with sufficient detail to raise a reasonable expectation that discovery will reveal evidence supporting the claim. ........................... 18

2.   "Considered deliberations" is a factual allegation in support of a claim. ................ 19

3.   The courts have not ruled that only deliberations by OR&R constitute "considered deliberations" sufficient to render the resulting decision subject to § 1625(c)................ 20

D.   Defendant's "administrative infeasibility" argument misinterprets the legal effect of Plaintiff's claim, and vastly overstates the potential burden to CBP................................... 21

1.   Protest '919 is not representative of all protest decisions......................................... 21

2.   "Interpretive rulings and decisions" of § 1625(c) are not necessarily also subject to publication under § 1625(a). ........................................................................................... 22

3.   Adhering to notice-and-comment procedures to revoke Center-issued protest decisions should not be burdensome if the Centers are performing their intended function of achieving uniformity.................................................................................................... 22

# **TABLE OF AUTHORITIES**

**Cases**

*American Fiber & Finishing, Inc. v. United States,*
121 F. Supp. 3d 1273, 1279 (Ct. Int'l Trade 2015)……………………………………*passim*

*Bell Atlantic Corp. v. Twombly,*
 550 U.S. 544, 547 (2007)……………………………………………………....…2, 18, 19

*Cambridge v. United States*,
558 F.3d 1331, 1335 (Fed. Cir. 2009)……………………………………………………20

*Charleston Area Medical Center, Inc. v. United States*,
940 F.3d 1362, 1370 (Fed. Cir. 2019)……………………………………………………..4

*Conley v. Gibson*, 335 U.S. 41, 48 (1957)……………………………………………2, 18

*International Custom Products, Inc. v. United States,*
549 F. Supp. 2d 1384, 1389 (Ct. Int'l Trade 2008)…………………………………1-2, 7

*International Custom Products, Inc. v. United States,*
748 F.3d 1182, 1188 (Fed. Cir. 2014)……………………………………………....*passim*

*Kahrs Int'l, Inc. v. United States,*
645 F. Supp. 2d 1251, 1285 (Ct. Int'l Trade 2009)……………………………………*passim*

*Medical College of Wisconsin Affiliated Hospital, Inc. v. United States*,
854 F.3d 930, 933 (7th Cir. 2017)…………………………………………………………4

*Ratzlaf v. United States*, 510 U.S. 135, 143 (1994)…………………………………...4

*Russello v. United States*, 464 U.S. 16, 23 (1983)……………………………………4

*S. Shrimp Alliance v. United States*,
617 F. Supp. 2d 1334 (Ct. Int'l Trade 2009)………………………………………14-16, 19

**Statutes**

19 U.S.C. § 1625(a)………………………………………………………*passim*

19 U.S.C. § 1625(c) ……………………………………………………*passim*

The Customs Procedural Reform and Simplification Act,

Pub. L. 95-410, § 112, 92 Stat. 888, 898 (1978)…………………………………………2, 3

Customs Modernization Act (Title VI of the North American Free Trade Agreement
Implementation Act), Pub. L. 103-182, § 623, 107 Stat. 2057, 2186-87 (1993)…………………3

**Regulations**

19 C.F.R. § 174.29…………………………………………………………………………17

19 CFR 177.10(a)…………………………………………………………………………..15

**Rules**

USCIT Rule 12(b)(6)……………………………………………………………*passim*

**Other Authorities**

U.S. Customs & Border Protection, *Regulatory Implementation of the Centers
of Excellence and Expertise*, 81 Fed. Reg. 92978 (December 20, 2016)………………………23

Plaintiff Under The Weather, LLC ("Plaintiff" or "UTW") submits the following brief in opposition to Defendant's Partial Motion to Dismiss Plaintiff's Complaint ("MTD Br."), ECF No. 22.  For the reasons stated below, Plaintiff requests that this Court deny the Defendant's Partial Motion to Dismiss in its entirety.

## INTRODUCTION

Defendant United States ("Defendant") moves the Court to dismiss Count II of Plaintiff's Complaint pursuant to Rule 12(b)(6) of the Rules of the Court of International Trade ("Rules") on the grounds that it "fails as a matter of law."  Claim II of Plaintiff's Complaint states a claim for relief pursuant to 19 U.S.C. § 1625(c) on the following grounds: that (1) CBP's approval of Protest 2704-19-102919 ("Protest '919'") is a "prior interpretive ruling or decision" for purposes of 19 U.S.C. § 1625(c); that (2) HQ H311492 is a "proposed interpretive ruling or decision;" and that (3) HQ 311492 revoked Protest '919 (4) without first completing the notice and comment procedures required by § 1625(c).  Complaint (EFC No. 17) at ¶ 36-41.  Defendant claims in its motion that Claim II fails to state a claim upon which relief can be granted because Protest '919 is not a "prior interpretive ruling or decision."  MTD Br. 1.  Because the stated claim for relief in Count II is supported by sufficient factual allegations as to be plausible on its face, there is no basis for Defendant's Partial Motion to Dismiss pursuant to Rule 12(b)(6), and the Motion should therefore be denied.

## STANDARD OF REVIEW

In deciding a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted, "the court accepts as true the facts alleged in the plaintiffs pleading and construes all inferences in the plaintiff's favor."  *International Custom Products, Inc. v. United States*, 549 F. Supp. 2d 1384, 1389 (Ct. Int'l Trade 2008) (*"ICP I"*).  A well-pleaded complaint states a claim

for relief that is "plausible on its face." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 547 (2007) ("*Twombly*").  The plausibility requirement does not require detailed factual allegations; it "simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence" supporting the claim for relief.  *Id*. at 545.  Dismissal of a case for failure to state a claim is appropriate only where "it appears beyond doubt that no set of facts can be proven that would entitle the plaintiff to relief."  *Conley v. Gibson*, 335 U.S. 41, 48 (1957); *see also* USCIT Rule 12(b)(6); *Twombly* at 546.

