UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: HON. TIMOTHY M. REIF, JUDGE

| | |
|---|---|
| UNDER THE WEATHER, LLC, | : <br> : <br> : |
| Plaintiff, | : <br> : |
| v. | :    Court No. 21-00211 <br> : |
| UNITED STATES, | : <br> : |
| Defendant. | : <br> : |

# DEFENDANT'S REPLY IN SUPPORT OF ITS
# PARTIAL MOTION TO DISMISS PLAINTIFF'S COMPLAINT

 

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. McCARTHY
Director

JUSTIN R. MILLER
Attorney-In-Charge
International Trade Field Office

*Of Counsel*:
Yelena Slepak
Emma Tiner
Office of the Assistant Chief Counsel
International Trade Litigation
U.S. Customs and Border Protection

LUKE MATHERS
Trial Attorney
Department of Justice, Civil Division
Commercial Litigation Branch
26 Federal Plaza – Suite 346
New York, New York 10278
(212) 264-9236
*Attorneys for Defendant*

Dated: November 16, 2023

**TABLE OF CONTENTS**

ARGUMENT ..................................................................................................................................2

    I.     Under The Weather Misinterprets 19 U.S.C. § 1625 ...............................................2

          A.     A "prior interpretive ruling or decision" subject to § 1625(c)(1) is the same as an "interpretive ruling … or protest review decision" subject to § 1625(a)'s publication requirement ............................................................2

          B.     Contrary to Under the Weather's suggestion, statutory text confirms that only interpretive rulings, protest review decisions, and their functional equivalents qualify for § 1625(c)(1)'s protections ......................................4

    II.    Under The Weather Misconstrues The Caselaw In A Way That Would Make Every Protest Determination Subject To § 1625(c)(1) ............................................5

          A.     Under the Weather relies on an abrogated pleading standard......................5

          B.     An "interpretive ruling or decision," on its face—and not by silent implication—interprets the law....................................................................7

          C.     The considered deliberations of R&R, which has the delegated authority to rule on tariff classification issues, bestows a protest determination with § 1625(c)(1) status—not the considered deliberations of a Center or import specialist...................................................................................................9

          D.     The cases interpreting § 1625(c)(1) require that a determination contain a directive mandating that future entries be classified a certain way, and this protest approval plainly lacks one.............................................................10

CONCLUSION.............................................................................................................................13

# **TABLE OF AUTHORITIES**

**Cases**

*Am. Fiber & Finishing, Inc. v. United States*,
   121 F. Supp. 3d 1273 (Ct. Int'l Trade 2015) .................................................................. 9, 10, 11

*Animal Legal Def. Fund v. U.S. Dep't of Agric.*,
   789 F.3d 1206 (11th Cir. 2015) ................................................................................................ 5

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ............................................................................................................. 6, 7

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ................................................................................................................ 6

*Cal. Indus. Prods., Inc. v. United States*,
   436 F.3d 1341 (Fed. Cir. 2006) ............................................................................................... 2

*Conley v. Gibson*,
   335 U.S. 41 (1957) .................................................................................................................. 5

*Env't One Corp. v. United States*,
   627 F. Supp. 3d 1349 (Ct. Int'l Trade 2023) ........................................................................... 6

*Int'l Custom Prods., Inc. v. United States*,
   549 F. Supp. 2d 1384 (Ct. Int'l Trade 2008) ..................................................................... 3, 10

*Int'l Custom Prods., Inc. v. United States*,
   748 F.3d 1182 (Fed. Cir. 2014) ....................................................................................... passim

*Kahrs Int'l, Inc. v. United States*,
   645 F. Supp. 2d 1251 (Ct. Int'l Trade 2009) ...................................................................... 7, 11

*Kent Int'l, Inc. v. United States*,
   17 F.4th 1104 (Fed. Cir. 2021) ................................................................................................ 5

*Mellouli v. Lynch*,
   575 U.S. 798 (2015) ................................................................................................................ 3

*Miss. River Fuel Corp. v. Fed. Power Comm'n*,
   163 F.2d 433 (D.C. Cir. 1947) ................................................................................................. 9

*Nat'l Org. of Veterans' Advocs., Inc. v. Sec'y of Veterans Affs.*,
   981 F.3d 1360 (Fed. Cir. 2020) ............................................................................................... 4

