Slip Op. 24-99

## UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |
|---|---|
| **UNDER THE WEATHER, LLC,**<br><br>　　　　　　　Plaintiff,<br><br>v.<br><br>**UNITED STATES,**<br><br>　　　　　　　Defendant. | Before: Timothy M. Reif, Judge<br><br>Court No. 21-00211 |

### OPINION

[Granting defendant's partial motion to dismiss for failure to state a claim.]

Dated: September 5, 2024

<u>Alena Augusta Eckhardt</u> and <u>Heather L. Jacobson</u>, Nakachi, Eckhardt & Jacobson, P.C., of Seattle, WA, argued for plaintiff Under the Weather, LLC.

<u>Luke Mathers</u>, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of New York, N.Y., argued for defendant United States.  With him on the brief were <u>Brian M. Boynton</u>, Principal Deputy Assistant Attorney General, and <u>Patricia M. McCarthy</u>, Director.  Of counsel on the brief were <u>Yelena Slepak</u> and <u>Emma Tiner</u>, Office of the Assistant Chief Counsel, International Trade Litigation, U.S. Customs and Border Protection.

　　　　Reif, Judge:  Before the court is the partial motion to dismiss of the United States ("defendant").  Plaintiff Under the Weather, LLC ("plaintiff") brought the instant action to contest the denial of administrative protest 2704-20-127807 ("'807 Protest").  Pl.'s Compl. ("Compl.") ¶ 1, ECF No. 17.  In count II of plaintiff's complaint, plaintiff asserts that a prior protest approval of U.S. Customs and Border Protection ("Customs") constituted a "prior decision" and therefore required notice and comment procedures to be modified or revoked.  <em>Id.</em> ¶¶ 40-41 (citing 19 U.S.C. § 1625(c)).  Because, plaintiff

maintains, the "protest review decision" on which the denial of the '807 Protest was based "effectively revoked" the previous protest approval "without following the notice and comment requirements" of § 1625(c), plaintiff contends that the protest review decision is void and without legal effect.  *Id.*  Defendant has filed a partial motion to dismiss, arguing that the prior protest approval to which plaintiff points was not entitled to the procedural protections of § 1625(c).  Def.'s Mot. to Dismiss ("Def. Br.") at 6, ECF No. 22.  Defendant argues, therefore, that as to count II plaintiff has failed to state a claim upon which relief may be granted.  *Id.*; *see* USCIT R. 12(b)(6).

For the reasons discussed below, the court grants defendant's partial motion to dismiss.

## BACKGROUND

Plaintiff imports see-through pop-up tent "pods."  Compl. ¶ 6; Pl.'s Ex. 2 ("HQ H311492"), at 1-2; Def. Br. at 2.  From 2010, when plaintiff began importing the pods, until September 2018, plaintiff imported its pods duty free as "backpacking tents" under the tariff subheading 6306.22.1000, HTSUS.[1]  Compl. ¶ 9.

On September 5, 2018, Customs issued a CF-29 Notice of Action Taken, in which Customs disagreed with plaintiff's classification of 12 of its entries and "rate-advanced"[2]

---

[1] In entering its pods as "backpacking tents," plaintiff relied on Treasury Decision 86-163, which was issued in 1986 and created guidelines for classifying tents, including backpacking tents, under the Harmonized Tariff Schedule of the United States ("HTSUS").  Def. Br. at 2.

[2] An entry is rate-advanced "when it is 'liquidate[d] at a higher rate' than the rate associated with the claimed classification."  *United States v. Sterling Footwear, Inc.*, 41 CIT __, __ n.11, 279 F. Supp. 3d 1113, 1122 n.11 (2017) (alteration in original) (quoting *United States v. Horizon Prods. Int'l, Inc.*, 39 CIT __, __, 82 F. Supp. 3d 1350, 1354 (2015)).

the entries as "other" tents under subheading 6306.22.9030, HTSUS, which carried a duty of 8.8 percent.  *Id.* ¶ 10; Def. Br. at 2-3.  Then, on April 9, 2019, plaintiff filed protest 2704-19-102919 ("'919 Protest"), contesting Customs' classification of plaintiff's 12 entries.  Compl. ¶ 11.  In that protest, plaintiff argued that its pods are classifiable correctly as "backpacking tents" under subheading 6306.22.1000, HTSUS.  *Id.* The '919 Protest was processed by the Center of Excellence and Expertise for Apparel, Footwear & Textiles (the "Center").  *Id.* ¶ 15; Def. Br. at 3.  On June 13, 2019, a supervisory import specialist ("specialist") at the Center requested from plaintiff entry packets for the protested entries, which plaintiff provided the following day.  Compl. ¶ 12.  Then, on June 20, 2019, the specialist requested "additional information and documentation in order to identify the specific tent models at issue" and "any literature" showing that plaintiff's pods were "in fact backpacking tents."  *Id.* ¶ 13; Def. Br. at 3-4. On July 22, 2019, plaintiff responded with a letter and documentation "providing the requested information for all entries."  Compl. ¶ 13.

On October 10, 2019, Customs approved the '919 Protest.[3]  *Id.* ¶ 14.  The

Customs decision approving plaintiff's protest consisted of only two lines[4]:

> Decision       Approved
> Comments       Protest has been approved based upon received documents.

Pl.'s Ex. 1 ("'919 Protest Approval").

After the approval of the '919 Protest, plaintiff resumed entering its pods duty free

as backpacking tents and filed for "Post Summary Corrections"[5] of pods entered while

the '919 Protest was pending.  Compl. ¶ 16.

---

[3] Prior to Customs' approval of the '919 Protest, plaintiff applied for further review. Compl. ¶ 15.  An "application for further review" allows an importer to request that Customs' Headquarters — meaning Regulations & Rulings ("R&R") — review a protest "in lieu of review by the Center director."  *See* 19 C.F.R. §§ 174.23, 174.24, 174.25, 174.26, 177.1(d)(6) (stating that "Headquarters Office" refers to "Regulations and Rulings"), 177.2(b)(2)(ii)(B) (stating that "[o]nly the Headquarters Office will prepare final decisions under . . . § 174.23 (Further Review of Protests)"); *see also* 19 U.S.C. § 1515(a).  Customs "will publish" the ensuing "protest review decision . . . in the Customs Bulletin or otherwise make [the protest review decision] available for public inspection." 19 C.F.R. § 174.32; *see also* 19 U.S.C. § 1625(a).  However, the Center director may still conduct "a preliminary examination . . . for the purpose of determining whether the protest may be allowed in full."  19 C.F.R. § 174.23.  If the Center director "is satisfied that the claim is valid, he shall allow the protest."  *Id.* § 174.26(a).  In the instant case, no further review of the '919 Protest occurred because the Center director allowed the protest.  Compl. ¶¶ 14-15; Def. Br. at 5; *see also* 19 C.F.R. § 174.26(a).

[4] The statute and Customs' regulations require that Customs provide "reasons" when Customs denies a protest but not when Customs allows a protest.  *See* 19 U.S.C. § 1515(a); 19 C.F.R. §§ 174.29, 174.30(a).  When Customs allows a protest, Customs need only "refund any duties . . . found to have been collected in excess[.]"  19 C.F.R. § 174.29.

