UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: TIMOTHY M. REIF, JUDGE

_____
                                                    :
UNDER THE WEATHER, LLC,                             :
                                                    :
                              Plaintiff,            :
                                                    :
              v.                                    :        Court No. 21-00211
                                                    :
UNITED STATES,                                      :
                                                    :
                              Defendant.            :
_____             :

### DEFENDANT'S RESPONSE IN OPPOSITION TO
### PLAINTIFF'S MOTION FOR LEAVE TO AMEND

YAAKOV M. ROTH
Acting Assistant Attorney General

PATRICIA M. McCARTHY
Director

JUSTIN R. MILLER
Attorney-In-Charge
International Trade Field Office

AIMEE LEE
Assistant Director

*Of Counsel*:
Yelena Slepak
Emma Tiner
Office of the Assistant Chief Counsel
International Trade Litigation
U.S. Customs and Border Protection

Dated: March 6, 2025

LUKE MATHERS
Trial Attorney
Department of Justice, Civil Division
Commercial Litigation Branch
26 Federal Plaza – Suite 346
New York, New York 10278
(212) 264-9236
*Attorneys for Defendant*

## TABLE OF CONTENTS

BACKGROUND ................................................................................................................2

ARGUMENT ...................................................................................................................4

    I.      Leave to Amend a Complaint Should be Denied if the Proposed Amendment is Futile or Untimely......................................................................................................5

    II.     Under the Weather's Motion for Leave to Amend its Complaint is Untimely........6

    III.    Under the Weather's Motion for Leave to Amend is Futile Because the Proposed Amended Complaint Fails to State a Claim for Treatment...................................10

CONCLUSION...............................................................................................................15

## TABLE OF AUTHORITIES

**Cases**

*Cencast Servs., L.P. v. United States*,
729 F.3d 1352 (Fed. Cir. 2013) ....................................................................... *passim*

*CR Indus. v. United States*,
10 C.I.T. 561 (1986) ............................................................................................. 9

*Dow Chem. Co. v. United States*,
647 F. Supp. 1574 (Ct. Int'l Trade 1986) ........................................................... 9

*DW Volbleu, LLC v. Honda Aircraft Co., LLC*,
2024 WL 169569 (E.D. Tex. Jan. 16, 2024)........................................................ 7

*Foman v. Davis*,
371 U.S. 178 (1962)............................................................................................. 5

*Ford Motor Co. v. United States*,
896 F. Supp. 1224 (Ct. Int'l Trade 1995) ........................................................... 9

*Goldfish Shipping, S.A. v. HSH Nordbank AG*,
623 F. Supp. 2d 635 (E.D. Pa. 2009) .................................................................. 7

*James Madison Ltd. by Hecht v. Ludwig*,
82 F.3d 1085 (D.C. Cir. 1996) ............................................................................ 6

*Johnsen v. Rogers*,
551 F. Supp. 281 (C.D. Cal. 1982) ...................................................................... 6

*Johnson v. Hammett*,
2019 WL 7185559 (D. Md. Dec. 23, 2019)........................................................ 14

*Kahrs Int'l, Inc. v. United States*,
645 F. Supp. 2d 1251 (Ct. Int'l Trade 2009) ................................................ 11, 14

*Kent Int'l, Inc. v. United States*,
17 F.4th 1104 (Fed. Cir. 2021) .......................................................................... 12

*Kent Int'l, Inc. v. United States*,
628 F. Supp. 3d 1294 (Ct. Int'l Trade 2023) ..................................................... 12

*Koike Aronson, Inc. v. United States*,
165 F.3d 906 (Fed. Cir. 1999) ............................................................................ 9

*Kyocera Indus. Ceramics Corp. v. United States*,
469 F. Supp. 1301 (Ct. Int'l Trade 2006) .......................................................... 11

*Minter v. Prime Equip. Co.*,
    451 F.3d 1196 (10th Cir. 2006) ........................................................ 5

*Mitsubishi Aircraft Int'l, Inc. v. Brady*,
    780 F.2d 1199 (5th Cir. 1986) ........................................................ 7

*Motorola, Inc. v. United States*,
    462 F. Supp. 2d 1367 (Ct. Int'l Trade 2006) .................................. 11, 13

