**UNITED STATES COURT OF INTERNATIONAL TRADE**
**BEFORE: HON. TIMOTHY M. REIF, JUDGE**

| | |
|---|---|
| UNDER THE WEATHER, LLC,<br><br>                        **Plaintiff,**<br>   **v.**<br><br>UNITED STATES,<br>                        **Defendant.** | Court No.   21-00211 |

**PLAINTIFF'S REPLY IN SUPPORT OF**
**MOTION FOR LEAVE TO FILE A FIRST AMENDED COMPLAINT**

Respectfully submitted,

/s/ Heather Jacobson
Heather Jacobson
Alena A. Eckhardt

NAKACHI ECKHARDT & JACOBSON, P.C.
2815 Elliott Avenue, Suite 100
Seattle, WA 98121-2991
Tel: (206) 774-0927
Email: hjacobson@tradelawcounsel.com
       eckhardt@tradelawcounsel.com

*Counsel for Plaintiff Under the Weather, LLC*

Dated: March 18, 2025

## <u>TABLE OF CONTENTS</u>

I.   Timeliness of the Motion for Leave to Amend ................................................................1

A. Defendant Misquotes and Mischaracterizes the Caselaw It Relies Upon When Asking This Court to Find That Plaintiff's Motion for Leave Is Unduly Delayed, When In Fact These Authorities are Inapposite to the Instant Action ......................................................2

B. Granting Plaintiff's Motion to Amend Its Complaint Will Not Prejudice Defendant Because Defendant's Anticipated Discovery Burdens Do Not Result in Prejudice, the Proposed "Treatment" Claim Relates to the Same Transactions and Events as Plaintiff's Original Complaint, and Defendant Will Have Ample Opportunity to Defend Plaintiff's New Claim ......................................................................................................................6

II.   The Proposed Amendment is Not Futile and is Essential for a Complete Presentation of Plaintiff's Claims ..............................................................................................................11

III.   Conclusion .......................................................................................................................15

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*American Fiber & Finishing, Inc. v. U.S.*,
   121 F.Supp.3d 1273 (Ct. Int'l Trade 2015) ...........................................................................13

*An Giang Fisheries Import and Export Joint Stock Co. v. U.S.*,
   118 F.Supp.3d 1368 (Ct. Int'l Trade 2015) .............................................................................2

*Atari Caribe, Inc. v. U.S.*,
   799 F. Supp. 99 (Ct. Int'l Trade 1992) ....................................................................................9

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007) .........................................................................................................11, 14

*Cencast Servs., L.P. v. United States*,
   729 F.3d 1352 (Fed. Cir. 2013) ...........................................................................................3, 7

*Cencast Servs., L.P. v. United States*,
   94 Fed.Cl. 425 (Ct. Fed. Claims 2010) ...................................................................................3

*Chae v. Sec'y of the Treasury*,
   518 F. Supp. 3d 1383 (Ct. Int'l Trade 2021) ...........................................................................2

*Chevron USA v. National Resources Defense Council*,
   467 U.S. 837 (1984) ...............................................................................................................15

*Datascope Corp. v. SMEC, Inc.*,
   962 F.2d 1043 (Fed.Cir.1992) .................................................................................................2

*Dow Chem. Co. v. U.S.*,
   647 F. Supp. 1574 (Ct. Int'l Trade 1986) ...............................................................................9

*DW Volbleu, LLC v. Honda Aircraft Co., LLC*,
   2024 WL 169569 (E.D. Tex. Jan. 16, 2024) ...........................................................................8

*Ford Motor Co. v. United States*,
   896 F. Supp. 1224 (Ct. Int'l Trade 1995) ........................................................................passim

*Goldfish Shipping, S.A. v. HSH Nordbank AG*,
   623 F. Supp. 2d 635 (E.D. Pa. 2009) .....................................................................................7

*Johnsen v. Rogers*,
   551 F. Supp. 281 (C.D. Cal. 1982) .........................................................................................5

*Johnson v. Hammett*,
   2019 WL 7185559 (D. Md. Dec. 23, 2019)..............................................................14

*Kahrs Int'l, Inc. v. United States*,
   645 F. Supp. 2d 1251 (Ct. Int'l Trade 2009) ............................................ 13, 14, 15

*Kent International, Inc. v. United States*,
   628 F.Supp.3d 1294 (Ct. Int'l Trade 2023) ..............................................................12

*Kyocera Indus. Ceramics Corp. v. United States*,
   469 F. Supp. 2d 1301 (Ct. Int'l Trade 2006) ............................................ 13, 14, 15

*Loper Bright Enterprises, et al. v. Raimondo*,
   603 U.S. 369 (2024) ..............................................................................................15

*Minter v. Prime Equip. Co.*,
   451 F.3d 1196 (10th Cir. 2006) ..........................................................................4, 6

*Mitsubishi Aircraft Int'l, Inc. v. Brady*,
   780 F.2d 1199 (5th Cir. 1986) ............................................................................5, 6