## ARGUMENT

## I.   Clarification of Applicable Statutory Language

As a preface to this Response, Plaintiff seeks to clarify the distinction between an "interpretive ruling…or protest review decision" of 19 U.S.C. § 1625(a) and "interpretive ruling or decision" of 19 U.S.C. § 1625(c).  In its explication of the history and meaning of the statutory language of 19 U.S.C. § 1625 (MTD Br. 7-9), Defendant conflates the language of § 1625(a) and §1625(c) in ways that muddle the purpose and meaning of both provisions.  The resulting misunderstanding of the scope and impact of the statutory language "interpretive ruling or decision" is reflected in a number of the arguments that Defendant raises in its motion.  Rather than addressing this misunderstanding anew each time it is implicated in this brief, this section sets forth the correct interpretation of both provisions and the differences in the scope of the determinations of U.S. Customs & Border Protection ("CBP") to which each provision applies.

The earliest version of 19 U.S.C. § 1625, which was promulgated through The Customs Procedural Reform and Simplification Act, Pub. L. 95-410, § 112, 92 Stat. 888, 898 (1978), did not have a version of today's subsection (c).  The Customs Procedural Reform and Simplification Act established a new Section 1625 to Title 19 that read in its entirety:

> Within 120 days after issuing any precedential decision (including any ruling letter, internal advice memorandum, or protest review decision) under this Act with respect to any customs transaction, the Secretary shall have such decision published in the Customs Bulletin or shall otherwise make such decision available for public inspection.

Pub. L. 95-410, § 112.  This statute makes no provision for the modification or revocation of decisions provided for in modern-day § 1625(c); rather, it is substantively equivalent to today's 19 U.S.C. § 1625(a), which provides:

> Within 90 days after the date of issuance of any interpretive ruling (including any ruling letter, or internal advice memorandum) or protest review decision under this chapter with respect to any customs transaction, the Secretary shall have such ruling or decision published in the Customs Bulletin or shall otherwise make such ruling or decision available for public inspection.

19 U.S.C. § 1625(a).

As Defendant correctly states, the current version of 19 U.S.C. § 1625 was put into place by the Customs Modernization Act (Title VI of the North American Free Trade Agreement Implementation Act), Pub. L. 103-182, § 623, 107 Stat. 2057, 2186-87 (1993).  However, Defendant's statement that "[t]he phrase 'interpretive ruling or decision' replaced 'precedential decision'" (MTD Br. 8) is inaccurate.  The phrase "interpretive ruling or decision" is found in the newly-created § 1625(c), which has no predecessor.  The preexisting § 1625 of Pub. L. 95-410 was transmuted into § 1625(a) by Pub. L. 103-182, and the language "precedential decision (including any ruling letter, internal advice memorandum, or protest review decision)" was changed to "interpretive ruling (including any ruling letter, or internal advice memorandum) or **protest review decision**."  *See* Pub. L. 103-182, Stat. 2057, 2186-87 (emphasis added).

In drafting § 1625(c), Congress used different language than in § 1625(a).  Whereas only an "interpretive ruling…or **protest review decision**" need be published in the Customs bulletin pursuant to § 1625(a), any "prior interpretive ruling or **decision**" is subject to notice and comment

requirements pursuant to § 1625(c).  *See* 19 U.S.C. § 1625(a), (c) (emphasis added).  Under settled principles of statutory construction, the term "interpretive ruling" must be interpreted to have the same meaning and refer to the same universe of CBP rulings in both § 1625(a) and § 1625(c).  *See, e.g.*, *Ratzlaf v. United States*, 510 U.S. 135, 143 (1994) ("A term appearing in several places in a statutory text is generally read the same way each time it appears.").  The corollary to that, however, is that the use of *different* language with regard to decisions – "protest review decision" in § 1625(a) versus merely "decision" in § 1625(c) – must be understood to have different meanings.  *See Russello v. United States*, 464 U.S. 16, 23 (1983) ("Where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.");  *Charleston Area Medical Center, Inc. v. United States*, 940 F.3d 1362, 1370 (Fed. Cir. 2019) (citing *Medical College of Wisconsin Affiliated Hospital, Inc. v. United States*, 854 F.3d 930, 933 (7th Cir. 2017) as stating that "[a] presumption that a single word means the same thing throughout a statute goes together with a presumption that different words mean different things.").

Thus, the difference in language between § 1625(a) and § 1625(c) indicates that the universe of items that must be published prior to issuance per § 1625(a) must differ in some way from the universe of items subject to notice and comment proceedings prior to modification or revocation per § 1625(c).  This Court has ruled that a "decision" of § 1625(c) includes, "but is not limited to, a protest review decision."  *American Fiber & Finishing, Inc. v. United States,* 121 F. Supp. 3d 1273, 1279 (Ct. Int'l Trade 2015) ("*American Fiber*"); *see also Kahrs Int'l, Inc. v. United States*, 645 F. Supp. 2d 1251, 1285 (Ct. Int'l Trade 2009) ("*Kahrs*") ("[A] 'protest review decision' is to be included among the larger category of otherwise generic Customs' 'decision[s].'").  Thus, the plain language of the statute, as interpreted by this Court, provides for the existence of

"decisions" for purposes of § 1625(c) that are not also "protest review decisions" for purposes of § 1625(a), and that therefore do not require publication upon issuance, but do require notice and comment procedures before they may be modified or revoked.

## II.    Count II of the Complaint States A Claim For Relief That Is Plausible On Its Face, and Therefore Dismissal is Not Appropriate.

### A.    Section 1625(c) requires that CBP follow notice and comment procedures before it may modify or revoke a "prior interpretive ruling or decision."

Pursuant to 19 U.S.C. § 1625(c)(1), where a "prior interpretive ruling or decision" exists, CBP may not issue a new, "proposed interpretive ruling or decision" that would modify or revoke the prior interpretive ruling or decision until CBP has complied with the notice and comment procedures set forth in § 1625(c).  Accordingly, if CBP issues an interpretive ruling or decision that modifies or revokes a prior interpretive ruling or decision without following the notice and comment procedures of § 1625(c), that later-in-time interpretive ruling or decision must be found to be unlawful and without effect.