*S. Shrimp Alliance v. United States*,
   617 F. Supp. 2d 1334 (Ct. Int'l Trade 2009) ........................................................................... 8

*Timex V.I., Inc. v. United States*,
  157 F.3d 879 (Fed. Cir. 1998) ................................................................................................ 2

*Whitman v. American Trucking Assns., Inc.*,
  531 U.S. 457 (2001) ................................................................................................................ 3

**Statutes**

19 U.S.C. § 1515(a) ....................................................................................................................... 8

19 U.S.C. § 1625 .................................................................................................................... passim

19 U.S.C. § 1625(a) ............................................................................................................... 2, 3, 4

19 U.S.C. § 1625(c)(1) .......................................................................................................... passim

19 U.S.C. § 1625(c)(2) ................................................................................................................... 5

Customs Modernization Act,
  Pub. L. 103-182, § 613(a), 107 Stat. 2057, 2174 (1993) ........................................................ 4

**Regulations**

19 C.F.R. § 177.1(d)(1) .............................................................................................................. 8, 9

19 C.F.R. § 177.1(d)(2) .................................................................................................................. 8

19 C.F.R. § 177.1(d)(6) .................................................................................................................. 9

19 C.F.R. § 177.2(a) .................................................................................................................... 10

19 C.F.R. § 177.2(b)(2)(ii)(B) ................................................................................................. 9, 10

19 C.F.R. § 177.10(a) .................................................................................................................... 8

**Rules**

USCIT Rule 12(b)(6) ..................................................................................................................... 6

**Other Authorities**

HQ H311492 ............................................................................................................................ 1, 11

*Interpret*, Merriam-Webster Online Dictionary, https://www.merriam-
  webster.com/dictionary/interpret ........................................................................................... 7

*Interpretive rule*, Black's Law Dictionary (11th ed. 2019) .......................................................... 7

UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: HON. TIMOTHY M. REIF, JUDGE

| | |
|---|---|
| UNDER THE WEATHER, LLC, : | |
| : | |
| Plaintiff, : | |
| : | |
| v. : | Court No. 21-00211 |
| : | |
| UNITED STATES, : | |
| : | |
| Defendant. : | |

**DEFENDANT'S REPLY IN SUPPORT OF ITS**
**PARTIAL MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

The question presented by the Government's motion is whether an import specialist's determination that states, "Protest has been approved based upon received documents" and nothing more can be an "interpretive ruling or decision" within the context of 19 U.S.C. § 1625(c)(1). It cannot, as a matter of law. It lacks a classification directive applicable to future entries, interpretation of the law, and Regulations & Rulings' (R&R's) imprimatur. This determination was not, therefore, subject to the procedural requirements of 19 U.S.C. § 1625(c)(1). *See* ECF No. 22 (Mot. to Dismiss) at 6–14.

Under the Weather's response rests on legal misunderstandings and a pleading standard that was abrogated over a decade ago. At issue is not whether it is theoretically possible for a claim to exist or whether it is reasonable for Under the Weather to rely on a protest approval in the future. Instead, Under the Weather needed to plausibly allege that this one-sentence, Center-level protest approval was the functional equivalent of a protest review decision like HQ H311492—through which R&R exercised its delegated authority and explicitly applied the law to the facts of a transaction, representing United States Customs and Border Protection's

(Customs') official position until modified or revoked.  Under the Weather has not done so.  Count II of the complaint accordingly should be dismissed.

# ARGUMENT

I. **Under The Weather Misinterprets 19 U.S.C. § 1625**

    A. **A "prior interpretive ruling or decision" subject to § 1625(c)(1) is the same as an "interpretive ruling … or protest review decision" subject to § 1625(a)'s publication requirement**

Under the Weather first argues that there is a distinction between 19 U.S.C. § 1625(a)'s "interpretive ruling … or protest review decision" subject to publication and § 1625(c)(1)'s "prior interpretive ruling or decision" subject to revocation.  ECF No. 23 (Resp. Br.) at 2–5.  Under the Weather thus argues that interpretive decisions other than protest review decisions must be revoked, but need not be published.  *Id.* at 4–5.  But that is wrong on both fronts.