[5] A Post Summary Correction allows an importer "to electronically correct entry summary data presented to and accepted by [Customs]."  *Post Summary Corrections*, U.S. Customs and Border Prot. (last modified May 15, 2024), https://www.cbp.gov/trade/programs-administration/entry-summary/post-summary-correction.

On November 19, 2019, however, an import specialist once again requested additional information from plaintiff with respect to entry WUG-0188371-8, which was a subsequent entry of pods of the same models reviewed in the '919 Protest. *Id.* ¶ 17.  In an email response, counsel for plaintiff directed Customs to its prior decision in Protest '919. *Id.* ¶ 18.

On December 17, 2019, plaintiff filed Protest 2704-19-107436 ("'436 Protest"). *Id.* ¶ 21.  The '436 Protest concerned eight entries of models of pods identical to the entries in the '919 Protest.  *Id.*  Plaintiff did not apply for further review of the '436 Protest "on the understanding that the Protest was merely an administrative vehicle to bring entries into conformity with CBP's decision in [the '919 Protest]."  *Id.* ¶ 22. On January 24, 2020, Customs issued a CF-29 Notice of Proposed Action with respect to entry WUG-0188371-8 and 21 separate entries of the pods, including 15 entries for which plaintiff had filed Post Summary Corrections.  *Id.* ¶ 19.  In that notice, Customs stated its position that the subject pods were classifiable under subheading 6306.22.9030, HTSUS.  *Id.*

In a conference call of March 20, 2020, with specialists from the Center, the specialists informed counsel for plaintiff that the Center had received guidance from a National Import Specialist that the subject pods were classifiable under subheading 6306.22.9030, HTSUS.  *Id.* ¶ 20.  The specialists explained that Customs would classify

plaintiff's pods in accordance with that guidance and without regard to the decision in the '919 Protest.[6]  *Id.*

In a subsequent conference call, a Supervisory Liquidation Specialist from the Center of Excellence and Expertise for Base Metals recommended that plaintiff file a new protest with application for further review for the seven entries subject to the '436 Protest that were still eligible for amendment.  *Id.* ¶ 24.

On May 19, 2020, counsel for plaintiff filed the '807 Protest, which protested seven of the eight entries included in the '436 Protest.  *Id.* ¶ 25.  Plaintiff then withdrew the '436 Protest and applied for further review of the '807 Protest.  *Id.*

On October 30, 2020, Customs issued HQ H311492.  *Id.* ¶ 29.  HQ H311492 was in response to plaintiff's application for further review of the '807 Protest and stated that (1) the subject merchandise was classified properly under subheading 6306.22.9030, HTSUS; and (2) 19 U.S.C. § 1625(c) did not apply because Customs' approval of the '919 Protest was not a "decision" under that subsection.  *Id.*  Customs then denied the '807 Protest.  *Id.*; *see also* HQ 311492.

Plaintiff then sought review in this court of Customs' protest review decision HQ H311492, alleging that "it effectively revoked the prior decision of [the '919 Protest] contrary to law without following the notice and comment requirements of 19 U.S.C. § 1625(c)."  *Id.* ¶ 41.

---

[6] Also in the conference call of March 20, 2020, the specialists stated that the Center would deny the '436 Protest, as Customs had determined that the subject merchandise was classifiable under subheading 6306.22.9030, HTSUS.  Compl. ¶ 23.  In response, counsel for plaintiff asked whether it would be possible to amend the '436 Protest to apply for further review.  *Id.*  However, during that call, parties learned that one of the entries subject to the '436 Protest was more than 180 days past liquidation and therefore no longer eligible for further review.  *Id.*

On July 25, 2024, the court held oral argument.  *See* Oral Arg. Tr., ECF No. 31.

## JURISDICTION AND STANDARD OF REVIEW

The Court exercises exclusive jurisdiction over all civil actions commenced under section 515 of the Tariff Act of 1930, 19 U.S.C. § 1515, to contest protests denied by Customs, 28 U.S.C. § 1581(a), and reviews such actions de novo.  28 U.S.C. § 2640(a)(1) ("The Court of International Trade shall make its determinations upon the basis of the record made before the court ....... ").

In a USCIT Rule 12(b)(6) motion for failure to state a claim, "any factual allegations in the complaint are assumed to be true and all inferences are drawn in favor of the plaintiff."  *Env't One Corp. v. United States*, 47 CIT __, __, 627 F. Supp. 3d 1349, 1355 (2023) (quoting *Amoco Oil Co. v. United States*, 234 F.3d 1374, 1376 (Fed. Cir. 2000)); *see generally* USCIT R. 12(b)(6).

In deciding a Rule 12(b)(6) motion, the court may consider documents "incorporated by reference or integral to the claim, items subject to judicial notice, [and] matters of public record."  *A & D Auto Sales, Inc. v. United States*, 748 F.3d 1142, 1147 (Fed. Cir. 2019) (alterations in original) (quoting 5B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1357 (3d ed. 2004)).

"A court may properly dismiss a claim pursuant to [USCIT] Rule 12(b)(6) only if Plaintiffs' allegations of fact are not 'enough to raise a right to relief above the speculative level.'"  *VoestAlpine USA Corp. v. United States*, 46 CIT __, __, 578 F. Supp. 3d 1263, 1276 (2022) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  To survive a motion to dismiss, plaintiff's complaint must contain sufficient

factual material to "state a claim to relief that is plausible on its face."[7]  *Twombly*, 550

U.S. at 570.

## DISCUSSION

### I.   Interpretation of 19 U.S.C. § 1625(c)

Parties disagree as to the scope of "prior interpretive ruling or decision" in §

1625(c)(1) in relation to the phrase "interpretive ruling . . . or protest review decision" in

§ 1625(a).  Therefore, the court considers first the correct interpretation of "prior

interpretative ruling or decision" in 19 U.S.C. § 1625(c)(1).

### A.   Legal framework

19 U.S.C. § 1625 is titled "Interpretive rulings and decisions; public information."

19 U.S.C. § 1625(a) determines when Customs is required to publish in the Customs

Bulletin or otherwise make available for public inspection certain rulings and decisions:

> Within 90 days after the date of issuance of any interpretive ruling (including
> any ruling letter, or internal advice memorandum) or protest review decision
> under this chapter with respect to any customs transaction, the Secretary
> shall have such ruling or decision published in the Customs Bulletin or shall
> otherwise make such ruling or decision available for public inspection.

Section 1625(c) sets out when Customs is required to provide notice and invite

public comment:

> A proposed interpretive ruling or decision which would—

---

[7] In its briefing, plaintiff asserts that under USCIT Rule 12(b)(6), "[d]ismissal . . . is
appropriate only where 'it appears beyond doubt that no set of facts can be proven that
would entitle the plaintiff to relief.'"  Pl.'s Resp. Opp'n Def.'s Mot. to Dismiss ("Pl. Br.") at
2, ECF No. 23 (quoting *Conley v. Gibson*, 335 U.S. 41, 48 (1957)).  However, in
*Twombly*, 550 U.S. at 562-63, the Supreme Court abrogated *Conley's* "no set of facts"
pleading standard.  *Id.* ("[T]his famous observation has earned its retirement.  The
phrase is best forgotten as an incomplete, negative gloss on an accepted pleading
standard.").  To survive a USCIT Rule 12(b)(6) motion to dismiss, plaintiff is required to
plead "enough facts to state a claim to relief that is plausible on its face."  *Id.* at 570.