*Motorola, Inc. v. United States*,
    509 F.3d 1368 (Fed. Cir. 2007) .................................................. 10, 12, 13

*Peerless Clothing Int'l, Inc. v. United States*,
    602 F. Supp. 2d 1309 (Ct. Int'l Trade 2009) ........................................ 11

*Perfect Pearl Co. v. Majestic Pearl & Stone*,
    889 F. Supp. 2d 453 (S.D.N.Y. 2012) ................................................ 8

*Ruby Int'l, Inc. v. United States*,
    18 C.I.T. 513 (1994) ........................................................ 6

*Shell Oil Co. v. United States*,
    896 F.3d 1299 (Fed. Cir. 2018) .................................................. 5, 7

*Under the Weather, LLC v. United States*,
    728 F. Supp. 3d 1337 (Ct. Int'l Trade 2024) .................................. 2, 6, 12

*Wimm v. Jack Eckerd Corp.*,
    3 F.3d 137 (5th Cir. 1993) ........................................................ 7

**Statutes**

19 U.S.C. § 1625(c)(1) ........................................................ 2, 3, 13

19 U.S.C. § 1625(c)(2) .................................................. 1, 2, 3, 10

**Regulations**

19 C.F.R. § 177.12(c)(1)(i) ........................................................ 4, 10

19 C.F.R. § 177.12(c)(1)(i)(A) ................................................ 10, 12

19 C.F.R. § 177.12(c)(1)(i)(B) ........................................................ 10

19 C.F.R. § 177.12(c)(1)(i)(C) ................................................ 12, 13

19 C.F.R. § 177.12(c)(1)(iv) ........................................................ 4

**Rules**

USCIT Rule 12(b)(6) ................................................................................................ 6

USCIT Rule 15(a)(1) ................................................................................................ 5

USCIT Rule 15(a)(2) ................................................................................................ 5

USCIT Rule 16(b)(4) ................................................................................................ 8

USCIT Rule 33(a)(1) ................................................................................................ 7

**Other Authorities**

*Administrative Rulings*,
   67 Fed. Reg. 53,483 (Dep't Treas. Aug. 16, 2002) .................................... 10, 13, 14

HQ 961995 (Oct. 25, 1999) ................................................................................... 13

HQ H311492 (Oct. 30, 2020) ............................................................................. 2, 13

*Treatment*, <u>Merriam-Webster Online Dictionary</u>,
   https://www.merriam-webster.com/dictionary/treatment ...................................... 13

UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: TIMOTHY M. REIF, JUDGE

_____
                                        :
UNDER THE WEATHER, LLC,                 :
                                        :
                    Plaintiff,          :
                                        :
          v.                            :          Court No. 21-00211
                                        :
UNITED STATES,                          :
                                        :
                    Defendant.          :
_____:

**DEFENDANT'S RESPONSE IN OPPOSITION TO
PLAINTIFF'S MOTION FOR LEAVE TO AMEND**

Plaintiff Under the Weather LLC moves for leave to amend its nearly two-year-old complaint to include a new claim for "treatment" under 19 U.S.C. § 1625(c)(2). Defendant, the United States (the Government), opposes the motion, and this Court should deny it.

At the outset, Under the Weather's proposed amendment is untimely. It is now years after Under the Weather could have presented its claim to Customs and this Court, nearly five months after the Court dismissed Under the Weather's original theory of procedural harm, and barely two months before the end of fact discovery. Under the Weather has no explanation for this lengthy delay.

Regardless, leave to amend would be futile. Under the Weather refers to two alleged examinations of entries of tents that occurred years ago, with no allegations stating whether someone with authority to classify merchandise conducted those examinations for classification purposes—information that Under the Weather or its broker should have. That is not enough to plausibly claim that a treatment existed. Because amendment is both untimely and futile, the Court should deny Under the Motion's motion.

## BACKGROUND

This case concerns the tariff classification of see-through pop-up tent "pods" that Under the Weather imports.  ECF No. 17 (Compl.) ¶ 6; *id.* Ex. 2.  For the Court to determine the correct classification, it must decide whether these pods, marketed as weatherproof personal enclosures for spectators watching outdoor events, qualify as "backpacking tents" meant to be slept in overnight while hiking.