*Motorola Inc. v. United States*,
   462 F. Supp. 2d 1367 (Ct. Int'l Trade 2006) ..........................................................13

*Motorola, Inc. v. United States*,
   28 C.I.T. 1310 (2004)............................................................................................14

*Motorola, Inc. v. United States*,
   436 F.3d 1357 (Fed. Cir. 2006)..............................................................................15

*Peerless Clothing Int'l, Inc. v. United States*,
   602 F. Supp. 2d 1309 (Ct. Int'l Trade 2009) ..........................................................13

*Perfect Pearl Co. v. Majestic Pearl & Stone*,
   889 F. Supp. 2d 453 (S.D.N.Y. 2012)......................................................................8

*Shell Oil Co. v. United States*,
   896 F.3d 1299 (Fed. Cir. 2018)................................................................................3

*United States v. Am. Cas. Co. of Reading Pennsylvania*,
   91 F. Supp. 3d 1324 (Ct. Int'l Trade 2015) ..........................................................2, 5

*United States v. Ho*,
   582 F. Supp. 3d 1325 (Ct. Int'l Trade 2022) ............................................................2

*Wimm v. Jack Eckerd Corp.*,
    3 F.3d 137 (5th Cir. 1993) ...................................................................................6

**Statutes**

19 U.S.C. § 1315(d) .............................................................................................9

19 U.S.C. § 1514(a)(2) .........................................................................................9

19 U.S.C. § 1625(c) .......................................................................................passim

**Regulations**

19 C.F.R. § 177.12(c)(1) ................................................................................13, 15

19 C.F.R. § 177.12(c)(1)(i)(A) ...........................................................................13

19 C.F.R. § 177.12(c)(1)(i)(C) ............................................................................13

19 C.F.R. § 177.12(c)(ii) .....................................................................................12

**Rules**

USCIT Rule 15(a)(2) ......................................................................................1, 2, 9

USCIT Rule 15(d) .................................................................................................9

USCIT Rule 16(b)(4) ............................................................................................8

USCIT Rule 26(b)(2)(A) .......................................................................................8

USCIT Rule 33(a)(1) .............................................................................................8

**UNITED STATES COURT OF INTERNATIONAL TRADE**
**BEFORE: HON. TIMOTHY M. REIF, JUDGE**

| | |
|---|---|
| UNDER THE WEATHER, LLC, <br><br>                    **Plaintiff,** <br>     **v.** <br> **UNITED STATES,** <br>                    **Defendant.** | **Court No.    21-00211** |

**PLAINTIFF'S REPLY IN SUPPORT OF**
**MOTION FOR LEAVE TO FILE A FIRST AMENDED COMPLAINT**

Pursuant to USCIT Rule 15(a)(2), Plaintiff Under the Weather, LLC ("Plaintiff" or "UTW"), respectfully submits this Reply ("Reply") in support of its Motion for Leave to File a First Amended Complaint, ECF No. 39 ("Motion for Leave").  The proposed amendment seeks to include an additional ground in support of Plaintiff's classification allegation, under the authority of 19 U.S.C. § 1625(c)(2), and this Reply is necessary to address and refute authorities and arguments upon which Defendant rests its opposition to Plaintiff's Motion for Leave, which Plaintiff respectfully submits are not only inapplicable, but in many instances misleading and lacking accuracy in the context of the current litigation.

**I.        Timeliness of the Motion for Leave to Amend**

Defendant's Response, ECF No. 42 ("Response" or "Def. Opp."), is based on two primary arguments: untimeliness and futility.  *See generally* Def. Opp.  With respect to untimeliness, Defendant contends that Plaintiff's Motion for Leave comes unjustifiably late and that granting it would prejudice the Government.  Def. Opp. at 4-10.  However, any alleged delay that the Court might find is not "undue," and the proposed amendment does not prejudice Defendant.  The amendment involves the same transactions and events as the original complaint, and Defendant had fair notice of Plaintiff's challenge to Customs' classification procedures under 19 U.S.C. §

1625(c).  Moreover, fact discovery is ongoing, providing ample opportunity for Defendant to respond to the new claim without undue burden.[1]

### A. Defendant Misquotes and Mischaracterizes the Caselaw It Relies Upon When Asking This Court to Find That Plaintiff's Motion for Leave Is Unduly Delayed, When In Fact These Authorities are Inapposite to the Instant Action

Defendant claims that "delay alone" has been found sufficient to deny a motion for leave to file an amended pleading.  *See, e.g.,* Def. Opp. at 4, 5.  This argument should be disregarded by the Court for the following reasons.