To survive a Rule 12(b)(6) motion to dismiss, therefore, Count II of the Complaint must allege, in a manner that is "plausible on its face," the existence of both (1) a "prior interpretive ruling or decision" and (2) a "proposed interpretive ruling or decision," and that (3) the latter modified or revoked the former (4) without first completing the notice and comment procedures required by § 1625(c).

### B.    Defendant does not dispute that HQ H311492 is a "decision" for purposes of § 1625(c), that HQ H311492 classified identical merchandise differently than the Protest '919 approval, and that § 1625(c) notice-and-comment procedures were not followed.

As stated in the Complaint, HQ H311492 is a "protest review decision." Complaint at ¶ 41. This Court has ruled that the term "decision" in § 1625(c) includes protest review decisions.  *See*

*American Fiber*, 121 F. Supp. 3d at 1279; *Kahrs*, 645 F. Supp. 2d at 1285.  Therefore, HQ H311492 is unquestionably a "decision" for purposes of § 1625(c).

The Complaint further clearly states that HQ H311492 "made a different classification decision from Protest 2704-19-102919 with regard to identical merchandise," and thereby "effectively revoked the prior decision of Protest 2704-19-102919 contrary to law without following the notice and comment requirements of 19 U.S.C. § 1625(c)."  Complaint at ¶ 41.

Defendant does not dispute that HQ H311492 is a "decision" for purposes of § 1625(c); that HQ H311492 made a different classification decision from Protest '919 with regard to identical merchandise; or that no notice and comment procedures were observed prior to publication of HQ 311492.  As such, Defendant cannot reasonably dispute that, if the approval of Protest '919 constitutes a "prior interpretive ruling or decision," HQ H311492 is a "proposed interpretive ruling or decision" that revoked Protest '919 without notice and comment proceedings required by § 1625(c).

Therefore, elements (2)-(4) of Count II are not in question; the only question at issue here is whether the Complaint sufficiently states element (1) of Count II – that approval of Protest '919 constitutes a "prior interpretive ruling or decision" for purposes of § 1625(c).

**C. An "interpretive ruling or decision" for purposes of 19 U.S.C. § 1625(c) includes decisions that are the result of considered deliberations, interpret and apply relevant law to a specific set of facts, and have the effect of unilaterally changing the rules upon which importers have come to rely.**

Neither the statute nor CBP regulations provide a definition of the term "interpretive ruling or decision."  The courts have ruled that while the phrase "interpretive ruling or decision" in § 1625(c) includes the exemplars identified in § 1625(a) (ruling letter, internal advice memorandum and protest review decision), the statutory language expressly does not limit the scope of § 1625(c) to those enumerated exemplars.  *See American Fiber,* 121 F. Supp. 3d at 1279; *International*

*Custom Products, Inc. v. United States*, 748 F.3d 1182, 1188 (Fed. Cir. 2014) ("*ICP II*") (stating that while "an interpretive ruling *includes* ruling letters and internal advice memoranda, such documents are exemplary, not exhaustive."); *Kahrs*, 645 F. Supp. 2d at 1285.

This Court and the Court of Appeals for the Federal Circuit ("CAFC") have established guidelines for determining when a decision by CBP, not already specifically identified in the statute, constitutes an "interpretive ruling or decision" for purposes of 19 U.S.C. § 1625(c).  In *ICP I*, this Court found that a Notice of Action issued by CBP constituted a decision for purposes of § 1625(c) on the grounds that CBP "engaged in a months-long deliberative process, and the result of that deliberative process was the April 2005 Notice of Action. That Customs decided to inform ICP of the determination in a Notice of Action, rather than some other instrument, does not change its nature." *ICP I*, 549 F. Supp. 2d at 1392.  On appeal from the final dispositive opinion in that case, the CAFC affirmed:

> The CIT did not err in holding that the Notice of Action in this case amounts to an interpretive ruling or decision subject to § 1625(c)'s notice and comment procedures. The Notice of Action was an interpretive document applying the HTSUS to the specific facts of all pending and future white sauce entries. Although the Notice of Action was not issued by the OR & R, it resulted from the considered deliberations of the OR & R, which determined the Ruling Letter did not apply to the Entry. Customs was required to comply with § 1625(c) when it used the Notice of Action to revoke the previously-applicable Ruling Letter.

*ICP II*, 748 F.3d at 1188 (internal citations omitted).

In *Kahrs*, the Court again addressed the proper interpretation of "interpretive ruling or decision" and found that the phrase "covers interpretive rulings, ruling letters, internal advice memoranda, protest review decisions, or decisions that are the functional equivalent of interpretive rulings or decisions." *Kahrs*, 645 F. Supp. 2d at 1285.

In *American Fiber*, this Court synthesized the reasoning in *ICP II* and *Kahrs* into concrete guidance as to when a decision may trigger § 1625(c) notice and comment requirements:

Whether a determination falls within the ambit of 19 U.S.C. § 1625(c) depends on its substance, not its form. If a determination is the result of considered deliberations, if it "interprets and applies the provisions of the Customs and related laws to a specific set of facts," if it has the effect of "unilaterally chang[ing] the rules" upon which importers have come to rely, if it is otherwise "the functional equivalent of interpretive rulings or decisions," then it may be an interpretive ruling or decision and thereby may trigger 19 U.S.C. § 1625 notice and comment requirements.

*American Fiber,* 121 F. Supp. 3d at 1279-80 (internal citations omitted).

**D. Count II of the Complaint alleges a valid claim for relief supported by sufficient factual allegations, and thereby satisfies Plaintiff's pleading burden.**

In Count II of the Complaint, Plaintiff seeks a decision by this Court that CBP's approval of Protest '919 constitutes a prior interpretive ruling or decision for purposes of § 1625(c). In support of this claim, the Complaint states that the protest approval was the result of considered deliberations, interpreted and applied the provisions of the HTSUS to the subject merchandise, and had the effect of establishing rules regarding classification of the subject merchandise on which Plaintiff reasonably relied for ongoing imports of identical merchandise. *See* Complaint at ¶ 40. In addition, the Complaint provides factual information, incorporated by reference into Count II, that CBP requested additional documents specific to the central question of whether the tents at issue qualify as backpacking tents, and that the protest approval was expressly stated to be "based upon received documents." *Id.* at ¶ 12-14. These facts support the conclusion that CBP conducted considered deliberations in order to analyze the factual information provided, and applied the legal standards for classification under subheading 6306.22.1000 to that received information, in issuing its decision.