The Federal Circuit held in *California Industrial Products, Inc. v. United States* that § 1625(c)(1)'s phrase "prior interpretive ruling or decision" refers back to § 1625(a)'s longer phrase "interpretive ruling (including any ruling letter, or internal advice memorandum) or protest review decision."  436 F.3d 1341, 1351 (Fed. Cir. 2006).  All references to "rulings" and "decisions" in a section titled "Interpretive rulings and decisions; public information," in short, "should be construed consistently."  *Id.* (citing *Timex V.I., Inc. v. United States*, 157 F.3d 879, 884 (Fed. Cir. 1998) ("It is well-settled that words appearing in a statute should be read consistently: a particular word appearing multiple times in a statutory provision should be given the same reading, unless there is a clear Congressional intent to the contrary.")).  "[P]rior interpretive ruling[s] or decision[s]" subject to revocation under § 1625(c)(1) must therefore also be published under § 1625(a).

2

This plain reading of § 1625 makes sense. Interpretive rulings and decisions represent Customs' official position as to a transaction. In enacting § 1625, Congress instructed Customs to publish such rulings and decisions for the importing public's benefit. Through the Customs Modernization Act, Congress required Customs to abide by these published rulings and decisions unless modified or revoked through notice-and-comment procedures. Mot. to Dismiss at 7–9. Reading these provisions to apply to the same category of interpretive rulings and decisions interprets the statute "as a symmetrical and coherent regulatory scheme," *Mellouli v. Lynch*, 575 U.S. 798, 809 (2015) (quotation omitted), rather than disjointedly as Under the Weather recommends. And it is contrary to the plain text and legislative history to suggest that, through language it used in *§ 1625(c)(1)*, Congress gave Customs license to avoid *§ 1625(a)* merely by calling an interpretive decision anything but a "protest review decision." *See Whitman v. American Trucking Assns., Inc.*, 531 U.S. 457, 468 (2001) ("Congress, we have held, does not alter the fundamental details of a regulatory scheme in vague terms or ancillary provisions—it does not, one might say, hide elephants in mouseholes.").

But this is precisely what Under the Weather suggests in arguing that some interpretive decisions must be revoked, but not published. Resp. Br. at 4–5. "This elevates form over function." *Int'l Custom Prods., Inc. v. United States*, 549 F. Supp. 2d 1384, 1392 (Ct. Int'l Trade 2008), *aff'd*, 748 F.3d 1182 (Fed. Cir. 2014). Section 1625(a)'s protections surely are not "contingent on the instrument" by which Customs communicates a decision, just as § 1625(c)(1)'s protections are not. *Id.* Accordingly, were Under the Weather right that a one-sentence, entry-specific, Center-level protest approval constitutes an interpretive ruling or decision (which it is not), cryptic protest determinations and revocation notices providing no

3

guidance would flood the Customs Bulletin, burdening both Customs and importers. Under the Weather's interpretation thus contradicts both § 1625's plain language and its purpose.

### B. Contrary to Under the Weather's suggestion, statutory text confirms that only interpretive rulings, protest review decisions, and their functional equivalents qualify for § 1625(c)(1)'s protections

Under the Weather also complains that the Government's interpretation would mean that protest determinations that are "not the result of [an application for further review]" would not qualify for § 1625(a) and (c)(1)'s procedural safeguards. Resp. Br. at 17. But that is, in fact, what the law requires. Only the "functional equivalent[s]" of § 1625's exemplars—"internal advice memorand[a]," "ruling letter[s]," and "protest review decision[s]"—qualify for § 1625(c)(1)'s protections. *Kahrs Int'l, Inc. v. United States*, 645 F. Supp. 2d 1251, 1285 (Ct. Int'l Trade 2009). And a one-line Center-level protest approval is not the functional equivalent of an internal advice memorandum, ruling letter, or protest review decision.

Again, the statute's text supports the Government's interpretation. The statute specifies that "interpretive ruling[s]" and "protest review decision[s]" are subject to publication, and further specifies that those "prior interpretive ruling[s and] decision[s]" (which, presumably, were published for the importing public's benefit) are subject to modification and revocation procedures. If Congress wanted to subject "allowed" or "denied" protests to § 1625's provisions, it knew how to do so. It used these terms elsewhere in the Customs Modernization Act. *See, e.g.*, Pub. L. 103-182, § 613(a), 107 Stat. 2057, 2174 (1993) (providing that "a protest against the decision to exclude … merchandise which has not been allowed or denied in whole or in part [within 30 days] shall be treated as having been denied …"). Congress could have—but did not—include these terms in § 1625. *Nat'l Org. of Veterans' Advocs., Inc. v. Sec'y of Veterans Affs.*, 981 F.3d 1360, 1386 (Fed. Cir. 2020) (en banc) (citing *Animal Legal Def. Fund v. U.S.*

*Dep't of Agric.*, 789 F.3d 1206, 1217 (11th Cir. 2015) ("Where Congress knows how to say something but chooses not to, its silence is controlling.")).