(1) modify (other than to correct a clerical error) or revoke a prior interpretive ruling or decision which has been in effect for at least 60 days; or

(2) have the effect of modifying the treatment previously accorded by the Customs Service to substantially identical transactions;

shall be published in the Customs Bulletin. The Secretary shall give interested parties an opportunity to submit, during not less than the 30-day period after the date of such publication, comments on the correctness of the proposed ruling or decision. After consideration of any comments received, the Secretary shall publish a final ruling or decision in the Customs Bulletin within 30 days after the closing of the comment period. The final ruling or decision shall become effective 60 days after the date of its publication.

In 19 C.F.R. §§ 177.10(a) and 177.12(a)-(b), Customs elaborates on the meaning of § 1625(a) and (c). In § 177.10(a), Customs states that it shall publish or otherwise make available for public inspection within 90 days "any interpretive decision," which Customs defines to "include[] any ruling letter, internal advice memorandum, or protest review decision." Meanwhile, in § 177.12(a)-(b), Customs discusses "[m]odification or revocation of interpretive rulings, protest review decisions, and previous treatment of substantially identical transactions":

(a) General. An interpretive ruling, which includes an internal advice decision . . . or a holding or principle covered by a protest review decision . . . if found to be in error or not in accord with the current views of Customs, may be modified or revoked by an interpretive ruling issued under this section.      A modification or revocation under this section must be carried out in accordance with the notice procedures set forth in paragraph (b) . . . .

(b) Interpretive rulings or protest review decisions. Customs may modify or revoke an interpretive ruling or holding or principle covered by a protest review decision.      However, when Customs contemplates the issuance of an interpretive ruling that would modify or revoke an interpretive ruling or holding or principle covered by a protest review decision which has been in effect for 60 or more calendar days, [the notice and comment requirements

of § 177.12(b)(1)-(2)] will apply.

**B.    Analysis**

The court addresses first parties' disagreement as to the scope of § 1625(c) and whether "prior interpretive ruling or decision" in § 1625(c) is coextensive with "interpretive ruling (including any ruling letter, or internal advice memorandum) or protest review decision" in § 1625(a).

Plaintiff begins by noting that in § 1625(c) Congress used different language than in § 1625(a).  Pl. Br. at 3.  Specifically, § 1625(a) requires that "any interpretive ruling (including any ruling letter, or internal advice memorandum) or protest review decision" be published or otherwise made available within 90 days after the issuance of the interpretive ruling or protest review decision.

Meanwhile, plaintiff observes, § 1625(c)(1) requires Customs to publish notice and invite public comment on "[a] proposed interpretive ruling or decision which would . . . modify . . . or revoke a *prior interpretive ruling or decision*."  19 U.S.C. § 1625(c)(1) (emphasis supplied); Pl. Br. at 5.  Plaintiff asserts that the phrase "prior interpretive ruling or decision" in § 1625(c) carries a different meaning — and a broader scope — than "interpretive ruling . . . or protest review decision" in § 1625(a).  Pl. Br. at 3-4.  According to plaintiff, "the use of *different* language with regard to decisions — 'protest review decision' in § 1625(a) versus merely 'decision' in § 1625(c) — must be understood to have different meanings."  *Id.* at 4 (citing *Russello v. United States*, 464 U.S. 16, 23 (1983)).  Plaintiff argues on this basis that "the universe of items that must be published prior to issuance per § 1625(a) must differ in some way from the universe of items subject to notice and comment proceedings prior to modification or revocation

per § 1625(c)." *Id.*  So, plaintiff cites two decisions of this Court and concludes that

there are "decisions" that "do not require publication upon issuance but do require

notice and comment procedures before they may be modified or revoked." *Id.* at 4-5

(citing *Am. Fiber & Finishing, Inc. v. United States*, 39 CIT __, __, 121 F. Supp. 3d 1273,

1279 (2015); *Kahrs Int'l, Inc. v. United States*, 33 CIT 1316, 1353, 645 F. Supp. 2d 1251,

1285 (2009)).

Defendant responds that "§ 1625(c)(1)'s phrase 'prior interpretive ruling or

decision' refers back to § 1625(a)'s longer phrase 'interpretive ruling (including any

ruling letter, or internal advice memorandum) or protest review decision.'" Def.'s Reply

Supp. Mot. to Dismiss ("Def. Reply Br.") at 2, ECF No. 24 (citing *Cal. Indus. Prods., Inc.*

*v. United States*, 436 F.3d 1341, 1351 (Fed. Cir. 2006)).  According to defendant,

therefore, the two phrases "should be construed consistently." *Id.*  Defendant maintains

that any "prior interpretive ruling or decision" that is "subject to revocation" under §

1625(c)(1) was required also to be published or otherwise made available for public

inspection when originally issued under § 1625(a). *Id.*

The court concludes that "a prior interpretive ruling or decision" in § 1625(c)(1)

refers back to "interpretive ruling . . . or protest review decision" in § 1625(a).  Therefore,

the same universe of "decisions" subject to notice and comment upon revocation or

modification was required also to be published or otherwise made available under §

1625(a).  There are no "decisions" within the scope of § 1625 that require notice and

comment to be modified or revoked but were not subject to the public inspection

requirement upon issuance.

The statute's text is clear that "prior interpretive ruling or decision" in subsection (c)(1) is a reference to — and is shorthand for — "interpretive ruling . . . or protest review decision" in subsection (a).  Indeed, this is evident in both the provision's heading and in the texts of subsections (a) and (c).[8]  The heading of § 1625 refers to "[i]nterpretive rulings and decisions" — an indication that Congress wanted the phrase to carry the same meaning under both (a) and (c).  Moreover, Congress in subsections (a) and (c) referred to "ruling or decision" repeatedly.  For example:

> Within 90 days after the date of issuance of any interpretive ruling (including any ruling letter, or internal advice memorandum) or protest review decision under this chapter . . . , the Secretary shall have such *ruling or decision* published in the Customs Bulletin . . . .

---

[8] The previous version of § 1625 concerned only "[p]ublication of decisions" and stated:

> Within 120 days after issuing any precedential decision (including any ruling letter, internal advice memorandum, or protest review decision) under this Act with respect to any customs transaction, the Secretary shall have such decision published in the Customs Bulletin or shall otherwise make such decision available for public inspection.

Customs Procedural Reform and Simplification Act of 1978 ("the 1978 Act"), Pub. L. No. 95-410, § 112, 92. Stat. 888, 898.

Although the previous version of § 1625 did not contain a notice and comment requirement for a prior precedential decision to be revoked, the legislative history of that act indicated that publication upon revocation of a previously published decision was Customs policy: "[I]t will be the policy of the Customs service to publish in the Customs Bulletin rulings of general interest . . . including rulings that supersede, revoke, modify, or amend previously published rulings, or that affect multiple importers of the same merchandise, or merchandise imported through several ports."  H.R. Rep. No. 95-621, at 19 (1977).  The Customs Modernization Act amended § 1625 to its current version and added the notice and comment procedures to modify or revoke a "prior interpretive ruling or decision."  *See* Pub. L. No. 103-182, § 623, 107 Stat. 2057, 2186 (1993).  The phrase "interpretive ruling or decision" replaced "precedential decision," although the newly amended § 1625 retained ruling letters, internal advice memoranda and protest review decisions as examples.