Under the Weather originally claimed in its complaint that Customs violated 19 U.S.C. § 1625(c)(1)'s notice-and-comment procedures by classifying the subject pods without first revoking a prior protest approval.  Compl. ¶¶ 36–41.  The Court dismissed that claim about five months ago, explaining that the protest approval at issue did not constitute an "interpretive ruling or decision" that would trigger § 1625(c)(1).  *Under the Weather, LLC v. United States*, 728 F. Supp. 3d 1337 (Ct. Int'l Trade 2024).  Apart from an unsupported statement at oral argument (that the Court addressed and rejected, *id.* at 1357 n.13), at no point over the past five years—in its protest, application for further review, summonses, or complaint—did Under the Weather suggest that it was pursuing a claim for treatment under § 1625(c)(2).  *See* USCIT Rule 73.1 Filing, ECF No. 7-1 at 1–26; HQ H311492 (Oct. 30, 2020); ECF No. 1 (Summons); ECF No. 14 (Amended Summons); Compl.

After answering the complaint, ECF No. 33, the Government issued 21 interrogatories, 28 requests for production, and eight requests for admission probing the basis for Under the Weather's classification claim.  The Government has provided Under the Weather two extensions to respond to these requests.  Fact discovery is set to close on April 21, 2025.  ECF No. 37.  In less than two months, written discovery responses, document productions, and depositions must all be completed.

2

Under the Weather now moves for leave to amend its complaint to bring an entirely new claim: that Customs violated § 1625(c)(2) by effectively modifying a "treatment previously accorded" to its pods. *See generally* ECF No. 39 (Mot.). Specifically, Under the Weather seeks to allege that Customs conducted "at least two (2) full examinations of [Under the Weather's] shipments of" pods on August 15 and December 15, 2015, that "neither examination identified any issues with" the pods' classification, and that the pods were then "liquidated as entered under" the duty-free tariff provision for "backpacking tents." ECF No. 39-1 ¶ 13. The fact that these two examinations allegedly occurred, Under the Weather argues, suffices to state the claim that a treatment existed for classifying the pods as "backpacking tents"—even though the proposed amended complaint omits any entry numbers or explanation of who conducted these examinations and for what purpose. *See id.* ¶ 52; Mot. at 7–11.

These alleged examinations did not come to light in discovery—they are beyond the scope of the operative complaint, and Under the Weather served its first set of discovery requests (aimed only at treatment) days before filing its motion for leave to amend. *See* Plaintiff's Discovery Requests, Gov't Ex. 1. And as noted, Under the Weather did not mention these alleged examinations or treatment in its protest, raising only its classification claim and now-dismissed § 1625(c)(1) claim. ECF No. 7-1 at 1–26.

Nowhere in its motion does Under the Weather explain why it neglected to inform Customs of these examinations over five years ago during administrative proceedings. *See generally* Mot. Nor does Under the Weather explain why it never raised treatment in its summonses or complaint, or why it waited until the end of fact discovery and five months after the Court dismissed its original theory to raise this new one. *See generally id.* What is clear, however, is that adding a treatment claim to this case at this stage would greatly expand the

scope of discovery and necessitate amending the Court's scheduling order, as evidenced by

Under the Weather's premature discovery requests seeking information on decades-worth of

entries and internal communications, *see* Gov't Ex. 1.

## ARGUMENT

The Court should deny Under the Weather leave to amend its complaint because it is

untimely and futile.  As for untimeliness, Under the Weather raises, for the first time, a treatment

claim it could have raised in its over five-year-old protest and in its nearly two-year-old

complaint.  This unexplained delay is sufficient to justify denial of leave to amend.  Additionally,

permitting amendment would prejudice the Government by expanding the scope of this case at

the last minute and requiring significant modification of the Court's scheduling order.  In short,

Under the Weather's *seriatim* approach to pleading renders its proposed treatment claim

untimely.