Defendant's claim contradicts the lenient standard outlined in USCIT Rule 15(a)(2), as applied by both the CIT and the Federal Circuit, and it fails to address or challenge the supporting authorities cited by Plaintiff.  In its Motion for Leave, Plaintiff cites *Ford Motor Co. v. United States*, 19 CIT 946, 955-56, 896 F. Supp. 1224 (Ct. Int'l Trade 1995) – a case this Court continues to reference in the context of motions for leave to amend pleadings[2] – to argue that a finding of prejudice is necessary to support "undue" delay.  Pl. Mot. at 10; *see also United States v. Am. Cas. Co. of Reading Pennsylvania*, 91 F. Supp. 3d 1324, 1333 (Ct. Int'l Trade 2015) (citing *Ford,* 896

---

[1] Plaintiff notes that it has served the Government with discovery requests focused, *inter alia*, on the issues of treatment, which are crucial to its claim and exclusively within the Government's control.  However, the Government strategically requested an extension of time to respond to these requests until after the Court decides on the Motion for Leave.  Despite the need for this information for the purposes of the Motion, Plaintiff's counsel granted this extension for both out of professional courtesy and for practical reasons.  Responding to motions for extension of time and/or moving to compel would have been time-consuming and costly for Plaintiff and the Court yet ultimately would have resulted in the same delay sought by the Government.  By granting the extension, Plaintiff avoided unnecessary expense, but this decision effectively denies it access to key information held by the Government until after the Court's ruling on Plaintiff's Motion for Leave.  This information is essential for Plaintiff's treatment claim, as it involves Customs' examinations and determinations that only the Government can provide.  Therefore, Plaintiff respectfully urges the Court to consider the importance of this discovery in evaluating Plaintiff's Motion for Leave and to ensure that Plaintiff is not prejudiced by the Government's exclusive control over critical evidence.

[2] *See, e.g., United States v. Ho*, 582 F. Supp. 3d 1325, 1339 (Ct. Int'l Trade 2022), *Chae v. Sec'y of the Treasury*, 518 F. Supp. 3d 1383, 1404 (Ct. Int'l Trade 2021), *An Giang Fisheries Import and Export Joint Stock Co. v. U.S.*, 118 F.Supp.3d 1368 (Ct. Int'l Trade 2015); *see also Datascope Corp. v. SMEC, Inc.*, 962 F.2d 1043, 1045 (Fed.Cir.1992) ("Although delay itself is an insufficient ground to deny amendment, if the delay is 'undue' the district court may refuse to permit amendment.")

F.Supp. at 1231) (confirming the generally accepted view that delay becomes undue when it prejudices the opposing party).

In its Response, Defendant fails to contest these principles.  Instead, Defendant argues the Court should deny Plaintiff's Motion for Leave on the grounds that it is "untimely," insisting that a showing of "prejudice" is not required.  Def. Opp. at 4, 5, 7.  However, when viewed in their proper context, Defendant's own cited caselaw confirms that the Federal Circuit does not deny a Rule 15(a)(2) motion to amend based solely on "untimeliness."  Instead, the key consideration is whether the amendment would result in "undue" delay – findings of which typically involve factual circumstances so extreme that they bear no resemblance to the present case.

The primary case Defendant relies on  to support the argument that "delay alone" can justify denying leave to amend is *Cencast Servs., L.P. v. United States*, 729 F.3d 1352 (Fed. Cir. 2013). Def. Opp. at 5-6. In *Cencast*, however, the delay was deemed "undue" due to specific circumstances that are entirely unlike those in the present case.  Specifically, in *Cencast*, by the time the motion for leave was filed, the case had been pending before the trial court for six years, with four years spent on settlement and discovery discussions.  *See Cencast Servs., L.P. v. United States,* 94 Fed.Cl. 425, 436 n. 9, 437 (Ct. Fed. Claims 2010); *see also Cencast*, 729 F.3d at 1357-58.  Moreover, the motion for leave was filed: (1) more than three years after the parties' agreed-upon deadline for amending pleadings; and (2) nearly two years after the parties had entered into a stipulation meant to define and narrow the relevant issues of the case, following the four years of settlement efforts.  *Id.*  It was under these circumstances that the Claims Court denied the motion for leave on grounds of "undue" delay.  *Cencast*, 729 F.3d. at 1363.

*Shell Oil Co. v. United States*, 896 F.3d 1299, 1316 (Fed. Cir. 2018), which Defendant offers to argue that "unexplained" delay in raising a "new claim" justifies denial when it "unfairly

prejudices" the defendant (Def. Opp. at 5), is another Federal Circuit case that is inapplicable here. In *Shell Oil*, the motion for leave was filed during the case's fifth procedural stage – after the action had been fully adjudicated on summary judgment before the CIT and remanded twice on appeal. *See Shell Oil*, 896 F.3d at 1302-1303.   Unlike *Cencast* or *Shell*, the present case remains procedurally "young."  Plaintiff's Motion for Leave was filed nineteen months after the complaint was initiated – not "nearly two years," as Defendant self-servingly characterizes it (Def. Opp. at 1, 4). Moreover, fourteen of those nineteen months were spent addressing Defendant's Partial Motion to Dismiss (ECF No. 22). Notably, Plaintiff's Motion for Leave was filed before the expiration of any deadlines set in the current Scheduling Order, and no specific deadlines exist for amending the pleadings.  The factors that led the courts in *Cencast* and *Shell Oil* to deny leave – such as extensive procedural history and missed deadlines – are absent here.