Accordingly, Count II makes an effective and well-pleaded statement that Protest '919 is a prior interpretive ruling or decision for purposes of § 1625(c). As such, Count II states a claim upon which relief can be granted, and there is no basis for dismissal pursuant to Rule 12(b)(6).

III.   **Defendant's Arguments For Dismissal Are Without Merit**

Defendant asserts four "independent reasons" that it alleges show that the '919 Protest approval is not the "functional equivalent of interpretive rulings or decisions," and therefore not a "decision" for purposes of § 1625(c).  MTD Br. 11-14.  For the reasons discussed below, these arguments are without merit, particularly in the context of a 12(b)(6) motion to dismiss.

A.   **The classification decision in Protest '919 is applicable to other entries of identical merchandise even if CBP did not expressly state its prospective applicability in the written approval.**

First, Defendant argues that the '919 Protest "applied solely to the entries covered by the '919 Protest and not future entries made by Under the Weather or any other importer."  MTD Br. 11.  Defendant asserts that because the narrative "reason" put forth in the protest approval does not expressly state that the classification decision represented by the protest approval applies to future entries, it does not so apply.[1]  *Id.* at 12.  Defendant argues that Protest '919 is therefore analogous to the protests in *Kahrs*, and dissimilar to the CF29s in *ICP II*.  *Id*.  Defendant's position is untenable.

In Protest '919, UTW protested the classification of tent models that included models "MyPod," "OriginalPod," and "XLPod."  Complaint at ¶ 26, ¶ 40, Exhibit 2 at 3.[2]  In that protest,

---

[1] Defendant notes that the protest approval only expressly references one of the 12 entries that were subject to that Protest.  MTD Br. 12.  Defendant does not explain why it considered that detail relevant.  To the extent this observation might be intended to imply that Protest '919 only constitutes a classification decision with regard to the single entry referenced in the written protest approval explanation, this would of course be incorrect; if CBP had intended to approve the protest with regard to less than all of the protested entries, it would have issued a partial denial rather than an approval.  Indeed, that the protest approval language references only one of the twelve entries with regard to which the protest was approved underscores the fact that the written basis the protest approval is not the sole and dispositive basis for determining the full scope of the classification decision that the protest approval represents.

[2] Although documentation regarding Protest '919 is not yet on the record in this case, that these three specific tent models were covered by Protest '919 is knowable based on the information provided in the Complaint.  Exhibit 2 of the complaint provides HQ H311492, which states that Protest 2704-20-127807 concerned tent models MyPod, OriginalPod, and XLPod.  *See* Complaint, Exhibit 2 at 3.  The Complaint states that "[t]he protested merchandise in Protest 2704-20-127807 is identical to the merchandise protested in approved Protest 2704-19-102919."  Complaint at ¶ 26.  The Complaint further states that CBP ruled in Protest '919 that "the same backpacking tent models at issue here are classified under subheading 6306.22.1000, HTSUS."  *Id*. at ¶ 40.  Because in considering a Rule 12(b)(6)

UTW submitted documentation and legal arguments that the classification applied at liquidation, 6306.22.9030, was incorrect as to these tent models, and requested that CBP find that the tents in question were properly classifiable under subheading 6306.22.1000, HTSUS.   Complaint at ¶ 11-12.  In approving Protest '919, therefore, CBP determined that the protested tent models, including the MyPod, OriginalPod, and XLPod, were classifiable under subheading 6306.22.1000, HTSUS. *Id*. at ¶ 14, Exhibit 1.  As discussed in more detail below, this decision is inherently applicable to future entries of the MyPod, OriginalPod, and XLPod.

1. ***Defendant's assertion that Protest '919 did not establish a rule for classification of tent models MyPod, OriginalPod, and XLPod is not credible.***

Defendant argues that CBP's classification decision in Protest '919 only applies to the specific MyPod, OriginalPod, and XLPod tents imported in the protested entries, and has no bearing on future entries of tent models MyPod, OriginalPod, or XLPod.  Defendant would have the Court conclude that when CBP makes a decision that a specific product, identified by a specific model number and specific product measurements, materials, and characteristics, is classified under is specific subheading of the HTSUS, and communicates that decision via a protest decision, the protestant should not consider that decision to be applicable to other entries of the exact same products, and therefore cannot rely on that classification decision when entering future shipments of identical merchandise.  This is not at all in keeping with CBP's actual practice: when CBP makes and communicates to an importer a decision regarding the correct classification of a product, regardless of how that decision is communicated, it is understood that all units of the product fall under that classification.

---

motion to dismiss the Court accepts the plaintiff's factual allegations as true, this is sufficient to establish that the tent models at issue in Protest '919 included tent models MyPod, OriginalPod, and XLPod.

**2.  *The exemplar interpretive rulings and decisions identified in the statute typically do not expressly provide for prospective application.***

Many of the very exemplar rulings and decisions named in § 1625 do not expressly state that the subject merchandise "must be classified henceforth" under the tariff classification at issue. Protest review decisions, for example, address the classification of protested merchandise in specific, protested entries, and do not expressly state that the importer is to classify future entries of identical merchandise in accordance with the decision[3] – yet that is the clear intent.  The protest review decision at issue in this action – HQ H311492 – does not expressly state that it applies to any entries other than those that were the subject of the protest.  Internal advice letters responding to requests for advice on current or past entry transactions likewise do not expressly state that they apply to future entries of identical merchandise.[4]  Thus, the assertion that a decision by CBP is only the "functional equivalent" of a protest review decision if it expressly states that it is applicable to future entries is incorrect.

**3.  *Kahrs is inapposite because the protest decision at issue did not provide an affirmative classification for the protested entries, and because it had already been revoked in accordance with § 1625(c).***

Defendant's citation of *Kahrs* in support of its assertion (that a § 1625(c) interpretive ruling or decision must expressly provide for prospective application) is misplaced because (a) *Kahrs* did not result in an affirmative classification decision for the protested entries, and because (b) the Court in *Kahrs* found that the decision under review had already been revoked.