It is thus the rare Center-level classification determination that will qualify as an "interpretive ruling or decision." Only where R&R's considered deliberations culminate in a determination that interprets and applies the law to classify the importer's merchandise for present and future entries—where, in effect, but not in name, an interpretive ruling or decision has been reached—will that determination trigger § 1625(c)(1). *Int'l Custom Prods., Inc. v. United States*, 748 F.3d 1182, 1187–89 (Fed. Cir. 2014); *Kahrs Int'l, Inc.*, 645 F. Supp. 2d at 1285. Under the Weather's allegations, taken as true, fail to clear that bar.[1]

## II.    Under The Weather Misconstrues The Caselaw In A Way That Would Make Every Protest Determination Subject To § 1625(c)(1)

### A. Under the Weather relies on an abrogated pleading standard

Under the Weather relies on an abrogated pleading standard. It cites *Conley v. Gibson*, 335 U.S. 41 (1957), and argues that dismissal is appropriate only where "it appears beyond doubt that no set of facts can be proven that would entitle the plaintiff to relief." Resp. Br. at 2, 18 (quoting *Conley*, 335 U.S. at 48).

---

[1] To be clear, the Government is not suggesting that a Center-level protest determination is not binding on an importer or on Customs as to the entries involved, or that an importer cannot rely on such a determination when entering merchandise. *See* Resp. Br. at 10. The question here, however, is not whether a determination is binding or reliance-inducing but rather whether the determination amounts to an "interpretive ruling or decision"—Customs' official position as to a transaction, as embodied in a document that interprets and applies the law to all future entries of an importer's specified merchandise—protected by § 1625(c)(1). Until R&R issues such a ruling or decision, § 1625 is not triggered, except where many consistent protest determinations over time give rise to a "treatment" under § 1625(c)(2), *see, e.g.*, *Kent Int'l, Inc. v. United States*, 17 F.4th 1104, 1110 (Fed. Cir. 2021) (explaining that "approved protests" are "proper for consideration in assessing the treatment previously accorded").

That is no longer true.  The Supreme Court abrogated this "no-set-of-facts" test in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).  *See Ashcroft v. Iqbal*, 556 U.S. 662, 670 (2009) (explaining that "*Twombly* retired the *Conley* no-set-of-facts test").  The test now applicable is whether, accepting all factual allegations as true, and ignoring conclusory allegations, the complaint plausibly states a claim for relief.  *Iqbal*, 556 U.S. at 678.  Mere "possibility" that a defendant acted unlawfully does not suffice.  *Id.*; *see Env't One Corp. v. United States,* 627 F. Supp. 3d 1349, 1361–62 (Ct. Int'l Trade 2023) (applying *Twombly* and *Iqbal* on a USCIT Rule 12(b)(6) motion to dismiss).  And the mere possibility that R&R's considered deliberations gave rise to a Center-level protest approval, that might somehow be interpretive, is the essence of Under the Weather's claim.

For instance, Under the Weather argues that "[f]acial indicia 'relevant … to whether' a decision is interpretive *could* include a reference to other documents that show interpretation and application of the law," and that the protest approval here could have implicitly adopted Under the Weather's legal arguments.  Resp. Br. at 16 (emphasis added).  And as for R&R's "considered deliberations," Under the Weather questions "whether the decision-making processes of other departments within [Customs] *might*, in specific cases, constitute 'considered deliberations,'" and notes that "the full scope and precise nature of [Customs'] deliberations" are unknown, citing only conclusory allegations.  *Id.* at 19–20 (emphasis added).