19 U.S.C. § 1625(a) (emphasis supplied); *see also id*. § 1625(c) (referring to "proposed

*ruling or decision*" and "final *ruling or decision*") (emphases supplied).

    The identical shorthand reference throughout both subsections to "ruling or

decision" — and not, e.g., "such ruling or protest review decision" in § 1625(a) — is a

further indication that "interpretive ruling or decision" used in § 1625(c) carries the same

meaning as the full phrase used to begin subsection (a).  Such an interpretation is in

keeping with the "well-settled" rule of statutory interpretation that "words appearing in a

statute should be read consistently: a particular word appearing multiple times in a

statutory provision should be given the same reading, unless there is a clear

Congressional intent to the contrary."  *Timex V.I., Inc. v. United States*, 157 F.3d 879,

884 (Fed. Cir. 1998).  Moreover, "[s]tatutes should be interpreted 'as a symmetrical and

coherent regulatory scheme.'"  *Mellouli v. Lynch*, 575 U.S. 798, 809-10 (2015) (quoting

*FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 133 (2000)).  On this point,

plaintiff has offered no explanation to support plaintiff's assertion that Congress

intended for the revocation of a Customs "decision" to require notice and comment

under subsection (c)(1) even though that same decision was not subject to the public

inspection requirement of subsection (a).

    Plaintiff maintains that decisions of this Court and the U.S. Court of Appeals for

the Federal Circuit ("Federal Circuit") support plaintiff's interpretation.  Pl. Br. at 4-5 (first

quoting *Am. Fiber & Finishing*, 39 CIT at __, 121 F. Supp. 3d at 1279 (stating that

"decision" in § 1625(c) includes, "but is not limited to, a protest review decision"); then

quoting *Kahrs*, 33 CIT at 1353, 645 F. Supp. 2d at 1285 ("[A] 'protest review decision' is

to be included among the larger category of otherwise generic Customs' 'decision[s].'"));

*see also Cal. Indus. Prods.*, 436 F.3d at 1351 ("In short, 'decision' in the phrase 'ruling

or decision' in 19 U.S.C. § 1625(c), includes a 'protest review decision.'").

      The cases on which plaintiff relies hold only that "decision" in § 1625(c) "includes"

but is not limited to protest review decisions, which Customs' regulations and decisions

of this Court indicate is true also of § 1625(a).  *See* 19 C.F.R. § 177.10(a) ("[A]n

interpretive decision *includes* any ruling letter, internal advice memorandum, or protest

review decision.") (emphasis supplied); *S. Shrimp All. v. United States*, 33 CIT 560, 582,

617 F. Supp. 2d 1334, 1355 (2009).  Plaintiff has pointed to no decisions in which this

Court or the Federal Circuit held that subsection (c) carried a different scope than

subsection (a).  Instead, the decisions that plaintiff cites have stated that the separate

subsections should be construed consistently.

      For example, in *California Industrial Products*, the Federal Circuit considered

whether Customs issued an "interpretive ruling or decision" under § 1625(c) that

"modif[ied] the treatment previously accorded by the Customs Service to substantially

identical transactions" under § 1625(c)(2).[9]  436 F.3d at 1349-50.  There, plaintiff filed a

drawback claim, and in response, Customs issued a Headquarters Ruling letter denying

plaintiff's claim.  *Id.* at 1346-47.  Then, plaintiff filed a request for further review of

---

[9] Under Customs' regulations, a "treatment previously accorded" under § 1625(c)(2) requires that there is evidence that (1) there was an "actual determination by a Customs officer regarding the facts and issues involved in the claimed treatment"; (2) the Customs officer making the determination "was responsible for the subject matter on which the determination was made"; and (3) "[o]ver a 2-year period immediately preceding the claim of treatment, Customs consistently applied that determination on a national basis as reflected in liquidations of entries . . . with respect to all or substantially all of that person's Customs transactions involving materially identical facts and issues." 19 C.F.R. § 177.12(c)(1)(i).

Customs' denial of plaintiff's drawback claim. *Id.* at 1347.  In response, Customs issued "a protest review decision," which relied on Customs' previous Headquarters Ruling and affirmed Customs' denial of plaintiff's drawback claim. *Id.*  Customs argued before the court that none of Customs' actions in that case constituted an "interpretive ruling or decision" under § 1625(c). *Id.* at 1349.  But the Federal Circuit read § 1625(c) in conjunction with § 1625(a) and disagreed with Customs' interpretation:

> Thus, [in § 1625(a)] "interpretive ruling" is expressly defined as "including any ruling letter, or internal advice memorandum."  At the same time, two lines later, the text refers back to the previously noted "interpretive ruling . . . or protest review decision" as "such ruling or decision."  "[I]nterpretive ruling . . . or protest review decision" and the later shorthand reference to that phrase ("such ruling or decision") should be construed consistently in section 1625.  In short, "decision" in the phrase "ruling or decision" in 19 U.S.C. § 1625(c), includes a "protest review decision."

*Id.* at 1351 (internal citations omitted).

Because plaintiff was appealing from a Customs "protest review decision" — and because "interpretive ruling . . . or protest review decision" and "interpretive ruling or decision" should be "construed consistently" — Customs was required to follow the notice and comment procedures of subsection (c).[10]  *Id.*; *see also Int'l Custom Prods. v. United States*, 748 F.3d 1182, 1188 (Fed. Cir. 2014) ("Although *California Industrial Products* shows that an interpretive ruling *includes* ruling letters and internal advice memoranda, such documents are exemplary, not exhaustive.").  In fact, the Federal Circuit's instruction that the phrases "should be construed consistently" entails that the requirements of subsection (c) are coextensive with the requirements of subsection (a).

---

[10] The Federal Circuit concluded also that the Headquarters Ruling on which the denial and subsequent protest review decision were based was an "interpretive ruling." *Cal. Indus. Prods.*, 436 F.3d at 1351.  So, Customs was required to follow notice and comment procedures for two reasons in that case. *Id.*

Then, in *Kahrs*, this Court addressed whether certain denied protests and CF-29s (notices of action taken) were "prior interpretive ruling[s] or decision[s]" under § 1625(c)(1). 33 CIT at 1352-53, 645 F. Supp. 2d at 1284-86. The government in *Kahrs* argued that § 1625(c) "covers *only* 'interpretive rulings' and 'protest review decisions.'" *Id.* at 1352-53, 645 F. Supp. 2d at 1285. However, the Court cited the Federal Circuit's statement in *California Industrial Products* that "the terms of § 1625(c) should [be] read consistently with the terms of § 1625(a)." *Id.* at 1352, 645 F. Supp. 2d at 1284. The Court concluded:

> [A] "protest review decision" is to be included among the larger category of otherwise generic Customs' [sic] "decision[s]."

*Id.* at 1353, 645 F. Supp. 2d at 1285 (second alteration in original) (citing *Int'l Custom Prods., Inc. v. United States*, 32 CIT 302, 309, 549 F. Supp. 2d 1384, 1393 (2008)).