Even if Under the Weather's motion were timely, however, that two "full examinations"

of Under the Weather's pods that allegedly occurred in 2015 is not enough to plausibly suggest

that a treatment existed.  Customs regulations—which Under the Weather agrees apply here,

Mot. at 8–9—require an importer to establish that "there was an actual determination by a

Customs officer regarding the facts and issues involved in the claimed treatment," that this

Customs officer "was responsible for the subject matter on which the determination was made,"

and that "[o]ver a 2-year period immediately preceding the claim of treatment, Customs

consistently applied that determination on a national basis as reflected in liquidations of entries

… or other Customs actions …."  19 C.F.R. § 177.12(c)(1)(i).  No proposed allegation provides

this information, or other basic information that the regulation requires, such as entry numbers,

quantity and value of merchandise in the entries, and ports of entry, *id.* § 177.12(c)(1)(iv).

Because the proposed amended complaint fails to state a claim for treatment, amendment would be futile.  For any of these reasons, the Court should deny Under the Weather leave to amend its complaint.[1]

## I.  Leave to Amend a Complaint Should be Denied if the Proposed Amendment is Futile or Untimely

Amending a complaint long after a defendant has moved to dismiss and answered requires the Court's leave.  USCIT Rule 15(a)(1) and (2).  Leave is only "freely give[n] … when justice so requires."  USCIT Rule 15(a)(2).  But justice does not require granting leave to amend where a proposed amendment would be untimely for futile.  *Foman v. Davis*, 371 U.S. 178, 182 (1962).

Amendments to the pleadings "are not allowed where they result in undue delay *or* prejudice."  *Cencast Servs., L.P. v. United States*, 729 F.3d 1352, 1363 (Fed. Cir. 2013) (emphasis added).  That is, a showing of prejudice is not required.  *Id.* at 1364 ("Delay alone, even without a demonstration of prejudice, has thus been sufficient grounds to deny amendment of pleadings." (quotation omitted)).  Unexplained delay in proposing a new claim that the plaintiff could have brought from the start, especially delay that unfairly prejudices the defendant, thus justifies denial of leave to amend.  *Id.* at 1363–65; *Shell Oil Co. v. United States*, 896 F.3d 1299, 1316 (Fed. Cir. 2018).  In other words, a plaintiff cannot use "Rule 15 to make the complaint a moving target, to salvage a lost case by untimely suggestion of new theories of recovery, [or] to present theories seriatim in an effort to avoid dismissal …."  *Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1206 (10th Cir. 2006) (quotations and alterations omitted).

---

[1] Under the Weather also seeks leave to amend its complaint to correct two "inadvertent errors."  Mot. at 2 n.1.  If leave were sought by a separate motion, the Government would consent to these corrections, provided that an amended answer need not be filed.

Additionally, leave to amend should be denied as futile "if the proposed claim would not survive a motion to dismiss." *James Madison Ltd. by Hecht v. Ludwig*, 82 F.3d 1085, 1099 (D.C. Cir. 1996). Thus, in deciding whether a proposed amendment would be futile, the Court accepts as true the proposed factual allegations and ignores legal conclusions, just as it would on a USCIT Rule 12(b)(6) motion to dismiss. *See Under the Weather*, 728 F. Supp. 3d at 1343–44. If the proposed factual allegations do not plausibly suggest a claim, then leave to amend is futile. *See id.*

## II.    Under the Weather's Motion for Leave to Amend its Complaint is Untimely

To begin, Under the Weather's motion for leave to amend fails because it is untimely. *See Cencast Servs.*, 729 F.3d at 1364–65. The facts underlying this belated claim were always known to Under the Weather; the two alleged examinations occurred in 2015. Yet at no point until now—five years after protesting, nearly two years after filing a complaint, five months after the Court dismissed its original theory of recovery, and two months before fact discovery ends— has Under the Weather raised a treatment claim. No reason for this lengthy delay has been offered. That alone warrants denial of leave to amend. *See, e.g.*, *Cencast Servs.*, 729 F.3d at 1364 (affirming denial of leave to amend where the "opportunity existed for nearly five years" for the plaintiff to raise a new legal theory); *Ruby Int'l, Inc. v. United States*, 18 C.I.T. 513, 514– 15 (1994) (denying leave to amend where "the plaintiff waited more than 19 months after the defendant had joined issue to file its motion" mid-discovery "without adequate justification for the delay"); *Johnsen v. Rogers*, 551 F. Supp. 281, 284 (C.D. Cal. 1982) (denying leave to amend where the plaintiffs "were necessarily aware of all the facts asserted in support of the" claims sought to be added "prior to filing the Complaint," and the plaintiffs' "sole justification for their eight-month delay" was "that they had not previously thought of them").