Likewise, the remaining cases from other jurisdictions are distinguishable based on both their differing facts and legal interpretation.  For instance, Defendant cites *Minter v. Prime Equip. Co.*, 451 F.3d 1196 (10th Cir. 2006), to argue that Rule 15 cannot be used to continuously alter a complaint, salvage a failing case with new theories, or present theories sequentially to avoid dismissal.  Def. Opp. at 5 (quoting *Minter*, 451 F.3d 1196, 1206).  However, *Minter* is a Tenth Circuit case, which follows a different approach than the Federal Circuit – a distinction that Defendant overlooks, even though the *Minter* court itself acknowledged it.  In particular, the Tenth Circuit acknowledged that "[t]he courts of appeal are not in agreement regarding the showing necessary to establish "undue" delay," and stated that the Tenth Circuit "focuses primarily on the reasons for the delay," while the majority of the circuits find undue delay only if the trial court also finds prejudice, bad faith, or futility.  *Cf. Minter*, 451 F.3d at 1205-1206 n. 5, n. 6; *and Am.*

*Cas. Co.*, 91 F. Supp. 3d at 1333 (stating that delay becomes undue when it prejudices the opposing party). As such, the *Minter* language quoted by Defendant is inapplicable here.

Defendant also cites a 1982 California district court case denying leave to amend; once again, this case is clearly distinguishable on factual grounds: (1) the motion for leave sought a second amendment to the complaint; (2) the proposed amendment violated a court order that permitted the plaintiff to amend only certain claims; and (3) the new claims were entirely unrelated to those raised in the original and first amended complaints. *Johnsen v. Rogers,* 551 F. Supp. 281, 283 (C.D. Cal. 1982).

Finally, as part of its overarching argument of "undue" delay, Defendant cites two Fifth Circuit cases where leave to amend was denied. Def. Opp. at 12. However, the full context and specific circumstances of these cases render them entirely inapplicable to the present case. *Mitsubishi Aircraft Int'l, Inc. v. Brady*, 780 F.2d 1199 (5th Cir. 1986) is particularly misleading and inapplicable. In *Mitsubishi*, the plaintiff sought leave to amend only *after* the case had already been dismissed in its entirety on summary judgment. *Mitsubishi,* 780 F.2d at 1203 ("The trial court denied appellant's motion for leave to amend because the proffered amendment came after the trial court had granted appellees' motion for summary judgment. We do not believe that the trial court abused its discretion by denying appellant leave to amend under these circumstances."). Defendant selectively quotes from the opinion to suggest that "a treatment claim should have been 'apparent at the outset of the case,' if it were viable, and that UTW's failure to bring such a claim 'strongly suggests either a lack of diligence on its part or a lack of sincerity.'" Def. Opp. at 7. However, this misrepresents the scope of the Fifth Circuit's holding. The full passage from *Mitsubishi* states:

> An economic duress claim, usually apparent at the outset of a case, will normally be aggressively urged by an injured party. Since this was not done, appellant's

> conduct strongly suggests either a lack of diligence on its part or a lack of sincerity. Also, by the time the motion to amend was filed, there was no longer existent a claim to be amended, since summary judgment was already granted.

*Mitsubishi*, 780 F.2d at 1203.  This full context reveals what Defendant's selective quoting obscures – namely, that the Fifth Circuit in *Mitsubishi* was addressing a very specific type of claim, economic duress, in a procedural context involving a post-summary judgment motion to amend. Since neither of those circumstances applies here, Defendant's attempt to extend *Mitsubishi* to the present case is misguided and inappropriate.

*Wimm v. Jack Eckerd Corp*., 3 F.3d 137 (5th Cir. 1993), is likewise inapplicable, as the denial of leave to amend in that case was based on explicit findings of bad faith and dilatory motive. *See Wimm*, 3. F.3d at 142.  Accordingly, Defendant's attempt to oppose Plaintiff's Motion for Leave based on timing is unsupported by the law.

**B. Granting Plaintiff's Motion to Amend Its Complaint Will Not Prejudice Defendant Because Defendant's Anticipated Discovery Burdens Do Not Result in Prejudice, the Proposed "Treatment" Claim Relates to the Same Transactions and Events as Plaintiff's Original Complaint, and Defendant Will Have Ample Opportunity to Defend Plaintiff's New Claim**

While incorrectly asserting that a finding of prejudice is unnecessary, Defendant nevertheless argues that granting Plaintiff's Motion for Leave would cause prejudice.  Def. Opp. at 7-10.  However, as with its "undue" delay argument, the authorities Defendant cites to support its "prejudice" claim are entirely distinguishable from the present case.  Defendant argues that responding to claims "seriatim" would causes prejudice but fails to provide any explanation for how and why such prejudice would occur.  Def. Opp. at 7.  In support, Defendant cites to a Third Circuit case, which is both procedurally and factually distinct from the present case. As detailed above, the Third Circuit follows a different approach to motions for leave.  *Minter*, 451 F.3d 1196 at 1205-1206 n. 6.  Furthermore, unlike here, the cited case involved a motion for a *second*

amended complaint *after* the court had already disposed of the case in its entirety on summary judgment. *Goldfish Shipping, S.A. v. HSH Nordbank AG*, 623 F. Supp. 2d 635, 637 (E.D. Pa. 2009). These specific and materially different circumstances led the *Goldfish* court to find prejudice. Defendant, however, offers no explanation as to why adding a treatment claim now would be any more burdensome or time-consuming than if it had been included in the original complaint.