In *Kahrs,* the classification question at issue was whether certain engineered wood flooring panels imported by the plaintiff were correctly classified as entered as parquet panels of

---

[3] *See, e.g.*, HQ H323452 (July 18, 2023); HQ H315471 (June 28, 2023); HQ H331516 (June 21, 2023); HQ H329714 (June 20, 2023); HQ H325548  (June 13, 2023); HQ H323157 (June 9, 2023); HQ H320726 (June 5, 2023); HQ H302043 (May 5, 2023); HQ H312779 (April 21, 2023); HQ H319996 (April 10, 2023).

[4] *See, e.g.*, HQ H328217 (June 9, 2023); HQ H322527 (June 7, 2023).

subheading 4418.30.0000, HTSUS (2006), or as liquidated by CBP as plywood of Heading 4412. *Kahrs*, 645 F. Supp. 2d at 1258.  The plaintiff argued that CBP's reclassification of the panels under Heading 4412 violated § 1625(c) because it effectively revoked two 1997 protest denials that the plaintiff alleged constituted "prior interpretive rulings or decisions."  *Id*. at 1259.

First, the Court found that the 1997 denied protests did not constitute relevant §1625(c) prior interpretive rulings or decisions because they did not make a specific affirmative classification decision but rather merely rejected classification under subheadings 4409.20.25, 4409.20.90, or 4418.90.20 (none of which were at issue in the case): "While arguably, these determinations could be construed as 'rulings,' the denied protests here merely exclude the subject merchandise from certain tariff provisions and do not require that they be classified henceforth under a particular tariff heading. That is, there is no directive set out by these denied protests that require Kahrs classify its merchandise under 4418.30.00 HTSUS."  *Id*. at 1285.

Second, the Court in *Kahrs* found that CBP had already followed proper § 1625(c) notice and comment procedures for the revocation of its prior classification determinations with regard to parquet flooring.  On December 20, 2000, CBP published notice of its intent to revoke certain established treatment and ruling letters regarding the classification of parquet panels under Heading 4418 and to henceforth classify such products under Heading 4412; this revocation went into effect on July 29, 2001.  *Id*. at 1286, n. 34.  The Court in *Kahrs* ruled that even if the denied protests were considered to be § 1625(c) interpretive rulings or decisions, "they are made invalid by the Revocation Ruling."  *Id*. at 1286.  The Court found this to be an "even more convincing" basis for its decision that the protests were not interpretive rulings or decisions "as a matter of law."  *Id*.

**4. ICP II and American Fiber identify express statements of prospective applicability as relevant evidence that a determination qualifies as a "interpretive ruling or decision," but do not establish a rule that such an express statement is the only way that prospective applicability may be established.**

Defendant cites *ICP II* and *American Fiber* in support of its contention that if a CBP decision does not expressly state that it applies to future entries, it cannot be considered an interpretive ruling or decision for purposes of § 1625(c).  MTD Br. 12.  Those court opinions, however, do not support Defendant's position.

In *ICP II*, the CAFC responded to the Government's argument that Notices of Action are by their nature "entry specific documents," and therefore incapable of revoking a prior ruling, by noting that the specific Notice of Action at issue in that case stated that "all shipments" of the product at issue "must be classified" under a particular subheading.  *ICP II*, 748 F.3d at 1187.  The Court found that the language of the Notice of Action in that case served as evidence that the Notice of Action applied to future entries, and therefore effectively revoked a prior ruling letter. *Id*.  The CAFC did not state, however, hold that an express written statement on the face of a document was the only permissible evidence of prospective application, or that all § 1625(c) interpretive rulings or decisions must feature a similar express statement.  *Id*.

Defendant's citation to *American Fiber* does not quote the Court's own words but rather quotes the Court quoting the plaintiff in that case.  MTD Br. 12; *American Fiber*, 131 F. Supp. 3d at 1280 n. 27.  In a footnote, the Court quotes the plaintiff as arguing that the Notice of Action qualified as a § 1625(c) interpretive ruling or decision because "[i]t identifies the product, expresses disagreement with the importer's classification, and directs under pain of penalty that future imports be classified differently than had been the case prior."  *American Fiber*, 131 F. Supp. 3d at 1280 n. 27.  The Court's only comment on this argument was that it "suggests" that the Notice of Action "interprets and applies" the law to specific facts, but "does not establish that

13

the notice of action was the result of considered deliberations or effectively revoked a treatment."
*Id*. This too does not establish any rule that express statements of applicability to future entries is the only means by which prospective applicability may be demonstrated.

**B. The approval of Protest '919 is inherently interpretive; Defendant's attempt to establish a requirement that the protest approval bear "indicia of interpretation on its face" is unavailing.**

Defendant next claims that the Protest '919 approval is not "interpretive" because it does not "'bear indicia' of interpretation" on its face. MTD Br. 12. Defendant argues that because the text CBP inserted into the electronic Protest Decision box in ACE did not "quote the HTSUS, apply the General Rules of Interpretation, cite Treasury Decision 86-163 (which governs the classification of tents), or apply its interpretation to any of the facts at issue," and did not include a "description or identification of the merchandise," the protest approval is legally proscribed from being considered interpretive. *Id*. at 12-13. This argument is unpersuasive for several reasons.

First, Defendant's assertion that "[p]rior determinations that qualify for § 1625(c)(1)'s protections will instead 'bear indicia' of interpretation 'on their face'" (MTD Br. 12) is legally incorrect. Defendant cites to *S. Shrimp Alliance v. United States*, 617 F. Supp. 2d 1334 (Ct. Int'l Trade 2009) in support of its assertion. However, that case does not address the meaning of "interpretive ruling or decision" in 19 U.S.C. **§ 1625(c)(1)**. Rather, it exclusively considers the definition and scope of the term "interpretive ruling (including any ruling letter, or internal advice memorandum) or protest review decision" in **§ 1625(a)**. *S. Shrimp Alliance*, 617 F. Supp. 2d at 1352. The Court in *S. Shrimp Alliances* dispenses quickly with the question of whether the reconsideration decisions at issue in that case constitute protest review decisions (finding that it clearly does not), and focuses solely on whether the decisions under review constitute "interpretive

rulings" for purposes of § 1625(a) and therefore were required to be published or made available for public inspection. *Id*. at 1352, 1353.