These "what-ifs" do not suffice.  Under the Weather needed to plausibly allege that the protest approval was both interpretive and the result of R&R's considered deliberations—that it expounded Customs' position on the law as applied to Under the Weather's merchandise.  Under the Weather has failed to do that.  *See, e.g.*, *id.* at 20 (not disputing that the complaint "fail[s] to allege that [R&R] was 'responsible' for" the protest approval).  It merely alleges that the protest

approval is the "'functional equivalent' of the exemplar interpretive rulings and decisions enumerated in the statute" because "it was the result of considered deliberations, interpreted and applied the provisions of the HTSUS to the subject merchandise, and had the effect of establishing rules regarding classification of the subject merchandise …." ECF No. 17 at ¶ 40. This conclusory recitation of a § 1625(c)(1) cause of action does not plausibly state a claim. *Iqbal*, 556 U.S. at 678; Mot. to Dismiss at 13 n.5.

### B. An "interpretive ruling or decision," on its face—and not by silent implication—interprets the law

Under the Weather's arguments misconstrue the substantive legal standard, too. Start with the requirement that a ruling or decision be "interpretive" to qualify for § 1625's protections. *Kahrs Int'l, Inc.*, 645 F. Supp. 2d at 1285–86. Under the Weather suggests that the approval meets this standard because it "is inherently interpretive." Resp. Br. at 14.

The protest approval at issue was in no sense interpretive. To interpret is to "explain or tell the meaning of" something. *Interpret*, Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/interpret; *see Interpretive rule*, Black's Law Dictionary (11th ed. 2019) ("[t]he requirement that an administrative agency explain the statutes under which it operates," or "[a]n administrative rule explaining an agency's interpretation of a statute"). "Based upon received documents" does not explain what the tariff means or how one of Under the Weather's pods should be classified. "Based upon received documents" does not provide the importing public guidance as to Customs' position or offer anything to comment on during revocation proceedings. "Based upon received documents" does not even explain which of the documents received justified the approval. And for that matter, every protest determination necessarily is "based upon" the documents, legal arguments, and other information that an importer provides in its protest, whether or not the import specialist says so. 19 U.S.C.

7

§ 1515(a) (providing that "the appropriate customs officer … *shall review the protest* and shall allow or deny such protest in whole or in part" (emphasis added)).  If this approval was interpretive, then every other protest determination is interpretive, too, as an implicit adoption or rejection of the protestant's legal arguments.  That is not the law.  Mot. to Dismiss at 14.

And as for the law, Under the Weather objects to the Government citing *Southern Shrimp Alliance v. United States*, 617 F. Supp. 2d 1334 (Ct. Int'l Trade 2009) (per curiam).  Resp. Br. at 14–17.  But that decision stands for the unremarkable proposition that an "interpretive decision," which is defined the same way in 19 C.F.R. § 177.10(a) as it is in 19 U.S.C. § 1625, will, on its face, bear indicia of interpretation such as application of law to fact (as opposed to, say, correction of clerical errors or recitation of the law).[2]  Customs regulations similarly distinguish between a "ruling," which is a "written statement … that interprets and applies the provisions of the Customs and related laws to a specific set of facts," and an "information letter," which is "a written statement issued by [Customs] that does no more than call attention to a well-established interpretation or principle of Customs law, without applying it to a specific set of facts."  19 C.F.R. § 177.1(d)(1) and (2).  This approval did none of these things.  Moreover, Under the Weather fails to identify any authority that holds a determination can silently "interpret" by implication.  *See* Resp. Br. at 16.  Such an argument is not supported by *Southern Shrimp Alliance*.  617 F. Supp. 2d at 1356.  Nor is it supported by longstanding principles of

---

[2] Under the Weather also cites *Southern Shrimp Alliance* in arguing that "the administrative record" is necessary to determine whether a decision is interpretive.  Resp. Br. at 19.  That misstates *Southern Shrimp Alliance*'s holding.  This Court held that because it did not "have before it[] an administrative record *containing any decision* that actually has been issued," it could not "rule out entirely the possibility that one or more such decisions, *on their face*, will bear indicia relevant to the question of whether they are 'interpretive.'"  *S. Shrimp Alliance*, 617 F. Supp. 2d at 1356 (emphasis added).  Here, the complaint reproduces the full one-sentence determination at issue, so this Court can "rule out" as implausible the claim that it is interpretive.

administrative law. *See, e.g.*, *Miss. River Fuel Corp. v. Fed. Power Comm'n*, 163 F.2d 433, 439 (D.C. Cir. 1947) (courts cannot "be required to probe the minds of the agency for unfound facts or unexpressed reasons").