The Court concluded, as a result, that "the text of *§ 1625* covers interpretive rulings, ruling letters, internal advice memoranda, protest review decisions, or decisions that are the functional equivalent of interpretive rulings or decisions." *Id.* at 1353, 549 F. Supp. 2d at 1285 (emphasis supplied) (citing 19 U.S.C. § 1625(c); 19 C.F.R. § 177.12). In applying that interpretation to the facts of that case, the Court held that two "denied protests" were not "within the ambit of the covered rulings or decisions of § 1625." *Id.*; *see infra* Section II.B.2.

Therefore, the cases to which plaintiff cites do not support plaintiff's position that § 1625(c) covers a wider array of Customs actions than subsection (a). Instead, the cases support the position that subsections (a) and (c) should be construed consistently, such that the requirements of § 1625(a) and (c) are applied to the same set of Customs determinations.

In sum, the court concludes that "interpretive ruling or decision" under § 1625(c) refers back to and mirrors the scope of "interpretive ruling (including any ruling letter, or internal advice memorandum) or protest review decision" in § 1625(a). As a result, only interpretive rulings, protest review decisions or their "functional equivalent[s]" are subject to the procedural requirements of § 1625(c)(1).

## II.    Whether plaintiff has stated a claim upon which relief can be granted

Plaintiff asserts that the '919 Protest approval was the "'functional equivalent' of the exemplar interpretive rulings and decisions enumerated in the statute." Compl. ¶ 40. The court turns to this question next.

### A.    Legal framework

19 U.S.C. § 1625(c)(1) requires that Customs publish notice of and give interested parties an opportunity to respond to "[a] proposed interpretive ruling or decision which would . . . modify . . . or revoke a prior interpretive ruling or decision" in effect for at least 60 days. Whether a determination is subject to the requirements of § 1625 "depends on its substance, not its form." *Am. Fiber & Finishing*, 39 CIT at __, 121 F. Supp. 3d at 1280 (citing *Int'l Custom Prods.*, 748 F.3d at 1187-88).

The legislative history of § 1625 states: "[I]mporters have a right to be informed about customs rules and regulations, as well as interpretive rulings, and to expect certainty that the Customs Service will not unilaterally change the rules without providing importers proper notice and an opportunity for comment." S. Rep. No. 103-189, at 64 (1993)); *see also* H.R. Rep. No. 103-361, pt. 1, at 124 (1993), *reprinted in* 1993 U.S.C.C.A.N. 2552, 2674 (stating that § 1625 "will provide assurances of transparency concerning Customs rulings and policy directives"); *Int'l Custom Prods.*,

748 F.3d at 1187 (citing *Precision Specialty Metals, Inc. v. United States*, 25 CIT 1375,

1391, 182 F. Supp. 2d 1314, 1328 (2001)).

      This Court has held that "the text of § 1625 covers interpretive rulings, ruling

letters, internal advice memoranda, protest review decisions, *or decisions that are the*

*functional equivalent of interpretive rulings or decisions*."  *Kahrs*, 33 CIT at 1353, 645 F.

Supp. 2d at 1285 (emphasis supplied).  In determining whether a Customs

determination is subject to § 1625, the Federal Circuit has considered whether the

determination in question "resulted from the considered deliberations of [R&R]."[11] *Int'l*

*Custom Prods.*, 748 F.3d at 1188.

      Courts have considered also whether the determination in question had

prospective effect.  *See id.* (holding that notice of action was subject to § 1625(c)

because it applied the HTSUS "to the specific facts of all pending and future white

sauce entries"); *see also Kahrs*, 33 CIT at 1353, 645 F. Supp. 2d at 1285 (stating that

Customs' determinations were not subject to § 1625(c) because they "[did] not require

that [merchandise] be classified henceforth under a particular tariff heading").  This

Court has also stated that a Customs determination is subject to § 1625 "'if it 'interprets

and applies the provisions of the Customs and related laws to a specific set of facts.'"

*Am. Fiber & Finishing*, 39 CIT at __, 121 F. Supp. 3d at 1280 (footnotes omitted).

**B.    Analysis**

      To succeed on its claim that Customs violated the requirements of § 1625(c),

plaintiff is required to establish that (1) a "proposed interpretive ruling or decision" (2)

---

[11] Customs regulations provide that the term "'Headquarters Office,' as used [therein],
means the Regulations and Rulings, Office of International Trade at Headquarters, U.S.
Customs and Border Protection, Washington, DC."  19 C.F.R. § 177.1(c)(6).

"modified or revoked" (3) a "prior interpretive ruling or decision" (4) without first

completing the notice and comment procedures of § 1625(c). Parties do not dispute

that HQ H311492 qualifies as a "proposed interpretive ruling or decision" and that, if the

approval of the '919 Protest was "a prior interpretive ruling or decision," HQ H311492

effectively revoked the approval by classifying identical merchandise differently.

However, parties dispute whether the approval of the '919 Protest qualifies as a "prior

interpretive ruling or decision."

　　　"[T]he text of § 1625 covers interpretive rulings, ruling letters, internal advice

memoranda, protest review decisions, or decisions that are the functional equivalent of

interpretive rulings or decisions." *Kahrs*, 33 CIT at 1353, 645 F. Supp. 2d at 1285.

Plaintiff does not contend that the approval of the '919 Protest was one of the listed

items in § 1625: an interpretive ruling, a ruling letter, an internal advice memorandum or

a protest review decision. Instead, plaintiff argues that the protest approval was the

"functional equivalent" of those exemplar interpretive rulings and decisions. Compl. ¶

40.

　　　The court concludes for three reasons that the protest approval was not the

"functional equivalent" of an interpretive ruling or decision under § 1625.

### 1.　Whether the '919 Protest was the result of "considered deliberations"

　　　The court addresses first whether the '919 Protest resulted from "considered

deliberations." Parties agree that a Customs determination may qualify as an

"interpretive ruling or decision" if it resulted from the considered deliberations of

Customs. *Int'l Custom Prods.*, 748 F.3d at 1188. However, parties disagree as to

whether that requirement was satisfied here.

Defendant contends that plaintiff has failed to "plausibly allege" that the '919

Protest was the result of considered deliberations. Def. Reply Br. at 9-10. According to

defendant, only R&R can conduct the "considered deliberations" necessary to render a

Customs determination subject to § 1625(c). *Id.* Because the Center made the

determination in the instant case — and because plaintiff has not alleged any

involvement of R&R — defendant argues that plaintiff has failed to state a plausible

claim for which relief can be granted. *Id.* (citing *Int'l Custom Prods.*, 748 F.3d at 1188).

Plaintiff responds that it has plausibly alleged that the '919 Protest was the result

of considered deliberations because plaintiff included in its complaint: (1) plaintiff's

arguments before Customs; (2) Customs' two separate requests for additional

information; and (3) the statement in the protest approval that the protest "has been

approved based upon received documents." Pl. Br. at 18 (citing Compl. ¶¶ 11-14).

Plaintiff notes that it needed allege only "enough fact [sic] to raise a reasonable

expectation that discovery will reveal evidence," *id.* (quoting *Twombly*, 550 U.S. 545), a

standard that plaintiff insists it met in its complaint. As to R&R, plaintiff argues that the

involvement of R&R is a relevant fact — but not a necessary condition — in determining

whether a Customs decision was the result of considered deliberations. *Id.* at 20.