Put another way, because a treatment claim should have been "apparent at the outset of the case," if it were viable, Under the Weather's failure to bring such a claim "strongly suggests either a lack of diligence on its part or a lack of sincerity." *Mitsubishi Aircraft Int'l, Inc. v. Brady*, 780 F.2d 1199, 1203 (5th Cir. 1986) (affirming denial of leave to amend). And this lack of diligence should not be rewarded by "forc[ing] the court to consider various theories seriatim." *Wimm v. Jack Eckerd Corp.*, 3 F.3d 137, 141 (5th Cir. 1993) (quotation omitted).

Furthermore, Under the Weather's unexplained delay prejudices the Government (though the Government need not demonstrate prejudice). "[J]ust as [Under the Weather's] piecemeal presentation of its legal theories would impose an unwarranted burden on the Court, that same conduct would impose an unwarranted burden on [the Government], which would be required to respond seriatim to [Under the Weather's] claims." *Goldfish Shipping, S.A. v. HSH Nordbank AG*, 623 F. Supp. 2d 635, 641 n.6 (E.D. Pa. 2009), *aff'd*, 377 F. App'x 150 (3d Cir. 2010). Specifically, by seeking "to broaden the scope of the litigation" in an untimely fashion, *Shell Oil Co.*, 896 F.3d at 1316 (quotation omitted), Under the Weather "would require new discovery" on treatment that will be "burdensome" and "time consuming," *Cencast Servs.*, 729 F.3d at 1364. For example, Under the Weather seeks decades-worth of discovery on entries and internal communications at Customs. *See* Gov't Ex. 1. The Government "would also likely be required to supplement [its] initial disclosures with materials pertaining to the new claims and allegations." *DW Volbleu, LLC v. Honda Aircraft Co., LLC*, 2024 WL 169569, at *5 (E.D. Tex. Jan. 16, 2024) (denying leave to amend). But in this case, the Government has already used up 21 of its 25 interrogatories on Under the Weather's classification claim, *see* USCIT Rule 33(a)(1), and fact discovery closes in just under two months. Such a significant, last-minute expansion of this otherwise straightforward classification case would be prejudicial.

Under the Weather says that there is no prejudice because its new claim "is based on the same transactions and events as the original complaint," including the "*same* entries covered by the original complaint," Mot. at 5, but that is not true. The proposed amended complaint relies on two new transactions, the 2015 examinations, that were never before disclosed—not to mention the "numerous entries" between 2010 and 2018 that Under the Weather now says are crucial to its treatment claim, ECF No. 31 ¶ 12.

Under the Weather also suggests that prejudice is lacking because this case is still "in the initial phases of the discovery process," Mot. at 6, but that is also not true. The fact discovery deadline is less than two months away. Documents and discovery responses have not yet been exchanged only because Under the Weather has twice received extensions to respond to the Government's discovery requests. Under the Weather cannot excuse its delay in amending its complaint by pointing to its own delay in responding to discovery requests.

And extending the Court-ordered case deadlines to accommodate the proposed treatment claim is no fix. For one, good cause is required to extend such deadlines, USCIT Rule 16(b)(4), and lack of diligence in raising a claim is hardly good cause. *See Perfect Pearl Co. v. Majestic Pearl & Stone*, 889 F. Supp. 2d 453, 457 (S.D.N.Y. 2012) ("A party fails to show good cause when the proposed amendment rests on information that the party knew, or should have known, in advance of the deadline." (quotation omitted)). For another, the necessity of extending case deadlines simply confirms that there is prejudice: "the amendment" would "substantially change[] the theory on which the case has been proceeding and [has been] proposed late enough so that the [Government] would be required to engage in significant new preparation." *Cencast Servs.*, 729 F.3d at 1364 (quotation omitted).

8

Regardless, Under the Weather overlooks that the Government need not demonstrate prejudice; the burden instead is on Under the Weather to justify its lengthy delay.  *Id.* at 1364–65.  Even so, *Ford Motor Co. v. United States*, 896 F. Supp. 1224 (Ct. Int'l Trade 1995), upon which Under the Weather relies at length, Mot. at 4–7, supports a finding of prejudice.  There, the plaintiff moved to amend its complaint only to add a new legal theory of recovery based on an intervening decision of this Court issued two weeks earlier.  *Ford*, 896 F. Supp. at 1224–27.  Because this new theory was "based on the same transactions or occurrences or events as the original complaint," and would involve the same "documents and information and deposition testimony," the Court concluded that the Government would not be prejudiced by the amendment.  *Id.* at 1232.