Essentially, Defendant's claims of prejudice focus on discovery-related issues, which Plaintiff anticipated and addressed in its Motion for Leave. *See* Pl. Mot. at 12-13. Indeed, this Court has explicitly stated that "potential discovery difficulties" are insufficient to "demonstrate actual prejudice." *Id.* (quoting *Ford*, 896 F. Supp. at 1232). However, Defendant fails to address this precedent and instead diverts the Court's attention with inapplicable case law. For example, Defendant cites *Cencast* to argue that the additional discovery requested by Plaintiff for a treatment claim is "burdensome" and "time-consuming." Def. Opp. at 7 (citing *Cencast*, 729 F.3d at 1364). Yet, in *Cencast*, as clarified above, the Court found the additional discovery prejudicial because the motion to amend was made after a full round of discovery, following four years on settlement and discovery discussions. Moreover, the motion to amend in *Cencast* came two years after the parties had entered into a stipulation to narrow the case's issues. *Cencast*, 729 F.3d at 1364. Unlike *Cencast*, where discovery had closed at the time of the motion, this case presents no such barrier to additional discovery. In contrast, discovery in this case is ongoing, and as needed, can be extended to accommodate discovery for the new claim.[3]

---

[3] As stated above, the Government itself has already requested – and been granted – an extension of time to respond to Plaintiff's discovery requests until after the Court decides on the Motion for Leave, which will likely occur after the current discovery deadline of April 21, 2025. Since the Government's own request has already disrupted the original discovery schedule, any additional discovery related to the new claim would not materially alter the case's timeline. Therefore, extending the discovery deadline to accommodate the new claim would not impose an additional burden beyond what is already anticipated. Extending discovery to account for the new claim would therefore align

Regarding Defendant's concerns about its remaining available interrogatories, the case cited in opposition is once again distinguishable.  In *DW Volbleu, LLC v. Honda Aircraft Co., LLC*, 2024 WL 169569 (E.D. Tex. Jan. 16, 2024), the court found further discovery to be prejudicial because the plaintiff sought to file a *third* amended complaint  introducing "entirely new claims *and parties*" (emphasis added) – circumstances that are not present here.  Moreover, Plaintiff notes that USCIT Rules 26(b)(2)(A) and 33(a)(1) permit the court to grant leave for additional interrogatories if needed.  *Id.* at *1, 5.

In an attempt to obscure the issue, Defendant argues that extending the scheduling order deadlines to accommodate Plaintiff's treatment claim is "no fix" because Plaintiff's Motion allegedly fails to satisfy the "good cause" standard under USCIT Rule 16(b)(4).  In support, Defendant cites *Perfect Pearl Co. v. Majestic Pearl & Stone*, 889 F. Supp. 2d 453 (S.D.N.Y. 2012). Def. Opp. at 8.  Again, *Perfect Pearl* involved a motion for leave filed *after* all the scheduling order deadlines had expired – including a specific deadline for amending pleadings.  *Perfect Pearl*, 889 F. Supp. 2d at 456.  In contrast, no such pleading amendment deadline exists in this case, and the current scheduling order deadlines have not yet expired.

Importantly, Defendant challenges Plaintiff's argument that its proposed COUNT II – alleging that Customs' reclassification of its tents violated a "treatment" previously afforded to Plaintiff's tents – arises from the same transaction and events as its original complaint – Customs' reclassification itself.  Def. Opp. at 8.  In so doing, Defendant argues that because Plaintiff's proposed amendment would require analysis of past entries made by UTW – an analysis necessary to establish treatment under 19 U.S.C. § 1625(c)(2) – those entries should be considered new

---

with the existing procedural posture and ensure that both parties have a fair opportunity to develop their respective positions without imposing any undue burden or unfair disadvantage.

transactions for purposes of a Rule 15(a)(2). *Id.* But this Court has explained, in the similar context of a claim of established and uniform practice (codified at 19 U.S.C. § 1315(d)), that classification decisions inherently include claims such as an established and uniform practice. *See Dow Chem. Co. v. U.S.*, 647 F. Supp. 1574, 1580 (Ct. Int'l Trade 1986) (finding that a claim for established and uniform practice is "related to the same administrative decision" under section 1514 when that decision involves the re-classification of the imported goods, as merchandise would be classified differently if the court finds the claimed established and uniform practice exists); *see also Atari Caribe, Inc. v. U.S.*, 799 F. Supp. 99 (Ct. Int'l Trade 1992) (similarly holding that a claim for established and uniform practice inherently challenges a classification decision within the meaning of 19 U.S.C. § 1514(a)(2)). The same is true for a treatment claim under 19 U.S.C. § 1625(c)(2).