The Court's interpretation of the language of § 1625 in *S. Shrimp Alliance* applies solely to "interpretive rulings." It does not at any point address or even mention "decisions" of § 1625(c). Therefore, even if *S. Shrimp Alliance* could be read to require that "interpretive rulings" must bear certain "indicia" of interpretation in the text of the ruling, it in no way extends that requirement to "decisions" of § 1625(c), which have been expressly recognized to encompass decisions that are not subject to § 1625(a). *See American Fiber,* 121 F. Supp. 3d at 1279 (stating that a "decision" for purposes of § 1625(c) "may be, but is not limited to, a protest review decision."); *Kahrs*, 645 F. Supp. at 1285 ("Thus, based on Congress' use of the word `includes' in the statutory language of § 1625(c), a 'protest review decision' is to be included among the larger category of otherwise generic Customs' 'decision[s].'").

Second, *S. Shrimp Alliance* does not establish a requirement of facial indicia of interpretation even with regard to interpretive rulings. *S. Shrimp Alliance* was issued in response to motions to dismiss for failure to state a claim. After determining that dismissal was not appropriate due to lack of clarity as to the definition of "interpretive decision,"[5] the Court listed "another consideration [that] guides the Court in denying" the motion to dismiss:

> At this, the pleading stage of the case, the court does not rule on, and does not have before it, an administrative record containing any decision that actually has been issued under § 159.64(c)(3). The court cannot rule out entirely the possibility that one or more such decisions, on their face, will bear indicia relevant to the question of whether they are "interpretive."

---

[5] "Interpretive decision" is the regulatory term for "interpretive rulings and protest review decisions" referenced in § 1625(a). *See* 19 C.F.R. § 177.10(a); *see also S. Shrimp Alliance,* 615 F. Supp. 2d at 1353 ("Customs refers to a ruling or decision required to be disclosed by 19 U.S.C. § 1625(a) as an 'interpretive decision.'"). The Court in *S. Shrimp Alliance* ruled that because the regulation does not define the term "interpretive decision" with "sufficient precision," the Court could not "conclude with certainty that Customs by regulation has provided that all decisions resulting from CDSOA reconsideration decisions, in any form, are outside the scope of the term "interpretive decision.'" *S. Shrimp Alliance*, 615 F. Supp. 2d at 1355.

*Id.* at 1356.  The Court's purpose in referencing "indicia" was not to establish a rule for identifying whether a decision is "interpretive," but merely to note that it did not have the ability at that stage to review whether the decisions might be interpretive, and that dismissal was therefore inappropriate.  *Id.*

Moreover, the actual language in the opinion, "indicia relevant to the question of whether [the reconsideration decisions] are 'interpretive," is altogether different than Defendant's construction, "indicia of interpretation."  *Id.*; *see also* MTD Br. 12.  Indicia "relevant…to whether" a decision is interpretive is a much broader phrase than indicia "of interpretation." Defendant asserts that indicia "of interpretation" must "quote the HTSUS, apply the General Rules of Interpretation, cite Treasury Decision 86-163…or apply its interpretation to any of the facts at issue."[6]  MTB Br. 12.  Whether or not Defendant's definition of indicia "of interpretation" is reasonable, that is not the phrase used in *S. Shrimp Alliance.*  Facial indicia "relevant…to whether" a decision is interpretive could include a reference to other documents that show interpretation and application of the law – such as a statement that the decision was "based on received documents," which referenced documents include both factual information and legal arguments.  *See S. Shrimp Alliance*, 617 F. Supp. 2s at 1356; Complaint at ¶ 14.

Third, Defendant's proposition that a classification decision by CBP only becomes subject to notice and comment procedures under §1625(c) if CBP provides written "indicia of interpretation" to the importer has troubling implications.  Taking this idea to its logical conclusion, this would mean that it does not matter whether or what type of "considered deliberations" CBP conducted to arrive at the classification decision: so long as the decision

---

[6] The suggestion that "interpretation of 'a provision of law'" constitutes an example of such indicia is also that of Defendant, not that of the Court: the quoted language comes from a previous section of the Court's opinion, not from the paragraph discussing facial indicia.  *See S. Shrimp Alliance*, 617 F. Supp. 2d at 1355 (stating that decisions correcting clerical errors are probably not interpretive because they do not interpret a provision of law).

actually communicated to the importer was devoid of any detail, CBP cannot be held to it. This creates a strong incentive for CBP to withhold explanations of its decisions from the public. Under this form-over-substance construction, if the Notices of Action in *ICP II* had merely conveyed the classification decision but failed to convey any explanation of the reason therefor, they would not have constituted "interpretive rulings or decisions" for purposes of § 1625(c).

As Defendant itself has acknowledges, CBP is not required to provide any detail at all when approving protests. MTD Br. 4; 19 C.F.R. § 174.29. Defendant's proposed rule regarding facial "indicia" of interpretation would therefore effectively mean that no protest approval that was not the result of AFR can ever qualify as a "decision" for purposes of § 1625(c). Such a blanket rule directly contradicts this Court's concern that to elevate "form over function" would "allow Customs to manipulate when section 1625(c) would apply." *ICP I,* 549 F .Supp. 2d at 1391. Just as in the case of Notices of Action, categorically excluding protest decisions from the purview of § 1625(c) "would create an exception large enough to swallow the rule." *Id.*

Defendant states that "Congress…did not intend for Customs to publish every one-sentence decision on a protest lacking a description of the merchandise at issue." MTD Br. 13. This again misunderstands the differing language and scopes of § 1625(a) and § 1625(c); a decision may constitute a "prior decision" for purposes of § 1625(c) without requiring publication under § 1625(a). And while Congress may not have intended to make every protest decision subject to § 1625(c), neither did it intend that CBP should be able to circumvent notice and comment requirements merely by refusing to provide importers with any explanation of its decisions.