**C. The considered deliberations of R&R, which has the delegated authority to rule on tariff classification issues, bestows a protest determination with § 1625(c)(1) status—not the considered deliberations of a Center or import specialist**

Furthermore, R&R's considered deliberations give rise to interpretive rulings and decisions, not a Center's or import specialist's deliberations. Interpretive rulings and decisions are Customs' official position, and R&R—not a Center or its import specialists—has the delegated authority to take official positions on classification matters. Mot. to Dismiss at 4 n.3, 13–14; *see* 19 C.F.R. § 177.1(d)(1). Under the Weather, however, argues that only "considered deliberations" are required, Resp. Br. at 20, referencing *American Fiber & Finishing, Inc. v. United States*' statement of the law, 121 F. Supp. 3d 1273, 1280 (Ct. Int'l Trade 2015). In other words, Under the Weather suggests that so long as someone at Customs thought hard about the classification, the result of that thinking could be an interpretive ruling or decision. *See* Resp. Br. at 17–20.

But what *American Fiber & Finishing* concisely calls "considered deliberations," 121 F. Supp. 3d at 1280 & n.21 (citing *Int'l Custom Prods., Inc.*, 748 F.3d at 1188), means R&R's deliberations in reaching an official position, as a straightforward reading of *International Custom Products* shows. There, the Federal Circuit noted that 19 C.F.R. § 177.1(d)(1) defines a ruling as a "statement issued by the Headquarters Office"[3] applying the law to the facts of a

---

[3] "Headquarters Office" means R&R's office in Washington, D.C. 19 C.F.R. § 177.1(d)(6). That office issues, among other things, protest review decisions and the like in classification matters. *Id.* § 177.2(b)(2)(ii)(B). R&R's office in New York (the National

*(cont'd)*

9

transaction. The Federal Circuit, immediately after citing this definition, held that although the particular notice of action in question "was not issued by [R&R,] it resulted from [R&R's] considered deliberations" that "determined" how the law should be applied. 748 F.3d at 1188. In other words, the court treated R&R's months-long "considered deliberations" culminating in a one-of-a-kind notice of action as tantamount to R&R having issued a statement setting forth "the agency's formal position." *Int'l Custom Prods., Inc.*, 549 F. Supp. 2d at 1392.

The complaint does not allege the occurrence of such a process. It at most suggests that the Center carefully considered Under the Weather's protest. This should always be the case, and, as such, Under the Weather's theory would subject all protest determinations to § 1625(c)(1)'s procedures. But Centers and their import specialists do not have the delegated authority to issue Customs' formal position as to a transaction; R&R does. It is thus R&R's deliberations that matter. Yet, Under the Weather fails to plausibly allege R&R's involvement in the protest approval at issue.

### D. The cases interpreting § 1625(c)(1) require that a determination contain a directive mandating that future entries be classified a certain way, and this protest approval plainly lacks one

Even putting Under the Weather's other arguments aside, Count II of the complaint still fails as a matter of law because the protest approval lacks a classification directive: a requirement that all future entries of the same merchandise by the same importer be classified in a particular way. *Compare Int'l Custom Prods., Inc.*, 748 F.3d at 1187–88 (notice of action applied to "all pending and future entries"), *and Am. Fiber & Finishing, Inc. v. United States*, 121 F. Supp. 3d at 1280 n.27 (notice of action "direct[ed] under pain of penalty that future

---

Commodity Specialist Division) issues classification ruling letters governing prospective transactions. *Id.* § 177.2(a) and (b)(2)(ii)(B).

imports be classified differently" (quotation omitted)), *with Kahrs Int'l, Inc.*, 645 F. Supp. 2d at 1285 (protest denials lacked a classification "directive" that "require[d] that [the merchandise] be classified henceforth under a particular tariff heading"). Under the Weather cannot cure this deficiency in its complaint with argument. The most it can muster (besides arguing that every case interpreting § 1625(c)(1) is inapposite in some way, Resp. Br. at 11–14) is the observation that protest review decisions like HQ H311492 lack language stating "that they apply to future entries of identical merchandise," just like the protest approval at issue. Resp. Br. at 11 & nn. 3–4.