According to plaintiff, the facts alleged in the complaint "indicate that the documents and

classification arguments provided by [p]laintiff in its initial protest and in response to

[Customs'] supplemental requests were reviewed, considered, and formed the basis for

[Customs'] decision." *Id.* at 18.

The court concludes that plaintiff has failed to plausibly allege that the '919

Protest approval resulted from "considered deliberations" because plaintiff has not

alleged the deliberations of R&R in the approval. Instead, plaintiff has alleged that the approval of the '919 Protest involved only the Center.

To start, the statute and Customs' regulations establish that an "interpretive ruling or decision" under § 1625 requires the "considered deliberations" of R&R. Section 1625 does not define an "interpretive ruling or decision," but it does provide examples. The exemplar "interpretive rulings and decisions" in § 1625 are ruling letters, internal advice memoranda and protest review decisions. Only R&R has the authority to issue each of these examples.[12]  *See* 19 C.F.R. § 177.1(d)(1) ("A 'ruling' is a written statement issued by the Headquarters Office . . . ."); *id* § 177.12(a) (stating that "[a]n interpretive ruling . . . includes an internal advice decision . . . or a holding or principle covered by a protest review decision"); *id.* § 177.11(a) ("Advice or guidance as to the interpretation or proper application of the Customs and related laws . . . may be requested by Customs Service field offices *from the Headquarters Office .......*") (emphasis supplied); *id.* § 174.26(b)(1) (stating that a protest "for which an application for further review was filed" and which

---

[12] The legislative history of the 1978 Act is consistent with defendant's position that only decisions issued with the deliberations of R&R may be subject to the requirements of § 1625. In describing the "present law," the Senate report stated: "The Customs Service Office of Regulations and Rulings in Washington issues notices, letters, rulings, and written advice to customs officers and importers." S. Rep. No. 95-778, at 21. Likewise, the House report stated: "The Customs Service considers a 'ruling' to be a written statement issued by the Headquarters Office of Regulations and Rulings . . . that interprets and applies the provisions of the Customs and related laws to a specific set of facts. A ruling differs from an 'information letter,' which is a written statement issued by the Headquarters Office . . . ." H.R. Rep. No. 95-621, at 19. In the 1978 Act, Congress determined to "enact into law part of [Customs'] existing regulations," which would ensure that importers would be aware of "the Customs Service [sic] interpretation of the law." S. Rep. No. 95-778, at 22. This legislative history establishes that the Congress that enacted the original § 1625 — which set out the listed exemplars that the 1993 amendments retained — was concerned primarily with rulings and decisions promulgated by R&R.

the "Center director decides . . . should be denied in whole or in part" is "reviewed by the Commissioner of Customs or his designee"); *id.* § 177.2(b)(2)(ii)(B) (stating that "only the Headquarters Office will prepare . . . [protest review decisions]"); *Assistant Commissioner of Customs, Office of Regulations and Rulings, et al.: Performance of Functions*, 34 Fed. Reg. 8,208 (Dep't of Treasury May 27, 1969) (delegating "[d]ecisions relating to . . . classification" to the "Assistant Commissioner of Customs, Office of Regulations and Rulings," within "the headquarters office").  Therefore, plaintiff's position that a Center-level protest approval — issued without the deliberations of R&R — may be subject to the requirements of § 1625 is inconsistent with the statute and Customs' regulations.

In addition, decisions of the Federal Circuit support the conclusion that the deliberations of R&R are required to trigger the requirements of § 1625.  For example, in *International Custom Products*, 748 F.3d at 1188-89, the Federal Circuit addressed whether a "notice of action" could be an "interpretive ruling or decision" under § 1625(c).  In that case, the notice of action reclassified plaintiff's entries of white sauce, stating that "all . . . of [plaintiff's] pending entries . . . and all future entries, would be classified" under a different tariff subheading than Customs had previously classified the white sauce under a Ruling Letter issued six years earlier.  *Id.* at 1183-84.  Customs argued that notices of action "can never be an 'interpretive ruling or decision' and therefore cannot trigger the procedural protections of § 1625(c)."  *Id.* at 1188.

The Federal Circuit disagreed and affirmed the decision of the USCIT that held that the notice of action in that case qualified as an "interpretive ruling or decision" under subsection (c).  *Id.* at 1189.  Critically, the Federal Circuit observed that the notice

of action "resulted from the considered deliberations of [R&R], which determined that the Ruling Letter did not apply to the Entry." *Id.* at 1188 (citing *Int'l Custom Prods., Inc. v. United States*, 32 CIT at 309, 549 F. Supp. 2d at 1392 (describing Customs' "months-long deliberative process" resulting in the notice of action, which "represented the agency's formal position")).  And, contrary to plaintiff's position, the deliberations of R&R were core to the Federal Circuit's holding.  *See Int'l Custom Prods.*, 748 F.3d 1183 (noting that R&R "is responsible for reviewing and issuing ruling letters"), 1188 ("Although the Notice of Action was not issued by [R&R], it resulted from the considered deliberations of [R&R] ......."), 1189 (noting again that the notice of action "was issued after relevant [R&R] deliberation" and therefore "subject to § 1625(c)'s procedures").

By contrast, in the instant case plaintiff has alleged the involvement only of the Center.  *See generally* Compl.  Accordingly, the '919 Protest approval was not the result of "considered deliberations" of R&R, and for this reason was not a "prior interpretive ruling or decision" under § 1625(c)(1).

Moreover, excluding the approval of the '919 Protest from the requirements of § 1625(c) is consistent with the statutory scheme.  Under plaintiff's theory, every protest determination regarding the classification of merchandise would be subject to the requirements of § 1625(c).  Had Congress wanted to subject a typical protest approval or denial to the requirements of § 1625(c), Congress knew how to do so, as Congress referred to those precise decisions elsewhere in the Customs Modernization Act.  *See, e.g.*, Pub. L. No. 103-182, § 613(a), 107 Stat. 2057, 2174 (1993) (stating that "a protest against the decision to exclude.......merchandise which has not been allowed or denied in whole or in part [within 30 days] shall be treated as having been denied"); *see id.* at §

617, 107 Stat. 2057, 2180 (referencing separately a "protest" and then "an application

for further review"); *Nat'l Org. of Veterans' Advocs., Inc. v. Sec'y of Veterans Affs.*, 981

F.3d 1360, 1386 (Fed. Cir. 2020) (quoting *Animal Legal Def. Fund v. U.S. Dep't of Agric.*,

789 F.3d 1206, 1217 (11th Cir. 2015) ("Where Congress knows how to say something

but chooses not to, its silence is controlling.")).  Instead, Congress selected only certain

types of Customs rulings and decisions — each of which involves the participation of

R&R and therefore may be assumed to reflect Customs' official policy.  That Congress

elected not to include expressly in § 1625 a Center-level "allowed" or "denied" protest is

"powerful evidence," *id.* at 1385, that Congress did not intend for such determinations to

be governed by § 1625.