In contrast, Under the Weather's new claim concerns hundreds, if not thousands, of entirely different transactions—records and memories of which may no longer exist because Under the Weather never mentioned treatment or the alleged 2015 examinations in its protest.[2] Nor did this new claim only become apparent after a recently issued decision.  In short, it is not as if Under the Weather seeks to add a claim for classification under a different heading.  It seeks to broadly expand the universe of discovery to cover decades of transactions that previously were not at issue.

---

[2] For this reason, the Court may well lack jurisdiction over this unprotested claim.  *CR Indus. v. United States*, 10 C.I.T. 561, 564–55 (1986) (concluding that the Court lacked jurisdiction under similar circumstances).  Had the protest mentioned treatment, Customs could have "ascertain[ed] the precise facts" regarding Under the Weather's other entries and "cure[d]" any "defect[s]."  *Koike Aronson, Inc. v. United States*, 165 F.3d 906, 908 (Fed. Cir. 1999) (quotation omitted).  *But see Dow Chem. Co. v. United States*, 647 F. Supp. 1574, 1580–82 (Ct. Int'l Trade 1986).  The Court need not resolve this issue, however, as the motion for leave to amend can be denied as untimely or futile on other grounds.

Because Under the Weather unduly delayed in raising its purported treatment claim, and because the Government would be prejudiced by its injection into this case at this late stage, the motion for leave to amend should be denied as untimely.

## III.    Under the Weather's Motion for Leave to Amend is Futile Because the Proposed Amended Complaint Fails to State a Claim for Treatment

Apart from its untimeliness, Under the Weather's motion for leave to amend is also futile because the proposed complaint fails to state a claim for treatment under 19 U.S.C. § 1625(c)(2). To demonstrate that a treatment existed with respect to the classification of its pods, Under the Weather must plead and ultimately prove "that Customs took a conscious, intentional and knowledgeable action that created an impression that could give rise to an expectation as regards future action by Customs." *Administrative Rulings*, 67 Fed. Reg. 53,483, 53,491 (Dep't Treas. Aug. 16, 2002). Specifically, Under the Weather must plead facts plausibly suggesting that there was "an actual determination" made by Customs "based on an examination that particular [merchandise] belonged under a particular classification, by an officer with responsibility for the subject matter under consideration, and that the same determination [has] been made consistently over the preceding two years with respect to the importer's materially identical [merchandise]." *Motorola, Inc. v. United States*, 509 F.3d 1368, 1371–72 (Fed. Cir. 2007); 19 C.F.R. § 177.12(c)(1)(i). Under the Weather's proposed amended complaint fails each of these requirements.

*First*, the proposed amended complaint fails to allege, as it must, that a Customs officer with responsibility for classification made any actual determination regarding the classification of Under the Weather's pods before the claim of treatment. 19 C.F.R. § 177.12(c)(1)(i)(A) and (B). That is, nowhere does Under the Weather allege that, before 2019, an import specialist examined the pods, for the purpose of classifying them, and approved of Under the Weather's

classification.  *See generally* ECF No. 39-1.  That alone disposes of the proposed treatment claim.

That two entries of pods allegedly underwent "full examinations" followed by liquidation as entered, *id.* ¶ 13, does not plausibly suggest that an import specialist "actual[ly] physical[ly] inspect[ed]" the pods and agreed with Under the Weather's classification.  *Kahrs Int'l, Inc. v. United States*, 645 F. Supp. 2d 1251, 1290 (Ct. Int'l Trade 2009).  Entry examinations routinely occur for other reasons.  For example, bypass entries are randomly examined—even by import specialists—to "ensure that the integrity and soundness of criteria used to identify bypass entry summaries are maintained," rather than for classification.  *Motorola, Inc. v. United States*, 462 F. Supp. 2d 1367, 1377–79 (Ct. Int'l Trade 2006) (quotation omitted) (concluding that these examinations failed to give rise to a treatment).  Cargo is also examined at ports of entry for security purposes.  *Kahrs Int'l*, 645 F. Supp. 2d at 1295 ("[T]he 5 entries that were the subject of cargo examinations were revealed to have been security or selectivity examinations where no binding classification determinations were made.").  These routine, "full" examinations of cargo, which may or may not be conducted by Customs officers with responsibility for classifying merchandise, are not for classification purposes.