Finally, Defendant's attempt to undermine Plaintiff's reliance on *Ford* is meritless. Defendant argues that this Court's ruling in *Ford* supports a finding of prejudice in Plaintiff's case because, in *Ford*, the plaintiff moved to amend its complaint "only to add a new legal theory of recovery based on an intervening decision of this Court issued two weeks earlier." Def. Opp. at 9. This assertion is misleading. While the plaintiff in *Ford* did seek to amend its complaint partly to benefit from an intervening court decision, the Court made clear that this was only part of *Ford*'s motivation. *Ford,* 896 F. Supp. at 1226 ("Ford moved to amend its complaint on March 24, 1995, in part to "to make it possible to obtain the benefit in the instant case of [Intercargo].")). This is further confirmed by the Court's decision to convert Ford's motion from a Rule 15(d) to a Rule 15(a) motion. *Id.* at 1230-31 (explaining that "the principal difference between Rules 15(a) and 15(d) is that Rule 15(d) describes a supplemental pleading as one 'setting forth transactions or occurrences or events which have happened since the date of the pleading,' whereas Rule 15(a)

9

includes no description of what constitutes an amended pleading."). Notably, the *Ford* court made no mention of the "intervening decision" in its reasoning for granting plaintiff's motion for leave. *Id.* at 1229-34. Defendant's misreading of the *Ford* case for the proposition that Plaintiff's proposed treatment claim is not "based on the same transactions or occurrences or events as the original complaint" is directly contradicted by the Court's own explanations in *Ford*. Specifically, on this point the Court explicitly stated:

> It is clear to the Court that Ford is challenging the legality of the extensions or suspensions of liquidation of the entries at issue. Ford's proposed amendment simply delineates **an alternative legal theory** upon which Ford seeks to prove its original allegation that the extensions or suspensions were not legal and the *959 1989 liquidations were "illegal, null, and void."

*Ford*, 896 F. Supp. at 1233 (emphasis added). Similarly, here, Plaintiff's COUNT I and proposed COUNT II both challenge Customs' classification of its tents. COUNT II presents an alternative theory under which Plaintiff seeks to invalidate Customs' classification decision – just as the Court in *Ford* recognized that an alternative legal theory could still be based on the same underlying transaction or occurrence.

In a final attempt to counter the precedent of *Ford*, Defendant again selectively quotes from the case, omitting crucial context. Specifically, Defendant claims that the Court in *Ford* found no prejudice because the new theory would involve the "same documents and information and deposition testimony" (in addition to being based on the same transactions, as analyzed above). Def. Opp. at 9. However, the full quote from *Ford* provides a more nuanced explanation:

> The documents and information and deposition testimony produced thus far in this case relating to the existing complaint **will likely have bearing on a second amended complaint**. In addition, the Court will permit the parties, if they so desire, to reopen discovery to elicit further evidence on the third claim. **Thus, defendant will have the same opportunity to present facts and evidence after the amendment as it did before the amendment.** Because defendant will not be deprived of the opportunity to present facts or evidence in its defense, the Court perceives no undue prejudice to defendant.

10

*Ford*, 896 F. Supp. at 1232 (emphasis added).

This excerpt makes clear that the Court's finding of no prejudice was not limited to the overlap in documents and testimony – it also rested on the fact that the defendant would have a full and fair opportunity to conduct additional discovery if necessary. Similarly, in this case, discovery remains open and can be extended if needed, which undercuts Defendant's claim of prejudice.

For all these reasons, Plaintiff respectfully urges the Court to find that none of the cases relied upon by Defendant support its opposition on timeliness grounds, including prejudice and any other related arguments.

II. **The Proposed Amendment is Not Futile and is Essential for a Complete Presentation of Plaintiff's Claims**

Defendant asserts that the proposed amendment is futile because it fails to state a claim for treatment under 19 U.S.C. § 1625(c)(2). Def. Opp. at 6, 10-14. However, Plaintiff's proposed COUNT II sufficiently alleges that Customs previously accorded a treatment to Plaintiff's imported tents and failed to follow mandatory notice and comment procedures when revoking it: it relies on an actual determination made by Customs, which was consistently applied for a period longer than the requisite two-year period, and identifies relevant examinations that support the existence of the claimed treatment. *See* Pl. Am. Compl., ECF No. 39-1 ¶ 41-53.