**C. The Complaint adequately pleads that Protest '919's approval was the result of considered deliberations and therefore qualifies as an interpretive ruling or decision.**

Defendant next argues that Plaintiff's complaint fails to plead the existence of "considered deliberations" by CBP with regard to Protest '919 in sufficient detail. MTD Br. 13-14. However,

the standard of review for a 12(b)(6) motion to dismiss only requires that the pleadings establish a reasonable expectation that discovery will reveal evidence supporting the claim, which standard the Complaint meets. *Twombly,* 550 U.S. at 545. This is particularly true given that Defendant misconstrues "considered deliberations" to be an element of the claim when it is actually a factual allegation supporting an element of the claim. Finally, Defendant's argument that "considered deliberations" must necessarily be conducted by OR&R for the resulting decision to constitute a § 1625(c) interpretive ruling or decision overstates the opinions on which it relies. Accordingly, Defendant's argument is without merit.

1. ***The standard for review for a Rule 12(b)(6) motion to dismiss does not require all facts to be plead with particularity, but merely with sufficient detail to raise a reasonable expectation that discovery will reveal evidence supporting the claim.***

Dismissal of a case for failure to state a claim is appropriate only where "it appears beyond doubt that no set of facts can be proven that would entitle the plaintiff to relief." *Conley*, 335 U.S. at 48; *see also Twombly* at 546; USCIT Rule 12(b)(6). The requirement that the stated claim be "plausible on its face" does not require detailed factual allegations; it "simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence" supporting the claim for relief. *Twombly*, 550 U.S. at 545. In this case, the Complaint states that UTW argued in Protest '919 that the subject tents satisfy all of the criteria specified in T.D. 86-163. Complaint at ¶ 11. It further states that CBP made two separate requests for documentation relevant to the protest, including any literature showing that the tents in question "are in fact backpacking tents." *Id.* at ¶ 12-13. Finally, the protest approval states that the protest "has been approved based upon received documents." *Id*. at ¶ 14. These facts indicate that the documents and classification arguments provided by Plaintiff in its initial protest and in response to CBP's supplemental requests were reviewed, considered, and formed the basis for its decision that the classification proposed by

Plaintiff was correct. It is reasonable, given the information presently available to Plaintiff, to characterize CBP's review of the documentation and application of the law to the factual information provided to arrive at a classification decision as "considered deliberations." Plaintiff's Complaint therefore contains sufficient detail to raise a reasonable expectation that discovery will reveal evidence of considered deliberations.

The Court in *S. Shrimp Alliance* denied the defendant-intervenor's motion to dismiss in part because it did not at that stage have before it the administrative record in the case, and therefore "cannot rule out entirely the possibility" that the record could include information indicating whether the decisions under review were "interpretive rulings" for purposes of § 1625(a). *S. Shrimp Alliance*, 617 F. Supp. 2d at 1356. Similarly, in this case, the full scope and precise nature of CBP's deliberations – who participated, what was discussed, what internal memoranda, notes or written communications were generated – with regard to Protest '919 have not been revealed to Plaintiff, and will only be made known to Plaintiff and the Court through the course of discovery. The statement in the Complaint that "considered deliberations" occurred, in connection with statements regarding the type of information requested by CBP to review, raise a reasonable expectation that additional evidence of those considered deliberations will be revealed through discovery; accordingly, dismissal is not appropriate.

### 2. *"Considered deliberations" is a factual allegation in support of a claim.*

Moreover, contrary to Defendant's assertions, alleging of "considered deliberations" is not a "formulaic recitation" of the elements of a cause of action under § 1625(c), but rather a specific factual allegation in support of one of the elements of the cause of action that is "enough to raises the right of relief above the speculative level on the assumption that all of the complaint's allegations are true." *Twombly*, 550 U.S. at 555. The elements of the cause of action are (1) the

existence of a "prior interpretive ruling or decision" and (2) the existence of a "proposed interpretive ruling or decision," in which (3) the latter would modify or revoke the former, and where (4) no notice or comment proceedings were observed prior to the issuance and implementation of the latter.  "Considered deliberations" are a factor that the courts have identified as relevant to the question of whether a particular decision constitutes a proposed or prior interpretive ruling or decision and therefore constitute a factual allegation that supports a "facially 'plausible' claim to relief."  *Cambridge v. United States*, 558 F.3d 1331, 1335 (Fed. Cir. 2009).

### 3. The courts have not ruled that only deliberations by OR&R constitute "considered deliberations" sufficient to render the resulting decision subject to § 1625(c).

Inherent in Defendant's objections to the sufficiency of the Complaint's pleading of Count II is a presumption that the term "considered deliberations" necessarily and solely refers to deliberations by the Office of Regulations and Rulings ("OR&R"), to the point that Defendant argues failure to allege that OR&R was "responsible" for the decision renders the Complaint facially deficient.  MTD Br. 13, 14.   This, however, is merely one interpretation of the very few cases that have thus far addressed this issue and that utilize this phrase, and presumes a settled definition where none exists.

No court has stated that the CBP Centers for Excellence and Expertise ("Centers") are incapable of conducting considered deliberations and issuing decisions that are the "functional equivalent" of the exemplar interpretive rulings and decisions enumerated in the statute.  To date, no court has been presented with a case in which a claim for § 1625(c) could turn on whether or not OR&R was involved, and therefore the courts have not had the opportunity to examine whether the decision-making processes of other departments within CBP might, in specific cases, constitute "considered deliberations."  As such, Defendant's assertion that allegations of OR&R involvement are necessary is without merit.

**D. Defendant's "administrative infeasibility" argument misinterprets the legal effect of Plaintiff's claim, and vastly overstates the potential burden to CBP.**

Finally, Defendant argues that a protest decision issued by a Center cannot constitute a § 1625(c) "interpretive ruling or decision" because such a result would be impractical.  MTD Br. 14. Defendant argues that (1) if Protest '919 is an "interpretive ruling or decision," then all protest determinations issued by a Center must be "interpretive rulings or decisions," and that CBP would have to (2) "publish every protest determination" and (3) "follow notice-and-comment procedures just to decide a subsequent protest differently."  MTD Br. 14.  As detailed below, each of these assertions is without merit.