This argument misses the mark. For one, HQ H311492 and the other R&R decisions that Under the Weather cites do, in fact, contain classification directives. They expressly apply the law to facts, state in a "holding" under which tariff provision the merchandise is classifiable, and dictate the approval or denial of the underlying protest—like a judicial opinion resolving a classification dispute and entering judgment would. *See, e.g.*, HQ H311492 ("HOLDING: By application of GRI 1, the subject pop-up tents are classified under subheading 6306.22.9030, HTSUSA …. You are instructed to DENY the protest in full."). The protest approval at issue says nothing of the sort. And for another, § 1625 expressly covers protest review decisions and internal advice memoranda, whatever language R&R uses in them. But under the caselaw, to be their functional equivalent, a determination must at least contain a classification directive for future entries. *Int'l Custom Prods., Inc.*, 748 F.3d at 1187–88; *Kahrs Int'l, Inc.*, 645 F. Supp. 2d at 1285; *Am. Fiber & Finishing, Inc.*, 121 F. Supp. 3d at 1280 n.27.

\*   \*   \*

At bottom, Under the Weather's argument is that an "interpretive ruling or decision" of § 1625(c)(1), which represents Customs' position unless modified or revoked, need not (1)

11

explicitly interpret and apply the law (or even describe the merchandise at issue); (2) issue a classification directive for future entries; or (3) result from the considered deliberations of the office at Customs with the authority to rule on classification. *See* Resp. Br. at 9–20. That whittles the standard down to nothing. If Under the Weather were right, then virtually any action taken by Customs can be an interpretive ruling or decision, and it would render unnecessary the analysis of *International Custom Products*, which explained that a notice of action subject to § 1625(c)(1) resulted from R&R's considered deliberations and explicitly applied the HTSUS to all pending and future entries of specified merchandise. 748 F.3d at 1187–89. Per Under the Weather's view, the entire opinion would be dicta.

   Under the Weather's interpretation, however, is wrong. The statute and the caselaw interpreting it provide that only R&R's determinations that interpret and apply the law to future entries qualify for § 1625(c)(1)'s protections. It accordingly is irrelevant whether it was "reasonable" for Under the Weather to rely on this protest approval when entering merchandise in the future, or whether this protest approval was in some way unique (though it was not). *See* Resp. Br. at 8, 10, 21–22. Because the approval interpreted nothing, contained no classification directive for future entries, and is not alleged to have been the culmination of R&R's considered deliberations, the approval was not an "interpretive ruling or decision" that had to be revoked under § 1625(c)(1). Count II of the complaint therefore fails to plausibly state a claim.

12

## **CONCLUSION**

For these reasons, the Court should dismiss Count II of Under the Weather's complaint.

                    Respectfully submitted,

                    BRIAN M. BOYNTON
                    Principal Deputy Assistant Attorney General

                    PATRICIA M. McCARTHY
                    Director

                    /s/ Justin R. Miller
                    JUSTIN R. MILLER
                    Attorney-In-Charge
                    International Trade Field Office

|  |  |
|---|---|
| | /s/ Luke Mathers |
| *Of Counsel*: | LUKE MATHERS |
| Yelena Slepak | Trial Attorney |
| Emma Tiner | Department of Justice, Civil Division |
| Office of the Assistant Chief Counsel | Commercial Litigation Branch |
| International Trade Litigation | 26 Federal Plaza – Suite 346 |
| U.S. Customs and Border Protection | New York, New York 10278 |
| | (212) 264-9236 |
| Dated: November 16, 2023 | *Attorneys for Defendant* |

UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: HON. TIMOTHY M. REIF, JUDGE

| | |
|---|---|
| UNDER THE WEATHER, LLC, | : |
| Plaintiff, | : |
| v. | : Court No. 21-00211 |
| UNITED STATES, | : |
| Defendant. | : |

**CERTIFICATE OF COMPLIANCE**

    I, Luke Mathers, an attorney in the Office of the Assistant Attorney General, Civil Division, Commercial Litigation Branch, International Trade Field Office, who is responsible for the Government's reply in support of its partial motion to dismiss, relying upon the word count feature of the word processing program used to prepare the reply, certify that this reply complies with the word count limitation under the Court's chambers procedures, and contains 3,730 words.

                                       /s/ Luke Mathers
                                       LUKE MATHERS