### 2.    Whether the '919 Protest had prospective effect

The court examines next whether the '919 Protest had prospective effect such

that plaintiff and the interested public were entitled "to expect certainty" that Customs

"w[ould] not unilaterally change" the classification "without providing . . . proper notice

and an opportunity for comment." *Int'l Custom Prods.*, 748 F.3d at 1187 (citing

*Precision Specialty Metals*, 25 CIT at 1391, 182 F. Supp. 2d at 1328).

Defendant argues that to qualify for the procedural protections of § 1625, the

determination in question is required to contain a "classification directive: a requirement

that all future entries of the same merchandise by the same importer be classified in a

particular way."  Def. Reply Br. at 10-11 (*comparing Int'l Custom Prods.*, 748 F.3d at

1187-88, *and Am. Fiber & Finishing*, 39 CIT at __ n.27, 121 F. Supp. 3d at 1280 n.27,

*with Kahrs*, 33 CIT at 1353, 645 F. Supp. 2d at 1285).  Because the '919 Protest

approval contained no such directive, defendant asserts that the protest could not have been a "prior interpretive ruling or decision" under § 1625(c)(1). *Id.*

Plaintiff responds with two points. First, plaintiff argues that the cases on which defendant relies do not establish a rule that the determination in question must state expressly that the decision applies to future entries. Pl. Br. at 13-14. On this point, plaintiff notes that the exemplar interpretive rulings and decisions in § 1625 often do not provide specifically for prospective application. *Id.* at 11. Second, plaintiff contends that Customs' approval of '919 Protest was "inherently applicable" to all future entries of plaintiff's tent pods, and, as such, no express classification directive was necessary. *Id.* at 10.

The entry-specific approval of the '919 Protest was not an "interpretive ruling or decision" subject to § 1625 also because the approval did not direct plaintiff that future imports of the subject merchandise be classified according to that approval.

The legislative history of the Customs Modernization Act, which added the procedural protections of subsection (c) to § 1625, made clear by utilizing repeatedly the words "rules," "regulations" and "rulings," that the notice and comment and transparency provisions of that section were to apply to rulings with prospective effect:

> [The Customs Modernization Act] implements the concept of "informed compliance," which is premised on the belief that importers have a right to be informed about customs rules and regulations, as well as interpretive rulings, and to expect certainty that the Customs Service will not unilaterally change the rules without providing importers proper notice and an opportunity for comment.

S. Rep. No. 103-189, at 64 (1993); *see also* H.R. Rep. No. 103-361, pt. 1, at 124 (1993) (stating that § 1625 "will provide assurances of transparency concerning Customs rulings and policy directives").

This legislative history reveals that § 1625(c)'s "notice and comment requirements are intended to ensure that the interested public has notice of a proposed change in Customs' policy and to allow the public to make comments on the appropriateness of the change and to modify any current practices that were based in reliance on Customs' earlier policy." *Sea-Land Serv., Inc. v. United States*, 239 F.3d 1366, 1373 (Fed. Cir. 2001). In enacting § 1625(c), Congress was concerned principally with the ability of the interested public to stay abreast of Customs regulations and policy with the potential for *prospective* application — not with entry-specific, Center-level protest approvals like that in the '919 Protest.

In addition, in deciding whether § 1625 applies, the Federal Circuit and this Court have considered whether a Customs determination *stated* that it would be applied prospectively. In *International Custom Products*, the government maintained that the notice of action at issue could not be subjected to § 1625 because the notice of action was "an 'entry-specific document' that is 'mailed only to the importer,' and has no effect on a prior policy or ruling by Customs." *Int'l Custom Prods.*, 748 F.3d at 1187. However, the Federal Circuit concluded that the government's reasoning would "elevate form over substance" and frustrate the intent of Congress to provide transparency to importers when Customs changes its policy. *Id.* Importantly, the court disagreed with the government's characterization of the notice of action as "entry-specific":

> Contrary to the "entry-specific document" the Government describes, the Notice of Action in this case "applied to *all*" pending and future entries of white sauce. . . . This broad proclamation effectively revoked the classification set forth in the Ruling Letter. . . . The Notice of Action's reclassification of all pending and future white sauce entries after over six years of ICP's reliance on the Ruling Letter was just the type of "change [in] the rules" that § 1625(c) was designed to address.

*Id.* (alteration in original); *see also Kahrs*, 33 CIT at 1353, 645 F. Supp. 2d at 1285

(stating that two protest denials "[did] not fall within the ambit of" § 1625 because "there

[was] no directive set out by the[] denied protests that require Kahrs to classify its

merchandise under 4418.30.00 HTSUS").

By contrast, the '919 Protest approval contained no such "broad proclamation,"

*Int'l Custom Prods.*, 748 F.3d at 1187, but instead stated only: "Protest has been

approved based upon received documents."  Compl ¶ 14; '919 Protest Approval.

Therefore, the '919 Protest approval is not a "prior interpretive ruling or decision," as it

lacked a directive that future entries of the subject merchandise be classified consistent

with that approval.

Plaintiff maintains that the decision to approve the '919 Protest was "inherently

applicable to future entries of the MyPod, OriginalPod, and XLPod."  Pl. Br. at 10.  But, if

the '919 Protest approval were "inherently applicable" to future entries and therefore

subject to § 1625(c), then so is every Customs decision to allow or deny a protest based

on the classification of merchandise.  As stated, such a result is plainly contrary to the

language and legislative history of the statute.  *See supra* Section II.B.1.

Plaintiff notes moreover that "[m]any of the very exemplar rulings and decisions

named in § 1625 do not expressly state that the subject merchandise 'must be classified

henceforth'" under a particular tariff classification.  *Id.* at 11.  However, the task for the

court is to determine whether the '919 Protest approval was the "*functional equivalent*"

of one of the exemplar rulings and decisions listed in § 1625.  Those exemplar rulings

and decisions are issued by Customs' Headquarters Office and, as such, reflect the

"official position" of Customs.  *Int'l Custom Prods.*, 748 F.3d at 1186 (citing 19 C.F.R. §

177.9(a)).  For that reason, including a prospective classification directive in such a

ruling or decision would be superfluous.  But, in determining whether a ruling or decision

not enumerated in the statute and not designated for decision by Customs'

Headquarters Office is functionally equivalent to the examples that Congress provided,

decisions of the Federal Circuit and this Court require that the court consider whether

the Customs determination at issue contains a directive that the subject merchandise be

classified under a particular subheading.  If so, then importers would be entitled "to

expect certainty that . . . Customs [would] not unilaterally change the rules without

providing importers proper notice and an opportunity for comment," S. Rep. No. 103-

189, at 64, and, as a consequence, § 1625 would apply.  The lack of such a directive in

Customs' approval of the '919 Protest is a further indication that the approval was not a

"prior interpretive ruling or decision" under § 1625(c)(1).

### 3.    Whether the '919 Protest is "interpretive"

The court considers next whether the '919 Protest was "interpretive."  This Court

has held that to qualify for the procedural protections of § 1625(c), the determination in

question must be "interpretive."  *Kahrs*, 33 CIT at 1353, 645 F. Supp. 2d at 1285-86.