Without more—for instance, allegations that an import specialist requested information relating to classification, followed by a "no change" determination, *Peerless Clothing Int'l, Inc. v. United States*, 602 F. Supp. 2d 1309, 1319 (Ct. Int'l Trade 2009)—the allegation that examinations occurred does not plausibly suggest that an import specialist reviewed Under the Weather's claimed classification and agreed with it.  Customs not challenging a classification does not constitute approval.  *Kyocera Indus. Ceramics Corp. v. United States*, 469 F. Supp. 2d 1301, 1307 (Ct. Int'l Trade 2006) ("While there may well have been no objection on the part of

Customs, that was not the equivalent of a positive determination that would satisfy the standard of [19 C.F.R. § 177.12(c)(1)(i)(A).]").

*Second*, the operative two-year period is from "December 24, 2016, through December 24, 2018," as Under the Weather concedes, ECF No. 39-1 ¶ 51, but no "actual determination" or application thereof by Customs in Under the Weather's favor allegedly took place during that period. 19 C.F.R. § 177.12(c)(1)(i)(C). The two "full examinations" of entries (which, as explained below, do not suffice to demonstrate a treatment) allegedly occurred in 2015—three years before the claim of treatment. *Id.* ¶ 13. And the entries alleged to have been made during the two-year period were not also alleged to have been examined by Customs for classification purposes. *See id.* ¶ 12; *Under the Weather*, 728 F. Supp. 3d at 1357 n.13. Liquidation of those entries, lacking any Customs officer review, cannot be considered in the treatment analysis. *Motorola*, 509 F.3d at 1372 ("[B]ecause there was never an actual examination or determination that any of these transactions qualified for inclusion under [a particular tariff provision], Customs could not have applied the [ruling letters at issue] on a national basis to the bypass entries."); *Kent Int'l, Inc. v. United States*, 17 F.4th 1104, 1109 (Fed. Cir. 2021) (rejecting the argument that Customs can consider "'liquidations' generally," specifically those of bypass entries, during the two-year period). Whatever classification determinations that might have existed were, in other words, too stale to reasonably be relied upon in 2018.[3]

*Third*, the only Customs review for classification of any of Under the Weather's entries that did occur between 2016 and 2018 resulted in a determination that Under the Weather

---

[3] This would still be the case even if the two-year period were expanded to include a bit more of 2016, despite the plain regulatory language. *See Kent Int'l, Inc. v. United States*, 628 F. Supp. 3d 1294, 1305 n.5 (Ct. Int'l Trade 2023) (expanding the two-year period by a few months without the Government's objection).

incorrectly classified its pods.  Specifically, in a September 5, 2018 Notice of Action, an import specialist *disagreed* with Under the Weather's classification.  *See* ECF No. 39-1 ¶ 14.  That renders implausible any claim that Customs "*consistently* applied" any "determination" during the requisite two-year period.  19 C.F.R. § 177.12(c)(1)(i)(C) (emphasis added).

And *fourth*, even if the alleged 2015 examinations could be considered (they cannot, for all the reasons just discussed), pleading just two examinations of entries of unknown quantity and value is not enough to state a claim for treatment.  A "treatment" requires a "pattern" or customary application of actions.  *Treatment*, Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/treatment.  Here, however, where just two examinations are alleged to have occurred despite "numerous entries" over the course of eight years and a contrary Notice of Action, ECF No. 39-1 ¶¶ 12–14, it is not plausible that any pattern or customary practice existed, much less one that would engender "an expectation as regards future action by Customs," 67 Fed. Reg. at 53,491.  *Motorola*, 462 F. Supp. 2d at 1378 ("[A] random review of two to ten percent of all bypass entries is insufficient to constitute treatment.").