At the outset, it bears reiterating that the well-pleaded complaint standard requires a claim for relief to be "plausible on its face," and it does not require detailed factual allegations, but "simply calls for enough fact to raise **a reasonable expectation that discovery will reveal evidence**" supporting the claim for relief. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547, 556 (2007). As the Supreme Court further explained, "[a] well-pleaded complaint may proceed even

if it strikes a savvy judge that actual proof of those facts is improbable, and "that a recovery is very remote and unlikely."  *Id.*

Plaintiff's proposed COUNT II raises a treatment claim under 19 U.S.C. § 1625(c)(2). While section 1625 does not define treatment, Customs' implementing regulation, 19 C.F.R. § 177.12(c), as interpreted by this Court, provides a three-pronged test in this regard: (1) there was an actual determination by a Customs officer regarding the facts and issues involved in the claimed treatment; (2) the Customs officer making the actual determination was responsible for the subject matter on which the determination was made; and (3) over a 2-year period immediately preceding the claim of treatment, Customs consistently applied that determination on a national basis as reflected in liquidations of entries or reconciliations or other Customs actions with respect to all or substantially all of that person's Customs transactions involving materially identical facts and issues.  *Kent International, Inc. v. United States*, 628 F.Supp.3d 1294, 1300 (Ct. Int'l Trade 2023). Furthermore, the regulation itself mandates that "[t]he determination of whether the requisite treatment occurred will be made by Customs on a case-by-case basis and will involve an assessment of all relevant factors."  19 C.F.R. § 177.12(c)(ii); *see also Kent*, 628 F.Supp.3d at 1300.

Defendant's futility arguments depart from the established "plausibility" threshold and instead attempt to impose a higher "probability" standard at the pleading stage.  It also ignores the relevant caselaw supporting Plaintiff's "treatment" claim, relying instead on authorities that are inapplicable to the facts of the case and the allegations in Plaintiff's proposed COUNT II.

Defendant's focus, in its Response, on the Customs examinations *alone* – without considering UTW's protest approval, as alleged by UTW alleges – misconstrues Plaintiff's claim.

*See* Def. Opp. at 10-14.  Defendant summarily dismisses the relevance of the approved protest because it "postdates the claimed treatment." *Id.* at 13.  This assertion is not only unsupported but also directly contradicted by *Kent* and *American Fiber & Finishing, Inc. v. U.S.*, 121 F.Supp.3d 1273 (Ct. Int'l Trade 2015).  Moreover, Defendant makes no attempt to explain why these cases would not support UTW's treatment claim.[4]

As such, the authorities cited by Defendant are inapposite to the *actual* allegations in Plaintiff's proposed COUNT II, as none of them involve a situation where a protest approval is alleged in support of the claimed treatment.  *See, e.g., Motorola Inc. v. United States*, 462 F. Supp. 2d 1367 (Ct. Int'l Trade 2006) (relying on entry liquidations and alleging examinations without a protest approval); *see also Kahrs Int'l, Inc. v. United States*, 645 F. Supp. 2d 1251, 1290 (Ct. Int'l Trade 2009) (relying solely on entry liquidations and alleging examinations without a protest approval, and noting that "[n]owhere does the evidence indicate that Customs in fact reviewed the classification of this entry **or approved Kahrs' classification.**") (emphasis added); *Peerless Clothing Int'l, Inc. v. United States*, 602 F. Supp. 2d 1309 (Ct. Int'l Trade 2009) (finding "treatment" based on "no change" liquidations, but not involving any protest approvals); *Kyocera Indus. Ceramics Corp. v. United States,* 469 F. Supp. 2d 1301, 1307-08 (Ct. Int'l Trade 2006) (relying solely on a prior ruling issued to the plaintiff and making no mention of any approved protests, stating that "[w]hile there may well have been no objection on the part of Customs, that was not the equivalent of a positive determination that would satisfy the standard of subsection 177.12(c)(1)(i)(A).").

---

[4] While Defendant does mention *Kent* once, it is in the context of seemingly agreeing with Plaintiff's interpretation regarding the expansion of the two-year period provided under 19 C.F.R. § 177.12(c)(1)(i)(C).  *See* Def. Opp. at 12 n.3.

Indeed, what Defendant appears to argue is not that Plaintiff's proposed COUNT II is "implausible" – the applicable standard at this stage – but that it lacks evidentiary support. All of Defendant's quotes regarding futility come from cases where the courts ruled on the *merits* of the "treatment" claims, rather than their sufficiency. *See, e.g., Motorola, Inc. v. United States,* 28 C.I.T. 1310 (Ct. Int'l Trade 2004), aff'd in part, rev'd in part and remanded, 436 F.3d 1357 (Fed. Cir. 2006) ("Parties cross-moved for summary judgment."); *see also Kahrs*, 645 F. Supp. at 1258; *Peerless Clothing*, 602 F. Supp. 2d at 1313; *Kyocera,* 469 F. Supp. 2d at 1303. This is also evidenced by Defendant's repeated claims that Plaintiff's proposed COUNT II should be denied because of various discovery-related inconveniences. *See* Section I.B, *supra*; *see also* Def. Opp. at 14. But these claims are directly contradicted by the Supreme Court's mandate that a well-pleaded complaint may, indeed, rely on a "reasonable expectation that discovery will reveal evidence." *Bell Atlantic*, 550 U.S. at 547, 556. Failing to acknowledge this standard, Defendant characterizes Plaintiff's direct reliance on the *Bell Atlantic* directive as "speculative," but the authorities it offers in support are inapposite. *See* Def. Opp. at 14 (quoting *Kahrs Int'l,* 645 F. Supp. 2d at 1290[5] and *Johnson v. Hammett*, 2019 WL 7185559, at *13 (D. Md. Dec. 23, 2019)[6]).