*1.  Protest '919 is not representative of all protest decisions.*

Defendant's assertion that if Protest '919 is subject to § 1625, all protests are subject to § 1625 (MTD Br. 14) is incorrect.  Protest decisions cover a very wide range of issues, many of which are patently not interpretive, and/or are clearly applicable only to the protested entries or decisions.  Protests to correct clerical errors in entry data, for example, do not interpret provisions of the law.  Even other protest decisions regarding classification of merchandise will not necessarily fall within the ambit of § 1625(c); whether any individual protest decision will constitute am "interpretive ruling or decision" for purposes of § 1625(c) depends on the degree to which that specific decision "is the result of considered deliberations," "interprets and applies the provisions of the Customs and related laws to a specific set of facts," and "has the effect of unilaterally changing the rules upon which importers have come to rely."  *American Fiber*, 121 F. Supp. 3d at 1279-80 (internal citations omitted).  Not all protests decisions will meet that bar.

The CAFC made this very point in rejecting a similar argument in *ICP II*.  In response to the Government's argument that finding the Notices of Action at issue in that case to be subject to § 1625(c) would be administratively infeasible, the CAFC responded:

> [T]he CIT did not hold that *all* notices of action are now subject to notice and comment procedures. The CIT held only that the Notice of Action in this case — which effectively revoked the Ruling Letter and was issued after relevant OR & R deliberation — was subject to § 1625(c)'s procedures. To the extent the Government is not using notices of action to surreptitiously revoke ruling letters, its slippery slope argument is vastly overstated.

*ICP II*, 748 F.3d at 1189.

### 2. *"Interpretive rulings and decisions" of § 1625(c) are not necessarily also subject to publication under § 1625(a).*

Defendant urges that if Center-issued protest decisions can be considered "interpretive rulings and decisions," CBP will be forced to "publish every protest determination." This assertion is based on Defendant's continuous failure to recognize the difference in language between § 1625(a) and § 1625(c). As has been discussed previously in this Response brief, the "decisions" that are subject to § 1625(c) include, *but are not limited to*, protest review decisions. *American Fiber,* 121 F. Supp. 3d at 1279; *Kahrs*, 645 F. Supp. 2d at 1285. This means that there exist "decisions" that are not required to be published or otherwise made available pursuant to § 1625(a), but that nevertheless trigger § 1625(c) notice and comment requirements before they can be modified or revoked. Protest '919 is such a decision.

### 3. *Adhering to notice-and-comment procedures to revoke Center-issued protest decisions should not be burdensome if the Centers are performing their intended function of achieving uniformity.*

Defendant argues that acknowledging that Center-issued protest decisions can in some cases constitute § 1625(c) interpretive rulings or decisions would force CBP to "locate the first-in-time protest determination and publish countless … revocation notices," which "time-consuming procedures" will "lay waste to the protest system." MTD Br. 14. This dramatic claim is unwarranted. Even if every classification protest issued by a Center constituted a § 1625(c) interpretive ruling or decision (which it would not), notice and comment procedures are only

22

triggered when a protest decision modifies or revokes, or is modified or revoked by, another §

1625(c) interpretive ruling or decision.  In other words, notice and comment procedures would

only be required if the classification decisions that the Center makes in a protest decision directly

conflict with a previous interpretive ruling or decision.  To the extent that the Centers are not

issuing "countless" conflicting protest decisions, they will not need to publish "countless"

revocations.

The stated purpose for establishing the Centers and for transferring operational functions

such as review of protests from the ports to the Centers is, among other things, "to achieve

uniformity of treatment at the ports of entry for the identified industries."  U.S. Customs & Border

Protection, *Regulatory Implementation of the Centers of Excellence and Expertise*, 81 Fed. Reg.

92978 (December 20, 2016).  When CBP amended the protest regulations to transfer authority for

review of protests from the ports to the Centers, it specifically noted that the Centers were

established "in response to claims that CBP's port-by-port trade processing authority sometimes

resulted in similar goods entered at different ports of entry receiving disparate processing

treatment."  *Id*. at 92979.  To the extent that decentralized protest decision-making authority at the

ports might have resulted in protest decisions that applied different classifications to effectively

identical merchandise, centralization of protest decision-making authority in Centers based on

industry was intended to increase consistency.  Incidences in which one protest decision modifies

or revokes another should, therefore, be relatively rare, and the burden of undergoing notice and

comment procedures in such rare occurrences not unmanageable.

## <u>CONCLUSION</u>

For the foregoing reasons, Defendant's Partial Motion to Dismiss Count II of Plaintiff's

Complaint should be DENIED in its entirety.

Respectfully submitted,

<u>/s/ Heather Jacobson</u>
Heather Jacobson
Alena A. Eckhardt

NAKACHI ECKHARDT & JACOBSON, P.C.
2815 Elliott Avenue, Suite 100
Seattle, WA 98121-2991
Tel: (206) 774-0927
Email: hjacobson@tradelawcounsel.com
          eckhardt@tradelawcounsel.com

*Counsel for Plaintiff Under the Weather, LLC.*

Dated: October 26, 2023

**WORD COUNT CERTIFICATE OF COMPLIANCE**

Pursuant to the U.S. Court of International Trade's Standard Chambers Procedures 2(B)(1), the undersigned certify that this brief complies with the court limitation requirement. The word count for Plaintiff Fraserview Remanufacturing Inc.'s Response to Defendant's Motion to Dismiss, as computed by Nakachi Eckhardt & Jacobson's PC's word processing system (Microsoft Word Version 16.78), is 7,937 words.

Respectfully Submitted,

/s/ Heather Jacobson
Heather Jacobson
Alena Eckhardt
Nakachi Eckhardt & Jacobson P.C.
2815 Elliott Avenue, Suite 100
Seattle, WA 98121-2991
Tel: (206) 774-0927
Email: hjacobson@tradelawcounsel.com

*Counsel for Under The Weather LLC*

Dated: October 26, 2023