Defendant asserts that the approval of the '919 Protest was not interpretive

because the approval "did not quote the HTSUS, apply the General Rules of

Interpretation, cite Treasury Decision 86-163 (which governs the classification of tents),

or apply [Customs'] interpretation to any of the facts at issue."  Def. Br. at 12 (citing *Int'l

Custom Prods.*, 748 F.3d at 1188).  Defendant relies on *Southern Shrimp Alliance* for

the proposition that "prior interpretive rulings or decisions" under § 1625 "will . . . 'bear

indicia' of interpretation 'on their face.'"  *Id.* (quoting *S. Shrimp All.*, 33 CIT at 584, 617 F.

Supp. 2d at 1356).  According to defendant, if the one-line protest approval at issue in the instant case is interpretive, "then every other protest determination is interpretive, too."  Def. Reply Br. at 8.

Plaintiff argues that *Southern Shrimp Alliance*, which addressed the meaning of "interpretive ruling" under § 1625(a), is inapposite.  Pl. Br. at 14.  Plaintiff adds that the protest approval in the instant case was "inherently interpretive" and therefore qualifies as an "interpretive ruling or decision" under § 1625(c).  *Id.*

Customs' approval of the '919 Protest was not "a prior interpretive ruling or decision" also because the approval was not, in fact, interpretive.  A Customs decision may be an "interpretive ruling or decision" if it "interprets and applies the provisions of the Customs and related laws to a specific set of facts."  *Am. Fiber & Finishing*, 39 CIT at __, 121 F. Supp. 3d at 1280 (citing 19 C.F.R. § 177.1(d)(1)); *Kahrs*, 33 CIT at 1353, 645 F. Supp. 2d at 1285-86 (stating that neither Customs cargo examinations nor the liquidation of merchandise were "'interpretive' rulings or decisions under § 1625(c)").  In *International Custom Products*, 748 F.3d at 1188, the Federal Circuit held that the notice of action, which identified the subject merchandise as well as the relevant tariff subheadings, "was an interpretive document applying the HTSUS to the specific facts of all pending and future white sauce entries."

By contrast, the instant protest approval stated only: "Protest has been approved based on received documents."  Compl. ¶ 14; *see also* '919 Protest Approval.  That one sentence statement did not "interpret[] and appl[y] the provisions of the Customs and related laws to a specific set of facts."  19 C.F.R. § 177.1(d)(1); *see also Interpret*, Merriam-Webster Online Dictionary (last visited July 10, 2024), https://www.merriam-

webster.com/dictionary/interpret (defining "interpret" as "to explain or tell the meaning of").  The statement did not identify the merchandise, explain the meaning of the relevant tariff subheadings or otherwise provide the interested public with guidance as to Customs' position — the position on which the interested public would presumably be commenting during revocation proceedings.  *See* 19 U.S.C. § 1625(c).  Plaintiff's position that the '919 Protest approval was subject to subsection (c)(1) because it was "inherently interpretive" — a phrase that plaintiff leaves undefined — would subject every protest determination pertaining to the classification of merchandise to the requirements of § 1625(c), a result contrary to the language and legislative history of the statute.  Therefore, the '919 Protest approval was not a "prior interpretive ruling or decision" also because it was not interpretive.

Plaintiff notes that Customs "is not required to provide any detail at all when approving protests."  Pl. Br. at 17 (citing 19 C.F.R. § 174.29); *see also* 19 U.S.C. § 1515(a) (requiring Customs to provide reasons when denying protests but not when approving protests).  Therefore, plaintiff cautions that a decision from this court holding that the one-line protest approval was not interpretive would "[have] troubling implications," *id.* at 16, because it would "effectively mean that no protest approval that was not the result of [an application for further review] can ever qualify as a 'decision' for purposes of § 1625(c)."  *Id.* at 17.  Plaintiff continues that "[s]uch a blanket rule directly contradicts" the Federal Circuit's instruction against "elevat[ing] form over substance," *Int'l Custom Prods.*, 748 F.3d at 1187, and "would create an exception large enough to swallow the rule."  Pl. Br. at 17 (quoting *Int'l Custom Prods.*, 32 CIT at 308, 549 F. Supp. 2d at 1391).  At oral argument, plaintiff asserted that such a result "provides an

incentive" for Customs to issue decisions without a rationale and thereby "avoid the

statute entirely."  Oral Arg. Tr. at 34:11-19.

   Plaintiff's alarum is unwarranted.  Congress addressed plaintiff's concern in §

1625(c)(2).  Subsection (c)(2) requires that Customs provide notice and comment

procedures before issuing a proposed interpretive ruling or decision that would "have

the effect of modifying the treatment previously accorded by the Customs Service to

substantially identical transactions."  Under 19 C.F.R. § 177.12(c)(1)(i), "a treatment was

previously accorded by Customs" if there was "an actual determination by a Customs

officer" that Customs "consistently applied . . . on a national basis . . . with respect to all

or substantially all" of an importer's transactions "involving materially identical facts and

issues."  In *Kent International, Inc. v. United States*, 17 F.4th 1104, 1110 (Fed. Cir.

2021), a case in which Customs approved 14 of plaintiff's protests, the Federal Circuit

held that those "approved protests" constituted "'actual determinations' that [were]

proper for consideration in assessing the treatment previously accorded."  *See also*

*Kent Int'l, Inc. v United States*, 44 CIT __, __, 466 F. Supp. 3d 1361, 1363 (2020)

(noting that over a two-year period Customs approved 14 of plaintiff's protests and nine

requests for post-entry amendments); *Kent Int'l, Inc. v. United States*, 48 CIT __, __,

628 F. Supp. 3d 1294, 1304-05 (2023) ("In the court's view, there is little doubt that

Plaintiff has identified a set of operative facts based on CBP's protest . . . approvals that

give rise to a claim for treatment for the classification of the subject merchandise. . . .

Customs violated that treatment in issuing the 2015 Ruling without the notice and

comment required by 19 U.S.C. § 1625(c).").[13]  Accordingly, plaintiff's position that excluding protest approvals from the purview of § 1625(c)(1) would allow Customs to "avoid the statute entirely," Oral Arg. Tr. at 34:11-19, is unsupported.

In sum, the '919 Protest approval was not a "prior interpretive ruling or decision" under § 1625(c)(1).

## CONCLUSION

For the reasons discussed above, it is hereby

**ORDERED** that defendant's partial motion to dismiss is **GRANTED**.


                                                        /s/      Timothy M. Reif
                                                        Timothy M. Reif, Judge

Dated: September 5, 2024
          New York, New York

---

[13] At oral argument, plaintiff stated that it "was declaring its shipment[s] for eight years" according to its preferred tariff subheading and indicated that this "establishes the treatment" under § 1625(c)(2).  Oral Arg. Tr. at 39:12-40:20.  However, plaintiff's complaint does not assert a cause of action under subsection (c)(2).  *See* Compl. Moreover, the complaint alleges only a single protest approval prior to Customs issuing HQ H311492.  *Id.*  "The touchstone of the treatment previously accorded inquiry is the consistency of *Customs* decisions with respect to the subject merchandise."  *Kent Int'l, Inc.*, 17 F.4th at 1109.  Entries "'admitted pursuant to representations by the importer'. . . . without examination or Customs officer review . . . do not reflect 'treatment' by Customs."  *Id.*  Accordingly, plaintiff's belated assertion that its eight years of entries imported pursuant to plaintiff's declared rate — without examination by Customs — established a "claim of treatment" under § 1625(c)(2) fails.