Under the Weather tries, but fails, to salvage its treatment claim by pointing to Customs' approval of Protest No. 2704-19-102919 in 2019 and HQ 961995 (Oct. 25, 1999).  Mot. at 9–10. The protest approval postdates the claimed treatment.  And the ruling, even assuming that it can be considered in a treatment analysis, *see Motorola*, 509 F.3d at 1372 (explaining that rulings are exclusively addressed in 19 U.S.C. § 1625(c)(1)), plainly concerns different merchandise. *Compare* HQ 961995 (Oct. 25, 1999) *with* HQ H311492 (Oct. 30, 2020).

As a last resort, Under the Weather says it "has reason to believe discovery may well reveal additional examinations," given that it "imported its subject merchandise" as duty-free "backpacking tents" for "several years without a single contrary decision from Customs[.]"  Mot.

at 9.  This is speculation.  *Kahrs Int'l*, 645 F. Supp. 2d at 1290 ("Plaintiff assumed that, because

it had never been challenged on its [classification] …, it must have been acting correctly.

Informed compliance, however, is proactive and cannot function on such an assumptive

practice.").  And speculation that discovery might reveal evidence to support a claim does not

render that claim plausible.  *Johnson v. Hammett*, 2019 WL 7185559, at *13 (D. Md. Dec. 23,

2019) ("Plaintiff also states that 'discovery will reveal whether it is "plausible" that Defendant

Hammett acted with a kind [of] deliberate indifference.'  But, a law suit is not a fishing

expedition; plausibility must be established by the Amended Complaint.").

 In fact, Under the Weather's request for a fishing expedition renders its claim that much

more implausible.  Under the Weather has been sitting on its purported treatment claim for over

five years.  By now, it or its broker should have evidence of any examinations that gave the

impression that Customs agreed with Under the Weather's classification.  Customs would not

have that information (despite what Under the Weather suggests without any support, Mot. at 9).

67 Fed. Reg. at 53,491 ("Customs does not retain the necessary information in such a way that it

would on its face demonstrate the existence of a treatment.").  But even if it did, Under the

Weather could have submitted Freedom of Information Act requests years ago to obtain such

information.  *See Kahrs Int'l*, 645 F. Supp. 2d at 1272 (noting that the importer obtained

examination information pursuant to a Freedom of Information Act request).

 In sum, Under the Weather's proposed amended complaint fails to state a claim for

treatment.  There are no allegations plausibly suggesting that, during the relevant two-year

period, Customs consistently applied any actual classification determination regarding Under the

Weather's pods that was made by a Customs officer responsible for classification.  The Court

accordingly should deny Under the Weather leave to amend its complaint as futile.

## **CONCLUSION**

For these reasons, the Court should deny Under the Weather's motion for leave to amend its complaint.

Respectfully submitted,

YAAKOV M. ROTH
Acting Assistant Attorney General

PATRICIA M. McCARTHY
Director

JUSTIN R. MILLER
Attorney-In-Charge
International Trade Field Office

/s/ Aimee Lee
AIMEE LEE
Assistant Director

/s/ Luke Mathers
*Of Counsel*:                                    LUKE MATHERS
Yelena Slepak                                 Trial Attorney
Emma Tiner                                    Department of Justice, Civil Division
Office of the Assistant Chief Counsel         Commercial Litigation Branch
International Trade Litigation                 26 Federal Plaza – Suite 346
U.S. Customs and Border Protection            New York, New York 10278
                                              (212) 264-9236
Dated: March 6, 2025                          *Attorneys for Defendant*

15

UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: TIMOTHY M. REIF, JUDGE

—————————————————————————————
                                                    :
UNDER THE WEATHER, LLC,                             :
                                                    :
                              Plaintiff,            :
                                                    :
              v.                                    :        Court No. 21-00211
                                                    :
UNITED STATES,                                      :
                                                    :
                              Defendant.            :
—————————————————————————————:

## **CERTIFICATE OF COMPLIANCE**

I, Luke Mathers, an attorney in the Office of the Assistant Attorney General, Civil

Division, Commercial Litigation Branch, International Trade Field Office, who is responsible for

the foregoing brief, relying upon the word count feature of the word processing program used to

prepare the brief, certify that this brief complies with the word count limitation under the Court's

chambers procedures, and contains 4,384 words.

                                        /s/ Luke Mathers
                                        LUKE MATHERS

16