Finally, the authorities Defendant cites in support of its futility argument, aside from being factually distinguishable from the case at bar, are not entitled to deference because they were all issued under the umbrella of *Chevron* deference, *Chevron USA v. National Resources Defense*

---

[5] On this, Defendant omits that, in *Kahrs*, the parties were engaged in "extensive and protracted discovery" targeted specifically at plaintiff's treatment claim. *See Kahrs*, 645 F. Supp. at 1282

[6] In *Johnson*, the court made an express finding that plaintiff's amended complaint did not contain *any* factual allegations in support of its claim and that it was thus relying on discovery to meet "plausibility," whereas here, UTW's argument that "discovery may well reveal additional examinations" intimates that discovery is necessary to provide additional support to its otherwise sufficiently plead COUNT II claim. This is particularly significant in the present case, where the Government has exclusive access to discovery Plaintiff seeks to further support its treatment claim.

*Council*, 467 U.S. 837 (1984), which is now defunct.[7] *See, e.g., Motorola, Inc. v. United States*, 436 F.3d 1357, 1370-71 (Fed. Cir. 2006); see *also Kahrs*, 645 F. Supp. at 1287 (citing *Motorola*, 436 F.3d at 1366; *Peerless Clothing*, 602 F. Supp. 2d at 1317-18 (relying extensively on the *Motorola* cases); *Kyocera*, 469 F. Supp. 2d at. 1307-08 (quoting *Motorola*, 436 F.3d at 1366).

Plaintiff respectfully submits that, just as with the timeliness argument, the Court should find that none of the cases cited by Defendant support its opposition on futility grounds.

## III.    <u>Conclusion</u>

The Court should grant Plaintiff's Motion for Leave to Amend the Complaint. The proposed amendment is timely, not futile, and necessary to ensure a complete and accurate presentation of Plaintiff's claims.

WHEREFORE, Plaintiff respectfully prays that its Motion for Leave be granted.


Respectfully submitted,

/s/ Heather Jacobson
Heather Jacobson
Alena A. Eckhardt

Dated: March 18, 2025

---

[7] In June 2024, the Supreme Court overruled *Chevron* in *Loper Bright Enterprises, et al. v. Raimondo*, 603 U.S. 369 (2024). In *Loper*, the Supreme Court ruled that judicial deference to agency rulemaking under *Chevron* was incompatible with the courts' fundamental duty to interpret the law. Customs' policy (as implemented in § 177.12(c)(1)) of not recognizing treatment unless certain events occur within a specific time window resulted in a legal framework in which, paradoxically, the longer a treatment has existed, the less likely it is that an importer can rely on it. Per Customs' regulations, establishment of treatment requires an "actual determination," which is then consistently applied on a national basis. Once this has occurred, the likelihood that Customs will continue to examine substantially identical merchandise diminishes. Requiring active review by Customs within a 2-year time period preceding a treatment claim effectively puts a 2-year time limit on the effectiveness of any treatment. UTW submits that Customs' policy of not recognizing treatment unless certain events occur within a specific time window is not a reasonable interpretation of 19 U.S.C. § 1625(c)(2). See 19 C.F.R. § 177.12(c)(1); 19 U.S.C. § 1625(c)(2).While under *Chevron* this interpretation was entitled to significant deference on appeal, following *Loper* the reasonableness of Customs' time-bound interpretation of when treatment could be said to have occurred becomes a viable issue for appeal. At the time the opinion in *Loper* was issued, however, oral arguments had already been scheduled for the government's motion to dismiss UTW's § 1625(c)(1) claim.

**UNITED STATES COURT OF INTERNATIONAL TRADE**
**BEFORE: HON. TIMOTHY M. REIF, JUDGE**

| |
|---|
| **UNDER THE WEATHER, LLC,**<br><br>                              **Plaintiff,**<br>   **v.**<br><br>**UNITED STATES,**<br>                               **Defendant.** |

**Court No.    21-00211**

## WORD COUNT CERTIFICATE OF COMPLIANCE

I, Heather Jacobson, counsel for Plaintiff, who is responsible for the foregoing Reply in Support of Motion for Leave to File a First Amended Complaint, relying upon the word count feature of the word processing program used to prepare the memorandum, certify that this memorandum complies with the word count limitation under the Court's standard chambers procedures, and contains 5948 words.

Respectfully submitted,

*/s/ Heather Jacobson*
Heather Jacobson
Alena A. Eckhardt

NAKACHI ECKHARDT & JACOBSON, P.C.
2815 Elliott Avenue, Suite 100
Seattle, WA 98121-2991
Tel: (206) 774-0927
Email: hjacobson@tradelawcounsel.com
       eckhardt@tradelawcounsel.com

*Counsel for Plaintiff Under the Weather, LLC*

Dated: March 18, 2025